# EXHIBIT 1
## Part 1 of 3

# EXHIBIT 1

**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT**
**DUPAGE COUNTY, ILLINOIS**

| | |
|---|---|
| ALEXANDER CLARKE, MILTON CITCHENS, ANDREW GARCIA, EBONY JONES, KYLE SWERDLOW, MARLA WALKER, and RYAN WEBB, individually and on behalf of all others similarly situated,<br><br>                          Plaintiffs,<br><br>     v.<br><br>LEMONADE, INC., LEMONADE INSURANCE COMPANY, LEMONADE INSURANCE AGENCY, LLC, LEMONDADE, LTD., and LEMONADE LIFE INSURANCE AGENCY, LLC,<br><br>                          Defendants. | Civil Action No. 2022LA000308 |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**
**OF CLASS ACTION SETTLEMENT**

PLEASE TAKE NOTICE THAT on Tuesday, May 24, 2022 at 9:00 a.m., Plaintiffs Alexander Clarke, Milton Citchens, Andrew Garcia, Ebony Jones, Kyle Swerdlow, Marla Walker, and Ryan Webb ("Plaintiffs"), on behalf of themselves and all others similarly situated, will hereby move this Court, pursuant to Illinois Statutes Chapter 735 and Civil Procedure §-801 to:

a.     Appoint Plaintiffs as Class Representatives of the Settlement Classes;

b.     Appoint Class Counsel to represent the Settlement Classes;

c.     Provisionally certify the Settlement Class for settlement purposes only;

d.     Preliminarily approve the Settlement Agreement for purposes of disseminating Notice to the Settlement Classes;

e.     Approve the form and contents of the Notice and the method of its dissemination to Members of the Settlement Classes; and

     f.     Schedule a Final Approval Hearing to review comments and/or objections regarding the Settlement Agreement, to consider its fairness, reasonableness, and adequacy, to consider the application for a Fee Award and Service Awards to the Class Representatives, and to consider whether the Court shall issue a Final Judgment approving the Settlement Agreement, to consider Class Counsel's application for the Fee Award and Service Awards, and dismissing the Action with prejudice.

Plaintiffs' Motion is based on this Motion; Plaintiffs' Memorandum in Support of Unopposed Motion for Class Action Settlement; the Settlement Agreement; all exhibits and attachments to the Motion and the Settlement Agreement, including the Parties' draft Notice, Claim Form, and Proposed Preliminary Approval Order submitted herewith.

Dated: May 16, 2022               Respectfully submitted,

                          /s/ *Gary M. Klinger*
                          Gary M. Klinger
                          **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
                          227 W. Monroe Street, Suite 2100
                          Chicago, IL 60606
                          Telephone: 866-252-0878
                          gklinger@milberg.com
                          DuPage #368326

                          Katrina Carroll
                          **LYNCH CARPENTER, LLP**
                          111 W. Washington Street, Suite 1240
                          Chicago, IL 60602
                          Telephone: 312-750-1265
                          kcarroll@carlsonlynch.com

                          Joseph P. Guglielmo (*pro hac vice*)
                          **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
                          230 Park Avenue, 17th Floor
                          New York, NY 10169
                          Telephone: 212-223-6444

jguglielmo@scott-scott.com

Jonathan M. Jagher*
**FREED KANNER LONDON & MILLEN LLC**
923 Fayette Street
Conshohocken, PA 19428
Telephone: 610-234-6487
jjagher@fklmlaw.com

Frederick J. Klorczyk III*
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, NY 10019
Telephone: 646-837-7150
fklorczyk@bursor.com

*Attorneys for Plaintiffs*

\* *Pro hac vice* forthcoming

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on May 16, 2022, the foregoing document was filed via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.


*/s/ Gary M. Klinger*
Gary M. Klinger

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
## DUPAGE COUNTY, ILLINOIS

| | |
|---|---|
| ALEXANDER CLARKE, MILTON CITCHENS, ANDREW GARCIA, EBONY JONES, KYLE SWERDLOW, MARLA WALKER, and RYAN WEBB, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LEMONADE, INC., LEMONADE INSURANCE COMPANY, LEMONADE INSURANCE AGENCY, LLC, LEMONDADE, LTD., and LEMONADE LIFE INSURANCE AGENCY, LLC,<br><br>Defendants. | Civil Action No. 2022LA000308 |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## **TABLE OF CONTENTS**

I.    FACTUAL AND PROCEDURAL BACKGROUND ....................................................... 3

II.    THE PROPOSED SETTLEMENT ............................................................................... 4

    A.    The Settlement Classes .................................................................................. 4

        1.    Nationwide Settlement Class ............................................................. 4

        2.    Illinois Settlement Sub-Class ............................................................ 5

    B.    The Settlement ............................................................................................... 5

    C.    Notice and Settlement Administration ......................................................... 6

    D.    Claims, Exclusion, and Objection Procedures ............................................. 7

    E.    Form and Scope of the Release ..................................................................... 7

III.    LEGAL STANDARD ................................................................................................. 7

IV.    DISCUSSION .......................................................................................................... 10

    A.    The Settlement Is Fair, Reasonable, and Warrants Preliminary Approval ........... 10

        1.    The Settlement Agreement Provides Substantial Relief to the Settlement Classes, Particularly in Light of the Uncertainty of Prevailing on the Merits ............................................................................................... 10

        2.    Defendants' Ability to Pay Is Not at Issue Here ...................................... 13

        3.    Continued Litigation Is Likely to Be Complex, Lengthy, and Expensive ........................................................................................ 13

        4.    There Has Been No Opposition to the Settlement .................................. 14

        5.    The Settlement Agreement Was the Result of Arm's-Length Negotiations Between the Parties After a Significant Exchange of Information ...................................................................................... 14

        6.    While It Is Premature to Weigh Class Support Before Notice Has Been Provided to the Class, Counsel Has No Reason to Believe There Will Be Any Opposition ...................................................................... 14

        7.    The Settlement Agreement Has Support of Experienced Proposed Class Counsel ................................................................................... 15

        8.    While Still at an Early Stage of Litigation, the Parties Exchanged Information Sufficient to Assess the Strengths and Weaknesses of the Claims and Defenses ................................................................. 16

    B.    The Proposed Class Notice Should Be Approved ............................................... 16

    C.    The Court Should Grant Class Certification for Settlement Purposes ................. 17

        1.    The Classes Are Sufficiently Numerous and Joinder Is Impracticable .... 18

        2.    Common Questions of Law and Fact Predominate ................................. 19

        3.    The Class Representatives Have and Will Continue to Provide Adequate Representation for Settlement Class Members ........................ 20

4.      Certifying the Settlement Classes Will Allow for a Fair and Efficient Adjudication of the Controversy................................................................. 21

V.     CONCLUSION........................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings*,
  Nos. 07 CV 2898, 09 C 2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012)..............................2

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997).......................................................................................................18, 22

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980), *overruled on other grounds*, *Felzen v. Andreas*,
  134 F.3d 873 (7th Cir. 1998).........................................................................................9, 10

*Carroll v. Crème de la Crème, Inc.*,
  No. 2017-CH-01624 (Cir. Ct. Cook Cnty., Ill. 2018)............................................................12

*Cavoto v. Chi. Nat'l League Ball Club, Inc.*,
  No. 1–03–3749, 2006 WL 2291181 (1st Dist. July 28, 2006)...............................................16

*CE Design Ltd. v. C & T Pizza, Inc.*,
  2015 Ill. App. (1st Dist.) 131465 ..................................................................................18, 21

*City of Chicago v. Korshak*,
  206 Ill. App. 3d 968 (1st Dist. 1990) .............................................................................2, 16

*Clark v. TAP Pharma. Prods., Inc.*,
  343 Ill. App. 3d 538 (5th Dist. 2003)....................................................................................19

*Fauley v. Metro. Life Ins. Co.*,
  2016 Ill. App. (2d) 150236 ......................................................................................9, 14, 16

*Frank v. Tchrs. Ins. & Annuity Assoc. of Am.*,
  71 Ill.2d 583 (1978) ............................................................................................................16

*GMAC Mortg. Corp. of Pa. v. Stapleton*,
  236 Ill. App. 3d 486 (1st Dist. 1992) ...................................................................8, 9, 15, 22

*Golon v. Ohio Savs. Bank*,
  No. 98-cv-7430, 1999 WL 965593 (N.D. Ill. Oct. 15, 1999) .................................................20

*Gordon v. Boden*,
  224 Ill. App. 3d 195 (1st Dist. 1991) ....................................................................................21

*Hinman v. M & M Rental Ctr., Inc.*,
  545 F. Supp. 2d 802 (N.D. Ill. 2008) ....................................................................................18

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010)......................................................................................9

*In re Equifax Customer Data Sec. Breach Litig.*,
    MDL No. 2800, 2020 U.S. Dist. LEXIS 118209 (N.D. Ga. Mar. 17, 2020).........................13

*In re Target Corp. Customer Data Sec. Breach Litig.*,
    892 F.3d 968 (8th Cir. 2018) ......................................................................................13

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ......................................................................................10

*Kaufman v. Am. Express Travel Related Servs. Co., Inc.*,
    264 F.R.D. 438 (N.D. Ill. 2009)....................................................................................9

*Keele v. Wexler*,
    149 F.3d 589 (7th Cir. 1998) ......................................................................................19

*Kessler v. Am. Resorts Int'l*,
    Nos. 05 C 5944, 07 C 2439, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007)...........................10

*Kulins v. Malco, A Microdot Co., Inc.*,
    121 Ill. App. 3d 520 (1st Dist. 1984) ...........................................................................18

*Langendorf v. Irving Trust Co.*,
    244 Ill. App. 3d 70 (1st Dist. 1992), *abrogated on other grounds*, *Brundidge
    v. Glendale Fed. Bank, F.S.B.*, 168 Ill. 2d 235 (1995)......................................................8

*Lebanon Chiropractic Clinic, P.C. v. Liberty Mut. Ins. Co.*,
    2016 Ill. App. (5th) 150111-U ....................................................................................8

*Lee v. Buth-Na-Bodhaige, Inc.*,
    2019 Ill. App. (5th) 180033 ....................................................................................7, 8

*Marshall v. Lifetime Fitness, Inc.*,
    No. 2017-CH-14262 (Cir. Ct. Cook Cnty, Ill. 2019)........................................................12

*McDonald v. Kiloo A/S*,
    No. 17 C 4344, 2020 WL 5702113 (N.D. Cal. Sept. 24, 2020)...........................................12

*Miner v. Gillette Co.*,
    87 Ill. 2d 7 (1981) ...........................................................................................20, 21

*Phillips Petroleum Co. v. Shuts*,
    472 U.S. 797 (1985) ................................................................................................16

*P.J.'s Concrete Pumping Serv., Inc. v. Nextel W. Corp.*,
    345 Ill. App. 3d 992 (2nd Dist. 2004).........................................................................21

*Prelipceanu v. Jumio Corp.*,
　No. 2018-CH-15883 (Cir. Ct. Cook Cnty., Ill. 2020)............................................12

*Purcell & Wardrope Chtd. v. Hertz Corp.*,
　175 Ill. App. 3d 1069 (1st Dist. 1988) ...............................................................21

*Quick v. Shell Oil Co.*,
　404 Ill. App. 3d 277 (3rd Dist. 2010) ...............................................................10

*Schulte v. Fifth Third Bank*,
　805 F. Supp. 2d 560 (N.D. Ill. 2011) ...............................................................11

*Sekura v. L.A. Tan Enterprises, Inc.*,
　No. 2015-CH-16694 (Cir. Ct. Cook Cnty., Ill. 2016)............................................12

*Steinberg v. Chi. Med. Sch.*,
　69 Ill. 2d 320 (1977) .....................................................................................19

*Steinberg v. Software Assocs., Inc.*,
　306 Ill. App. 3d 157 (1st Dist. 1999) .................................................................2

*Swerdlow v. Lemonade Ins. Agency, LLC*,
　No. 2021CH03583 .........................................................................................3

*Walczak v. Onyx Acceptance Corp.*,
　365 Ill. App. 3d 664 (2nd Dist. 2006)............................................................19, 21

*People ex rel. Wilcox v. Equity Funding Life Ins. Co., Inc.*,
　61 Ill. 2d 303 (1975) ......................................................................................8

*Zepeda v. Intercontinental Hotels Group, Inc.*,
　No. 2018-CH-02140 (Cir. Ct. Cook Cnty., Ill. 2018)............................................12

**Statutes, Rules, and Regulations**

California Unfair Competition Law, California Business & Professions Code
　§17200........................................................................................................1, 7

Federal Rules of Civil Procedure
　Rule 23(d)(2).................................................................................................16

Illinois Biometric Information Privacy Act,
　740 ILCS 14/1...............................................................................................1

Illinois Compiled Statutes
    735 ILCS
        5/2-801 ................................................................................................2, 7, 18, 20, 21
        5/2-801(1) ...........................................................................................................18
        5/2-801(2) ...........................................................................................................19
        5/2-801(3) ...........................................................................................................20
        5/2-801(4) ...........................................................................................................21
        5/2-803 ..........................................................................................................16, 17

New York's Uniform Deceptive Trade Practices Act
    §349.......................................................................................................................7

## Other Authorities

Conte & Newberg, NEWBERG ON CLASS ACTIONS (4th ed. 2002)
    §11.22.............................................................................................................17, 18
    §11.25.................................................................................................................9

Plaintiffs Alexander Clarke, Milton Citchens, Andrew Garcia, Ebony Jones, Kyle Swerdlow, Marla Walker, and Ryan Webb ("Plaintiffs"), respectfully submit this memorandum of law in support of their Motion for Preliminary Approval of the Class Action Settlement reached between Plaintiffs and Defendants Lemonade, Inc., Lemonade Insurance Company, Lemonade Insurance Agency, LLC, Lemonade, Ltd., and Lemonade Life Insurance Agency, LLC (collectively, "Lemonade" or "Defendants").

On March 31, 2022, Plaintiffs filed a class action in this Court alleging that, between June 25, 2019 and May 27, 2021, Defendants collected, captured, received, or otherwise obtained and/or stored the biometric information of Plaintiffs and all other members of the Settlement Classes[1] without obtaining informed written consent or providing the data retention and destruction policies to consumers, in violation of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* Plaintiffs also alleged that Defendants' conduct violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), the California Unfair Competition Law ("UCL"), California Business & Professions Code §§17200, *et seq.*, other state consumer protection statutes, and other common-law duties. Throughout the litigation, Defendants have denied Plaintiffs' allegations, and asserted defenses to their claims.

After months of hard-fought, arm's-length negotiations, including a full-day mediation session with James Epstein of JAMS, the Parties have reached a proposed settlement, including $4 million in non-reversionary monetary relief, and meaningful non-monetary relief as well, meant to prevent the recurrence of the behavior alleged by Plaintiffs in their complaint. If approved, the Settlement will bring certainty, closure, and significant relief to Class Members. Absent approval

---

[1]    Unless otherwise noted, all capitalized terms have the definition given them in the Class Action Settlement Agreement (the "Settlement" or "Agreement"), attached hereto as Exhibit 1.

of the Settlement, the Parties face extended and costly litigation over the alleged unlawful collection and use of biometric information by Lemonade, and there is a substantial risk that Class Members would ultimately receive no relief whatsoever.

Plaintiffs seek preliminary approval of the Settlement, approval of the form and method of Notice, certification of the Settlement Classes, appointment of Plaintiffs as Class Representatives, and appointment of Class Counsel.  This memorandum describes in detail the reasons why preliminary approval is in the best interests of the Classes and is consistent with 735 ILCS 5/2-801 (West 2022).  As discussed in more detail below, the most important consideration in evaluating the fairness of a proposed class action settlement is the strength of Plaintiffs' case on the merits balanced against the relief obtained in the settlement.  *See Steinberg v. Software Assocs., Inc.*, 306 Ill. App. 3d 157, 170 (1st Dist. 1999); *City of Chicago v. Korshak*, 206 Ill. App. 3d 968, 972 (1st Dist. 1990); *see also Am. Int'l Grp., Inc. v. ACE INA Holdings*, Nos. 07 CV 2898, 09 C 2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012).  While Plaintiffs reasonably believe they could obtain class certification and prevail on the merits at trial, success is not guaranteed, particularly given the uncertainty in the law surrounding BIPA, and the high hurdles in pursuing ICFA, UCL, and other consumer protection statutes in the biometric information context.  Additionally, Defendants are prepared to vigorously defend this case and oppose certification of a litigated class.  The Settlement includes robust non-monetary relief and a $4,000,000 non-reversionary Settlement Fund providing Settlement Class Members with meaningful cash compensation, which meets and exceeds the applicable standards of fairness.  Accordingly, the Court should preliminarily approve the Settlement so that Settlement Class Members can receive notice of their rights and the claims administration process may begin.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

In 2021, Plaintiffs filed four related putative class actions in the Circuit Court of Cook County, Chancery Division — specifically, *Jones v. Lemonade Inc.*, No. 2021CH03460; *Citchens v. Lemonade Inc.*, No. 2021CH03578; *Swerdlow v. Lemonade Ins. Agency, LLC*, No. 2021CH03583; and *Clarke v. Lemonade Inc.*, No. 2021CH03593 (the "Related Actions").

On August 9, 2021, Plaintiffs filed their Motion for Leave to File First Amended Complaint and for the Appointment of Interim Class Counsel in the Circuit Court of Cook County.  On August 24, 2021, Judge Loftus granted Plaintiffs' Motion and entered an Order appointing interim class counsel and allowing Plaintiffs leave to file an amended complaint, by August 27, 2021 (Plaintiffs intended to file their amended complaint in the first-filed Jones matter and at the same time dismiss their individual cases without prejudice).

On August 25, 2021, Lemonade removed the Related Actions to the U.S. District Court for the Northern District of Illinois.  On September 7, 2021, the Court consolidated the Related Actions (the "Federal Action").  The Court further granted Plaintiffs' motion to appoint interim class counsel and appointed Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, Katrina Carroll of Carlson Lynch, LLP, and Joseph P. Guglielmo of Scott+Scott at Law LLP to serve as Interim Co-Lead Counsel; and Frederick J. Klorczyk III of Bursor & Fisher, P.A. and Jonathan M. Jagher of Freed Kanner London & Millen LLC to the Plaintiffs' Executive Committee.

On October 7, 2021, Plaintiffs filed a Consolidated Amended Complaint.  On October 12, 2021, the court in the Federal Action stayed the case to allow the parties to pursue private mediation.

On January 25, 2022, the Parties participated in a full-day mediation before Hon. James R. Epstein (Ret.) of JAMS.  The Parties were unable to resolve the matter at this mediation, but

continued discussions regarding a potential resolution of the action.  On March 18, 2022, after further negotiations, the Parties executed a term sheet confirming the material terms of a class action settlement.  On March 30, 2022, Plaintiffs voluntarily dismissed the Federal Action and filed the current Consolidated Class Action Complaint ("CCAC") in the Circuit Court of DuPage County, Illinois, 18th Judicial Circuit (the "Action").  Thereafter, the parties continued to engage in discussions to finalize a settlement agreement based on the term sheet.  On April 21, 2022, the Parties finalized and executed the Settlement.

## II.    THE PROPOSED SETTLEMENT

### A.    The Settlement Classes

The Settlement Classes are comprised of the Nationwide Settlement Class and the Illinois Settlement Sub-Class.  Specifically excluded from the Settlement Classes are Defendants; all officers, directors, or employees of Defendants; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of any Defendant.  Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

### 1.    Nationwide Settlement Class

The Nationwide Settlement Class is defined as "All Defendants' policyholders in the United States who, between June 25, 2019 and May 27, 2021, provided first notice of loss through a video claim submission from which Defendants or Released Parties could have collected, captured, received, or otherwise obtained or disclosed data or information that could be construed as biometric identifiers of any kind (including, but not limited to retina or iris scan, fingerprint, voiceprint, scan of hand, scan of face geometry, or measurement of any biological feature) and/or

biometric information of any kind (including, but not limited to, any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual)." ¶1.19.[2]  The Parties estimate that the Nationwide Settlement Class is comprised of approximately 110,507 class members.

2.    <strong>Illinois Settlement Sub-Class</strong>

The Illinois Settlement Sub-Class is defined as "All Defendants' policyholders in the State of Illinois who, between June 25, 2019 and May 27, 2021, provided first notice of loss through a video claim submission from which Defendants or Released Parties could have collected, captured, received, or otherwise obtained or disclosed data or information that could be construed as biometric identifiers of any kind (including, but not limited to retina or iris scan, fingerprint, voiceprint, scan of hand, scan of face geometry, or measurement of any biological feature) and/or biometric information of any kind (including, but not limited to, any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual). ¶1.17.  The Parties estimate that the Illinois Settlement Sub-Class is comprised of approximately 5,011 class members.

**B.    The Settlement**

The Settlement is comprised of a monetary component and a non-monetary component. The monetary component of the Settlement is a Settlement Fund established by Defendants in the total amount of $4,000,000.  $3,000,000 of the Settlement Fund will be allocated to settlement of the Illinois Settlement Sub-Class claims, and $1,000,000 of the Settlement Fund will be allocated to settlement of the Nationwide Settlement Class claims.  The Settlement Fund shall be used to pay all Settlement Class Member payments, Settlement Administration Expenses, any service

---

[2]    All "¶" citations are to the Class Action Settlement Agreement.

awards to the Class Representatives, any Fee Award to Class Counsel, and any other costs, fees or expenses approved by the Court.  The Settlement Fund includes all interest that shall accrue on the sums deposited in the Escrow Account.  The Settlement Fund represents the total extent of Defendants' monetary obligations under the Agreement.  ¶1.33.

The non-monetary component of the Settlement consists of Lemonade's commitments (i) that on or about May 27, 2021, Lemonade stopped collecting biometric identifiers (retina or iris scan, fingerprint, voiceprint, scan of hand or scan of face geometry) or biometric information (any information based on an individual's biometric identifier used to identify any individual); (ii) that if, in the future, Lemonade starts collecting biometric identifiers (retina or iris scan, fingerprint, voiceprint, scan of hand or scan of face geometry) or biometric information (any information based on an individual's biometric identifier used to identify any individual), it will comply with BIPA and all other applicable laws; and (iii) that within seven days after the entry of the Final Order and Judgment, Lemonade shall delete all previously-collected biometric information and/or biometric identifiers from all Settlement Class Members.  ¶2.2.

### C.    Notice and Settlement Administration

A third-party Settlement Administrator will handle all Settlement Notices, Claims, Settlement Payments, and other Settlement logistics.[3]  ¶1.30.  Defendants will provide a list of Settlement Class Members to the Settlement Administrator.  ¶4.1(a).  Notice will consist of (i) direct notice via the Lemonade Application; (ii) direct notice via email, with backup direct notice via U.S. mail; and (iii) a settlement website maintained by the Settlement Administrator. ¶4.1(b)-(e).

---

[3]    The Settlement Administrator will be Epiq Systems, Inc., or another reputable administration company selected by Class Counsel, reasonably acceptable to Lemonade, and approved by the Court.  ¶1.30.

### D.     Claims, Exclusion, and Objection Procedures

The timeline as set forth in the Settlement Agreement is designed to give individuals in the

Settlement Class sufficient time to receive Notice, review the relevant documents, and to determine

what they would like to do.  Most notably, individuals in the Settlement Class will have at least 45

days from the Notice Date, and at least 14 days after papers supporting the Fee Award are filed to

exclude themselves from the Settlement or object to its approval.  ¶1.22.  Further, the Final Approval

Hearing will take place no sooner than 90 days after Notice is provided.  ¶4.6.

### E.     Form and Scope of the Release

In exchange for the relief described above, Plaintiffs and all Settlement Class Members

who do not exclude themselves will, upon the Effective Date, provide the Released Parties a full

release of all Released Claims.  The Released Claims include, but are not limited to, any claims

for alleged violations of BIPA, New York's Uniform Deceptive Trade Practices Act §349,

California Unfair Competition Law, Bus. & Prof. Code §17200, any other federal, state, or local

law, regulation, or ordinance, or common law, and any claims asserted or that could have been

asserted in the Actions relating to biometric identifiers or information of policyholders of which

Lemonade came into possession between June 25, 2019 and May 27, 2021.  ¶1.26.

## III.   LEGAL STANDARD

"Certification of a class action in Illinois is governed by section 2-801 of the Code."  *Lee*

*v. Buth-Na-Bodhaige, Inc.*, 2019 Ill. App. (5th) 180033, ¶53.  To satisfy §2-801, a plaintiff must

establish that:  (1) The class is so numerous that joinder of all members is impracticable; (2) There

are questions of fact or law common to the class, which common questions predominate over any

questions affecting only individual members; (3) The representative parties will fairly and

adequately protect the interest of the class; and (4) The class action is an appropriate method for the fair and efficient adjudication of the controversy.

Further, the proponents of a class action settlement must show that the settlement "is fair, reasonable, and in the best interest of all who will be affected by it, including absent class members." *Lee* at ¶54.  Illinois courts generally favor class action settlements because the settlement of class action litigation serves the public interest.  *See Langendorf v. Irving Trust Co.*, 244 Ill. App. 3d 70, 78 (1st Dist. 1992), *abrogated on other grounds*, *Brundidge v. Glendale Fed. Bank, F.S.B.*, 168 Ill. 2d 235 (1995).  Indeed, Illinois courts have recognized the strong public policy favoring settlement and the avoidance of costly and time-consuming litigation.  *Lebanon Chiropractic Clinic, P.C. v. Liberty Mut. Ins. Co.*, 2016 Ill. App. (5th) 150111-U, ¶41.  To that end, courts have wide discretion in deciding whether to approve a settlement as "fair, reasonable and adequate."  *People ex rel. Wilcox v. Equity Funding Life Ins. Co., Inc.*, 61 Ill. 2d 303, 317 (1975).  "Since the result is a compromise, the court in approving it should not judge the legal and factual questions by the same criteria applied in a trial on the merits.  Nor should the court turn the settlement approval hearing into a trial.  To do so would defeat the purposes of a compromise such as avoiding a determination of sharply contested issues and dispensing with expensive and wasteful litigation."  *GMAC Mortg. Corp. of Pa. v. Stapleton*, 236 Ill. App. 3d 486, 493 (1st Dist. 1992).[4]  In making a reasonableness determination, courts typically consider the following factors: "(1) the strength of the case for plaintiffs on the merits, balanced against the money or other relief offered in settlement; (2) the defendant's ability to pay; (3) the complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement;

---

[4]    Unless otherwise noted, all emphasis is added and citations are omitted.

(6) the reaction of members of the class to the settlement; (7) the opinion of competent counsel; and (8) the stage of proceedings and the amount of discovery completed." *Id.*

Courts review proposed class action settlements using a well-established two-step process. *See* Conte & Newberg, NEWBERG ON CLASS ACTIONS §11.25 at 38-39 (4th ed. 2002); *see also Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 264 F.R.D. 438, 447 (N.D. Ill. 2009); *GMAC*, 236 Ill. App. 3d at 492; *Fauley v. Metro. Life Ins. Co.*, 2016 Ill. App. (2d) 150236, ¶¶4, 7, 15. The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." NEWBERG §11.25 at 38-39; *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998). The preliminary approval hearing is not a fairness hearing, but rather a hearing to ascertain whether there is any reason to notify the class members of the proposed settlement based on the written submissions and informal presentation from the settling parties. MANUAL FOR COMPLEX LITIGATION (FOURTH) §21.632 (2002). If the Court finds the settlement proposal "within the range of possible approval," the case proceeds to the second step in the review process: the final approval hearing. NEWBERG §11.25 at 38-39.

Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide complete victory, given that parties to a settlement "benefit by immediately resolving the litigation and receiving some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010); *GMAC*, 236 Ill. App. 3d at 493 ("The court in approving [a class action settlement] should not judge the legal and factual questions by the same criteria applied in a trial on the merits."). There is a strong judicial and public policy favoring the settlement of class action litigation, and such a settlement should be approved by a court

after inquiry into whether the settlement is "fair, reasonable and adequate." *Quick v. Shell Oil Co.*, 404 Ill. App. 3d 277, 282 (3rd Dist. 2010); *Isby v. Bayh*, 75 F.3d 1191, 1198 (7th Cir. 1996). "Although this standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase." *Kessler v. Am. Resorts Int'l*, Nos. 05 C 5944, 07 C 2439, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314).

## IV.      DISCUSSION

### A.      The Settlement Is Fair, Reasonable, and Warrants Preliminary Approval

The Settlement is a fair and reasonable resolution of this case and is worthy of notice to and consideration by the individuals in the Settlement Classes.  Most fundamentally, the Settlement will provide significant and timely financial and injunctive relief to participating Settlement Class Members as compensation for their Released Claims and will relieve the Parties of the burdens, uncertainties, costs, and risks of continued litigation.

### 1.      The Settlement Agreement Provides Substantial Relief to the Settlement Classes, Particularly in Light of the Uncertainty of Prevailing on the Merits

As to the first factor, the Settlement in this case provides substantial material benefits to the Settlement Classes:  each Settlement Class Member will receive a *pro rata* payment from the Settlement Fund after submitting a timely, simple, one-page claim form.  In addition, the Settlement provides meaningful equitable relief, as Lemonade has represented that it is no longer collecting or using its customers' biometric information and agrees that should it do so in the future, it will provide all notices and consents as required by BIPA.  The Settlement also provides that Lemonade will destroy all biometric information of Class members – another significant, tangible benefit.

While Plaintiffs believe they would likely prevail on their claims, they are also aware that Lemonade denies the material allegations of the Complaint and would pursue several legal and factual defenses, including but not limited to whether BIPA applies to Lemonade because of the GLBA exclusion, and whether Lemonade's conduct would be deemed to have occurred in Illinois. Lemonade would also challenge each of the other statutory and common-law claims brought by Plaintiffs, including whether those statutes apply extraterritorially.  If successful, Lemonade's defenses would result in Plaintiffs and the proposed Settlement Class Members receiving no payment or relief whatsoever.  Thus, the unsettled nature of several potentially dispositive threshold issues in this case poses a significant risk to Plaintiffs' claims and would add to the length and costs of continued litigation.  Taking these realities into account and recognizing the risks involved in any litigation, the relief available to each Settlement Class Member in the Settlement represents a truly excellent result for the Settlement Classes.

In addition to any defenses on the merits Defendants would raise, should litigation continue Plaintiffs would also be required to prevail on a class certification motion, which would be highly contested and for which success is certainly not guaranteed. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation").  "If the Court approves the [Settlement], the present lawsuit will come to an end and [Settlement Class Members] will realize both immediate and future benefits as a result." *Id*.  Approval would allow Plaintiffs and the Settlement Class Members to receive meaningful and significant payments now, instead of years from now or never. *See id*. at 582.

Additionally, the fairness, reasonableness, and adequacy of the instant Settlement are supported by previously approved settlements (involving both BIPA and non-BIPA claims), which

provided less value than that achieved for the classes here.  For example, in *Zepeda v. Intercontinental Hotels Group, Inc.*, No. 2018-CH-02140 (Cir. Ct. Cook Cnty., Ill. 2018), the BIPA settlement provided that each class member was eligible to receive a *pro rata* share of a settlement fund that would amount to approximately $500 per person ***before*** deductions for administrative expenses, attorneys' fees and costs, and a service award.  In *Sekura v. L.A. Tan Enterprises, Inc.*, No. 2015-CH-16694 (Cir. Ct. Cook Cnty., Ill. 2016), the BIPA class settlement resulted in each class member being eligible to receive a *pro rata* share of a settlement fund that would have amounted to approximately $40 per person if each class member had submitted a valid claim.  And in *Carroll v. Crème de la Crème, Inc.*, No. 2017-CH-01624 (Cir. Ct. Cook Cnty., Ill. 2018), the settlement resulted in each class member being eligible to enroll in credit and identity monitoring services free of charge without further monetary relief.  *See also, e.g.*, *Marshall v. Lifetime Fitness, Inc.*, No. 2017-CH-14262 (Cir. Ct. Cook Cnty, Ill. 2019) (paying claimants $270 each in addition to credit monitoring); S*ekura v. LA Tan Enters., Inc.*, No. 2015-CH-16694 (Cir. Ct. Cook Cnty., Ill. 2016) (paying claimants approximately $150 each); *Prelipceanu v. Jumio Corp.*, No. 2018-CH-15883 (Cir. Ct. Cook Cnty., Ill. 2020) (paying claimants approximately $260 each).

Given the statutory context of BIPA, non-BIPA privacy-based claims typically settle for far lower per-person recoveries than BIPA claims.  Indeed, it is not uncommon for there to be no monetary relief whatsoever for consumer class action settlements based on such claims.  *See*, *e.g.*, *McDonald v. Kiloo A/S*, No. 17 C 4344, 2020 WL 5702113, at *5 (N.D. Cal. Sept. 24, 2020) (granting preliminary approval to injunctive relief-only settlement, noting that "any damage award" for claims of intrusion upon seclusion and violations of the California constitutional right to

privacy, the UCL, and various consumer protection statutes "was uncertain and likely to have been nominal for most class members").

Finally, the injunctive relief found in the Settlement is robust and valuable.  The Settlement affords a framework of compliance and future protection of the privacy rights of Plaintiffs and the Classes – a valuable benefit.  *See*, *e.g.*, *In re Equifax Customer Data Sec. Breach Litig.*, MDL No. 2800, 2020 U.S. Dist. LEXIS 118209, at *256 (N.D. Ga. Mar. 17, 2020) ("The Court specifically finds that the injunctive relief class counsel obtained here is a valuable benefit to the class because it reduces the risk that their personal data will be compromised in a future breach."); *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 974 n.6 (8th Cir. 2018) (security measures implemented after a data breach have "value to all class members").

The result here is exceptional in comparison to other BIPA and non-BIPA cases — and is certainly fair, reasonable, and adequate, and warrants preliminary approval.

### 2.      Defendants' Ability to Pay Is Not at Issue Here

The second factor to be considered is the defendant's ability to pay the settlement sum. Lemonade's financial standing has not been placed at issue here.

### 3.      Continued Litigation Is Likely to Be Complex, Lengthy, and Expensive

Without a settlement, it is certain that the expense, duration, and complexity of the protracted litigation that would result would be substantial.  Not only would the Parties have to undergo significant motion practice before any trial on the merits is even contemplated, but evidence and witnesses from throughout the nation would have to be assembled for any trial. Further, given the complexity of the issues and the amount in controversy, the defeated party would likely appeal both any decision on the merits as well as on class certification.  As such, the immediate and considerable relief provided to the Settlement Classes under the Settlement Agreement weighs heavily in favor of its approval compared to the inherent risk and delay of a

long and drawn-out litigation, trial, and appeal.  Protracted and expensive litigation is not in the interest of any of the Parties or Settlement Class Members.

### 4.   There Has Been No Opposition to the Settlement

While this factor is best examined after notice has been provided to the Settlement Class Members, and the deadline to file an objection to the Settlement has not been set, there is presently no known opposition to the Settlement.  Thus, this factor weighs in favor of approval.

### 5.   The Settlement Agreement Was the Result of Arm's-Length Negotiations Between the Parties After a Significant Exchange of Information

There is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's-length negotiations.  Newburg, §11.42; *see also Fauley*, 2016 Ill. App. (2d) 150236, ¶21 (finding no collusion where there was "no evidence that the proposed settlement was not the product of 'good faith, arm's-length negotiations'").  Here, there is no evidence of collusion. The Settlement was reached after months of arm's-length negotiations between counsel for the Parties including a full-day mediation with James Epstein of JAMS, an experienced class action mediator.   Moreover, settlement negotiations began only after an exchange of information regarding, among other things, the size and composition of the Settlement Classes.  Such an involved process underscores the non-collusive nature of the proposed Settlement.  Finally, given the fair result for the Settlement Classes in terms of the monetary and equitable relief, it is clear that this Settlement was reached as a result of good-faith negotiations rather than any collusion between the Parties.  Accordingly, this factor weighs in favor of preliminary approval.

### 6.   While It Is Premature to Weigh Class Support Before Notice Has Been Provided to the Class, Counsel Has No Reason to Believe There Will Be Any Opposition

As with factor number four, Plaintiffs' Counsel are aware of no opposition to the Settlement, and due to the strength of this Settlement and the amount of the award that Settlement

Class Members can claim, Plaintiffs and their counsel expect little to no opposition to the Settlement by any Settlement Class Member in the future.  Plaintiffs strongly support the Settlement and believe that it is fair and reasonable, particularly because of the defenses raised by Defendants and the potential risks involved with continued litigation.

### 7.   The Settlement Agreement Has Support of Experienced Proposed Class Counsel

Plaintiffs' Counsel believe that the proposed Settlement is in the best interests of the Settlement Class Members because they will receive an immediate payment and see an immediate non-monetary benefit instead of having to pursue lengthy litigation and likely subsequent appeals. Further, the benefit of this Settlement is not just in the Class Members' receipt of money and equitable relief now as opposed to later – in addition, the Settlement avoids the possibility of a defense verdict or a favorable defense decision on class certification or summary judgment wiping out all recovery for the Classes.  Lemonade has indicated that it would raise several potentially dispositive defenses if the case proceeds and it is therefore possible that the Settlement Class Members would receive no benefit whatsoever without this Settlement.  Given Plaintiffs' Counsel's extensive experience litigating similar class action cases in federal and state courts across the country, including dozens of other BIPA cases, this factor also weighs in favor of granting preliminary approval.  *See GMAC*, 236 Ill. App. 3d at 497 (finding that the court should give weight to the fact that class counsel supports the class settlement in light of its experience prosecuting similar cases).[5]

---

[5]   Firm resumes for Plaintiffs' Counsel are attached at Exhibits 2-6.

**8.  While Still at an Early Stage of Litigation, the Parties Exchanged Information Sufficient to Assess the Strengths and Weaknesses of the Claims and Defenses**

The eighth factor is designed to permit the Court to consider the extent to which the Court and Counsel were able to evaluate the merits of the case and to assess the reasonableness of the Settlement. *See*, *e.g.*, *City of Chi.*, 206 Ill. App. 3d at 972.  Here, in advance of a Settlement being reached, the Parties exchanged information that enabled Settlement Class Counsel to thoroughly investigate the facts and law and assess the strengths and weaknesses of Plaintiffs' claims.  Accordingly, this factor weighs in favor of Preliminary Approval.

**B.   The Proposed Class Notice Should Be Approved**

Under 735 ILCS 5/2-803, a court may provide class members notice of any proposed settlement to protect the interests of the class and the parties.  *See*, *e.g.*, *Cavoto v. Chi. Nat'l League Ball Club, Inc.*, No. 1–03–3749, 2006 WL 2291181, at *15 (1st Dist. July 28, 2006) (collecting authorities & noting that "section 2-803 makes it clear that the statutory requirement of notice is not mandatory").  Notice must be provided to absent class members to the extent necessary to satisfy requirements of due process.  *See id.*, at *15 (citing *Frank v. Tchrs. Ins. & Annuity Assoc. of Am.*, 71 Ill.2d 583, 593 (1978)); *see also* Fed. R. Civ. P. 23(d)(2) (advisory committee note) ("mandatory notice . . . is designed to fulfill requirements of due process to which the class action procedure is of course subject").  As explained by the United States Supreme Court, due process requires that notice be the "best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'" as well as "'describe the action and the plaintiffs' rights in it.'"  *Fauley*, 2016 Ill. App. (2d) 150236, ¶36 (citing *Phillips Petroleum Co. v. Shuts*, 472 U.S. 797, 812 (1985)).

The proposed Notice in this case satisfies both the requirements of 735 ILCS 5/2-803 and due process.  As set forth in detail above, the Settlement Agreement contemplates a Notice Plan

that provides multiple avenues of direct notice (via Lemonade Application, email, and U.S. mail) designed to reach as many potential Settlement Class Members as possible.  ¶4.1.  The direct Notice process should be very effective because of the relationship between Lemonade and the Settlement Class Members (each of whom was required to provide contact information to Lemonade on signing up).

The Notice program also requires that Settlement Administrator establish a settlement website to which Settlement Class Members may refer for information about the Action and Settlement and submit online Claim Forms and inquiries.  The Settlement Administrator will post the Claim Form on the website as well as other important documents and deadlines, in consultation with counsel for the Parties.  Additionally, the Settlement Administrator will disseminate the Notices and the Claim Form, will establish a post-office box for the receipt of any Settlement-related correspondence; will respond to inquiries or requests from Settlement Class Members, in consultations with Plaintiffs' Counsel and Defendants' Counsel; and will respond to inquiries or requests from Class Counsel, Defendants' Counsel, and the Court.

The proposed Notice and Claim Form, which are attached to the Settlement Agreement as Exhibits A-C, should be approved by the Court.  The proposed methods of Notice comport with 735 ILCS 5/2-803 and the requirements of due process.

### C. The Court Should Grant Class Certification for Settlement Purposes

For settlement purposes only, the Parties have agreed that the Court should make preliminary findings and enter an Order granting provisional certification of the Settlement Classes and appointing Plaintiffs and their Counsel to represent the Settlement Classes.  "The validity of use of a temporary settlement class is not usually questioned."  NEWBERG §11.22.  The MANUAL FOR COMPLEX LITIGATION explains the benefits of settlement classes:

> Settlement classes – cases certified as class actions solely for settlement – can
> provide significant benefits to class members and enable the defendants to achieve
> final resolution of multiple suits.  Settlement classes also permit defendants to settle
> while preserving the right to contest the propriety and scope of the class allegations
> if the settlement is not approved[.] . . .  An early settlement produces certainty for
> the plaintiffs and defendants and greatly reduces litigation expenses.

MANUAL FOR COMPLEX LITIGATION (FOURTH) §21.612.

Prior to granting preliminary approval of a class action settlement, a court should determine that the proposed settlement class is a proper class for settlement purposes.  *Id*. §21.632; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  A class may be certified under Section 2-801 of the Illinois Code of Civil Procedure if the following "prerequisites" are satisfied: (i) the class is so numerous that joinder of all members is impracticable; (ii) there are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members; (iii) the representative parties will fairly and adequately protect the interest of the class; and (iv) the class action is an appropriate method for the fair and efficient adjudication of the controversy.  *See* 735 ILCS 5/2-801; *see also CE Design Ltd. v. C & T Pizza, Inc.*, 2015 Ill. App. (1st Dist.) 131465, ¶10.  In this case, the proposed Settlement Classes meet all the applicable certification requirements.

### 1.    The Classes Are Sufficiently Numerous and Joinder Is Impracticable

Numerosity is met where "the class is so numerous that joinder of all members is impracticable."  735 ILCS 5/2-801(1).  "Although there is no bright-line test for numerosity, a class of forty is generally sufficient."  *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 805-6 (N.D. Ill. 2008); *Kulins v. Malco, A Microdot Co., Inc.*, 121 Ill. App. 3d 520, 530 (1st Dist. 1984) (finding that 47 class members was sufficient to satisfy numerosity).  Here, the members of the proposed Class and Subclass total over 100,000 and 5,000 individuals respectively.  Thus, there is no question numerosity is satisfied.

## 2.    Common Questions of Law and Fact Predominate

Commonality, the second requirement for class certification, is met where there are "questions of fact or law common to the class" and those questions "predominate over any questions affecting only individual members."  735 ILCS 5/2-801(2).  Common questions of law or fact exist when the members of the proposed class have been aggrieved by the same or similar misconduct.  *See*, *e.g.*, *Walczak v. Onyx Acceptance Corp.*, 365 Ill. App. 3d 664, 673-74 (2nd Dist. 2006); *Steinberg v. Chi. Med. Sch.*, 69 Ill. 2d 320, 340-42 (1977); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).  Further, where "the defendant allegedly acted wrongfully in the same basic manner as to an entire class . . . the common class questions predominate the case[.]" *Walczak*, 365 Ill. App. 3d at 674 (citing *Clark v. TAP Pharma. Prods., Inc.*, 343 Ill. App. 3d 538, 548 (5th Dist. 2003)).

In this case, all members of the proposed Classes hold claims that raise many common issues regarding the alleged collection, storage, use and disclosure of their biometric identifiers or information without adequately informed consent.  Proving these claims would require the resolution of many identical factual and legal issues, including:  (i) whether Defendants collected, captured, and otherwise obtained the biometric identifiers and information of Plaintiffs and Class Members; (ii) whether Defendants possessed the biometric identifiers and information of Plaintiffs and Class Members; (iii) whether Defendants disclosed, redisclosed, and otherwise disseminated the biometric identifiers and information of Plaintiffs and Class Members; (iv) whether Defendants profited from the biometric identifiers and information of Plaintiffs and Class Members; (v) whether Defendants obtained enforceable written releases from Plaintiffs and Class Members or their authorized representatives before collecting, capturing, obtaining, disclosing, redisclosing, and otherwise disseminating the biometric identifiers and information of Plaintiffs and Class Members; (vi) whether Defendants' collection, use, storage, and/or transmission of private data

violated Plaintiffs' Right to Privacy under the California Constitution or California Unfair Competition and False Advertising laws; (vii) whether Defendants' alleged conduct constitutes Intrusion Upon Seclusion; (viii) whether Defendants were unjustly enriched through their alleged wrongful conduct; (ix) whether Plaintiffs and Class Members suffered damages as a proximate result of Defendants; and (x) whether Plaintiffs and Class Members are entitled to damages, equitable relief, and other relief.  For the Illinois Sub-Class, additional common questions include: (i) whether the information taken from Settlement Class Members constituted biometric identifiers or biometric information as defined by BIPA; (ii) whether such information was taken without the consent required under BIPA; (iii) whether Defendant had a BIPA-compliant, publicly-available, written policy addressing retention and storage of biometric identifiers and information; and (iv) whether such conduct violated BIPA.  Predominance is satisfied "when there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis. . . . Such proof obviates the need to examine each class member's individual position." *Golon v. Ohio Savs. Bank*, No. 98-cv-7430, 1999 WL 965593, at *4 (N.D. Ill. Oct. 15, 1999).  Here, in the context of the Settlement Classes, the common questions resulting from Defendants' alleged conduct predominate over any individual issues that may exist and can be answered on a class-wide basis based on common evidence maintained by Defendants.  Accordingly, the commonality factor is satisfied.

### 3.   The Class Representatives Have and Will Continue to Provide Adequate Representation for Settlement Class Members

The third element of Section 2-801 requires that "[t]he representative parties will fairly and adequately protect the interests of the class."  735 ILCS 5/2-801(3).  The class representative's interests must be generally aligned with those of the class members, and class counsel must be "qualified, experienced and generally able to conduct the proposed litigation." *Miner v. Gillette Co.*, 87 Ill. 2d 7, 14 (1981).  "The purpose of the adequate representation requirement is to ensure that all

class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." *Walczak*, 365 Ill. App. 3d at 678 (citing *P.J.'s Concrete Pumping Serv., Inc. v. Nextel W. Corp.*, 345 Ill. App. 3d 992, 1004 (2nd Dist. 2004)); *Purcell & Wardrope Chtd. v. Hertz Corp.*, 175 Ill. App. 3d 1069, 1078 (1st Dist. 1988). The adequacy requirement is satisfied where "the interests of those who are parties are the same as those who are not joined" such that the "litigating parties fairly represent [them]," and where the "attorney for the representative party '[is] qualified, experienced and generally able to conduct the proposed litigation.'" *CE Design Ltd.*, 2015 Ill. App. (1st) 131465, ¶16 (citing *Miner*, 87 Ill. 2d at 14).

Here, Plaintiffs' interests are entirely representative of and consistent with the interests of the proposed Settlement Class Members: all have allegedly had their biometric information or identifiers collected and used by Lemonade in a manner that is inconsistent with the legal protections provided by BIPA and/or other statutory and common-law provisions. Plaintiffs' pursuit of this matter has demonstrated that they have been, and will remain, zealous advocates for the Settlement Classes. Thus, Plaintiffs have the same interests as the Settlement Classes, and are suitable representatives.

### 4. Certifying the Settlement Classes Will Allow for a Fair and Efficient Adjudication of the Controversy

The final prerequisite to class certification is met where "the class action is an appropriate method for the fair and efficient adjudication of the controversy." ILCS 5/2-801(4). "In applying this prerequisite in a particular case, a court considers whether a class action: (1) can best secure the economies of time, effort and expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to obtain." *Gordon v. Boden*, 224 Ill. App. 3d 195, 203 (1st Dist. 1991). In practice, a "holding that the first three prerequisites of section 2-801 are established makes it evident that the fourth requirement is fulfilled." *Id.* at 204; *Purcell &*

*Wardrope Chtd.*, 175 Ill. App. 3d at 1079 (stating that the "predominance of common issues [may] make a class action . . . a fair and efficient method to resolve the dispute").  Thus, the fact that numerosity, commonality and predominance, and adequacy of representation have all been demonstrated in the instant case makes it "evident" that the appropriateness requirement is satisfied.

This case is particularly well-suited for class treatment because the claims of Plaintiffs and the proposed Settlement Class Members involve alleged violations of state statutes and common law proscribing the unauthorized collection, storage, use, and disclosure of Settlement Class Members' biometric information or identifiers.  It is highly unlikely that individuals would invest the time and expense necessary to seek relief through individual litigation.  Moreover, because the action will now settle, the Court need not be concerned with issues of manageability relating to trial.  When "[c]onfronted with a request for settlement-only class certification," a "court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."  *Amchem*, 521 U.S. at 620.  Nor should the Court "judge the legal and factual questions" regarding certification of the proposed Settlement Classes by the same criteria as a proposed Class being adversely certified.  *See GMAC*, 236 Ill. App. 3d at 493.

A class action is the superior method of resolving large-scale claims if it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Amchem*, 521 U.S. at 615.  Accordingly, a class action is the superior method of adjudicating this action and the proposed Settlement Classes should be certified.

## V.      CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court enter the proposed Preliminary Approval Order,[6] which (i) preliminarily approves the Settlement as being within the range of possible final approval; (ii) conditionally certifies the Settlement Classes for settlement purposes and appoints Plaintiffs as Class Representatives; (iii) appoints Gary Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, Katrina Carroll of Lynch Carpenter, LLP, Joseph P. Guglielmo of Scott+Scott Attorneys at Law LLP, Jon Jagher of Freed Kanner London & Millen LLC, Frederick J. Klorczyk III of Bursor & Fisher, P.A. as Class Counsel; (iv) approves the proposed Notice and claims program to be administered by a mutually agreed upon Settlement Administrator; and (v) schedules a Final Approval Hearing.

Dated: May 16, 2022                           Respectfully submitted,

                                              /s/ *Gary M. Klinger*
                                              Gary M. Klinger
                                              **MILBERG COLEMAN BRYSON PHILLIPS
                                              GROSSMAN, PLLC**
                                              227 W. Monroe Street, Suite 2100
                                              Chicago, IL 60606
                                              Telephone: 866-252-0878
                                              gklinger@milberg.com
                                              DuPage #368326 clk

                                              Katrina Carroll
                                              **LYNCH CARPENTER, LLP**
                                              111 W. Washington Street, Suite 1240
                                              Chicago, IL 60602
                                              Telephone: 312-750-1265
                                              kcarroll@carlsonlynch.com

                                              Joseph P. Guglielmo (*pro hac vice*)
                                              **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
                                              230 Park Avenue, 17th Floor
                                              New York, NY 10169
                                              Telephone: 212-223-6444

---

[6]      A proposed Preliminary Approval Order is attached hereto as Exhibit 6.

jguglielmo@scott-scott.com

Jonathan M. Jagher*
**FREED KANNER LONDON & MILLEN LLC**
923 Fayette Street
Conshohocken, PA 19428
Telephone: 610-234-6487
jjagher@fklmlaw.com

Frederick J. Klorczyk III*
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, NY 10019
Telephone: 646-837-7150
fklorczyk@bursor.com

*Attorneys for Plaintiffs*

\* *Pro hac vice* forthcoming

24

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on May 16, 2022, the foregoing document was filed via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

*/s/ Gary M. Klinger*
Gary M. Klinger