# EXHIBIT
# 1
# Part 3 of 3

# IL Class Email Notice

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT
*Clarke, et al. v. Lemonade, Inc. et al.*, Civil Action No. _____
### (CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
### DUPAGE COUNTY, ILLINOIS)

This notice is to inform you of the settlement of a class action lawsuit with Lemonade, Inc., Lemonade Insurance Company, Lemonade Insurance Agency, LLC, Lemonade, Ltd., and Lemonade Life Insurance Agency, LLC (collectively, "Lemonade"), the Defendants in this case. Plaintiffs Alexander Clarke, Milton Citchens, Andrew Garcia, Ebony Jones, Kyle Swerdlow, Marla Walker, and Ryann Webb allege that Lemonade collected, captured, received, or otherwise obtained and/or stored the biometric identifiers and biometric information (collectively, "biometric information") of thousands of Illinois insureds in violation of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* Lemonade denies these allegations and denies that it has violated the law.

**Am I a Class Member?** Our records indicate you may be an Illinois Settlement Sub-Class Member. Illinois Settlement Sub-Class Members are Illinois residents who used who, between June 25, 2019 and May 27, 2021, provided first notice of loss through a video claim submission to Lemonade from which Lemonade could have collected, captured, received, or otherwise obtained and/or stored data or information that could be construed as biometric identifiers or biometric information.

.

**What Can I Get?** If approved by the Court, a Settlement Fund of $4,000,000.00 will be established to pay all Settlement Class Members, of which $3,000,000 of the Settlement Fund will be allocated to members of the Illinois Settlement Sub-Class, and $1,000,000 of the Settlement Fund will be allocated to members of a Nationwide Settlement Class, together with notice and administration expenses, approved attorneys' fees and costs, and incentive awards. If you are entitled to relief, you will automatically receive a designated *pro rata* share of the Net Settlement Fund—which will be the remainder of the Settlement Fund after the deduction of attorneys' fees, expenses, incentive awards, notice and settlement administration costs, and any other costs agreed to by the Parties and approved by the Court. Your *pro rata* share will be determined by whether you are an Illinois Settlement Sub-Class Member or a Nationwide Settlement Class Member. In addition, on or about May 27, 2021 Lemonade stopped collecting biometric identifiers or biometric information. On or about ____, ____, Lemonade also deleted all previously-collected biometric information and/or biometric identifiers from all Settlement Class Members. If, in the future, Lemonade starts collecting biometric identifiers or biometric information, it will comply with BIPA and all other applicable laws.

**How Do I Get a Payment?** If you are a Settlement Class Member, you must submit a timely and properly completed Claim Form no later than **[claims deadline]** to receive a *pro rata* payment.

Claim Forms can be found and submitted on-line or you may have received a Claim Form in the mail as a postcard attached to a summary of this notice. To submit a Claim Form on-line or to request a paper copy, go to [**SETTLEMENT WEBSITE**] or call toll free, **1-800-000-0000.**

**What are My Other Options?** You may exclude yourself from the Class by sending a letter to the Settlement Administrator no later than [**objection/exclusion deadline**]. If you exclude yourself, you cannot get a settlement payment, but you keep any rights you may have to sue the Defendants over the legal issues in the lawsuit. You and/or your lawyer have the right to appear before the Court and/or to object to the proposed settlement. Your written objection must be filed no later than [**objection/exclusion deadline**]. Specific instructions about how to object to, or exclude yourself from, the Settlement are available at [www.Lemonadesettlement.com]. If you do nothing and the Court approves the Settlement, you will be bound by all of the Court's orders and judgments. In addition, your claims relating to the alleged collection and storage of biometric information in this case against the Defendants will be released.

**Who Represents Me?** The Court has appointed Milberg Coleman Bryson Phillips Grossman, PLLC, Scott+Scott Attorneys At Law LLP, Freed Kanner London & Millen LLC, Lynch Carpenter LLP, and Bursor & Fisher, P.A. to represent the Settlement Class. These attorneys are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

**When Will the Court Consider the Proposed Settlement?** The Court will hold the Final Approval Hearing at \_\_\_\_\_**.m. on** [date] at the Eighteenth Judicial Circuit Court for the County of DuPage, Illinois, 505 N. County Farm Road, Room \_\_\_\_\_, Wheaton, IL 60187. At that hearing, the Court will: hear any objections concerning the fairness of the Settlement; determine the fairness of the Settlement; decide whether to approve Class Counsel's request for attorneys' fees and costs; and decide whether to award the Class Representatives $2,500 each from the Settlement Fund for their services in helping to bring and settle this case. Lemonade has agreed that Class Counsel may be paid reasonable attorneys' fees from the Settlement Fund in an amount to be determined by the Court. Class Counsel is entitled to seek no more than 33 1/3% of the Settlement Fund plus the value of the injunctive relief, but the Court may award less than this amount.

**How Do I Get More Information?** For more information, including a more detailed Notice, a copy of the Settlement Agreement and other documents, go to www.Lemonadesettlement.com, contact the settlement administrator at 1-\_\_\_-\_\_\_-\_\_\_\_ or Lemonade Settlement Administrator, [address], or call Class Counsel at 646-837-7150.

# Nationwide Class Email Notice

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**
*Clarke, et al. v. Lemonade, Inc. et al.*, Civil Action No.
**(CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
DUPAGE COUNTY, ILLINOIS)**

This notice is to inform you of the settlement of a class action lawsuit with Lemonade, Inc., Lemonade Insurance Company, Lemonade Insurance Agency, LLC, Lemonade, Ltd., and Lemonade Life Insurance Agency, LLC (collectively, "Lemonade"), the Defendants in this case. Plaintiffs Alexander Clarke, Milton Citchens, Andrew Garcia, Ebony Jones, Kyle Swerdlow, Marla Walker, and Ryann Webb allege that Lemonade collected, captured, received, or otherwise obtained and/or stored the biometric identifiers and biometric information (collectively, "biometric information") of certain insureds in alleged violation of various state consumer protection statutes and other common-law protections. Lemonade denies these allegations and denies that it has violated the law.

**Am I a Class Member?** Our records indicate you may be a Nationwide Settlement Class Member. Nationwide Settlement Class Members are United States residents who used who, between June 25, 2019 and May 27, 2021, provided first notice of loss through a video claim submission to Lemonade from which Lemonade could have collected, captured, received, or otherwise obtained and/or stored data or information that could be construed as biometric identifiers or biometric information.

**What Can I Get?** If approved by the Court, a Settlement Fund of $4,000,000.00 will be established to pay all Settlement Class Members, of which $1,000,000 of the Settlement Fund will be allocated to members of a Nationwide Settlement Class, and $3,000,000 of the Settlement Fund will be allocated to members of the Illinois Settlement Sub-Class, together with notice and administration expenses, approved attorneys' fees and costs, and incentive awards. If you are entitled to relief, you will automatically receive a designated *pro rata* share of the Net Settlement Fund—which will be the remainder of the Settlement Fund after the deduction of attorneys' fees, expenses, incentive awards, notice and settlement administration costs, and any other costs agreed to by the Parties and approved by the Court. Your *pro rata* share will be determined by whether you are an Illinois Settlement Sub-Class Member or a Nationwide Settlement Class Member. In addition, on or about May 27, 2021 Lemonade stopped collecting biometric identifiers or biometric information. On or about _____, ____, Lemonade also deleted all previously -collected biometric information and/or biometric identifiers from all Settlement Class Members. If, in the future, Lemonade starts collecting biometric identifiers or biometric information, it will comply with all applicable laws.

**How Do I Get a Payment?** If you are a Settlement Class Member, you must submit a timely and properly completed Claim Form no later than **[claims deadline]** to receive a *pro rata* payment. Claim Forms can be found and submitted on-line or you may have received a Claim Form in the mail as a postcard attached to a summary of this notice. To submit a Claim Form on-line or to request a paper copy, go to [**SETTLEMENT WEBSITE**] or call toll free, **1-800-000-0000**.

**What are My Other Options?** You may exclude yourself from the Class by sending a letter to the Settlement Administrator no later than [**objection/exclusion deadline**]. If you exclude yourself, you cannot get a settlement payment, but you keep any rights you may have to sue the Defendants over the legal issues in the lawsuit. You and/or your lawyer have the right to appear before the Court and/or to object to the proposed settlement. Your written objection must be filed no later than [**objection/exclusion deadline**]. Specific instructions about how to object to, or exclude yourself from, the Settlement are available at [www.Lemonadesettlement.com]. If you do nothing and the Court approves the Settlement, you will be bound by all of the Court's orders and judgments. In addition, your claims relating to the alleged collection and storage of biometric information in this case against the Defendants will be released.

**Who Represents Me?** The Court has appointed Milberg Coleman Bryson Phillips Grossman, PLLC, Scott+Scott Attorneys At Law LLP, Freed Kanner London & Millen LLC, Lynch Carpenter LLP, and Bursor & Fisher, P.A. to represent the Settlement Class. These attorneys are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

**When Will the Court Consider the Proposed Settlement?** The Court will hold the Final Approval Hearing at _____ .**m.** on [date] at the Eighteenth Judicial Circuit Court for the County of DuPage, Illinois, 505 N. County Farm Road, Room _____, Wheaton, IL 60187. At that hearing, the Court will: hear any objections concerning the fairness of the Settlement; determine the fairness of the Settlement; decide whether to approve Class Counsel's request for attorneys' fees and costs; and decide whether to award the Class Representatives $2,500 each from the Settlement Fund for their services in helping to bring and settle this case. Lemonade has agreed that Class Counsel may be paid reasonable attorneys' fees from the Settlement Fund in an amount to be determined by the Court. Class Counsel is entitled to seek no more than 33 1/3% of the Settlement Fund plus the value of the injunctive relief, but the Court may award less than this amount.

**How Do I Get More Information?** For more information, including a more detailed Notice, a copy of the Settlement Agreement and other documents, go to www.Lemonadesettlement.com, contact the settlement administrator at 1-___-___-____ or Lemonade Settlement Administrator, [address], or call Class Counsel at 646-837-7150.

# EXHIBIT B

*to*
*Settlement Agreement*

# *IL Class Postcard Notice*

COURT AUTHORIZED NOTICE OF CLASS
ACTION AND PROPOSED SETTLEMENT

OUR RECORDS INDICATE YOU HAVE SUBMITTED AN INSURANCE CLAIM TO LEMONADE AND MAY BE ENTITLED TO A PAYMENT FROM A CLASS ACTION SETTLEMENT.

Lemonade Settlement
Settlement Administrator
P.O. Box 0000
City, ST 00000-0000

|||||||||||||||||||||
Postal Service: Please do not mark barcode

XXX—«ClaimID»    «MailRec»

«First1» «Last1»
«C/O»
«Addr1»  «Addr2»
«City», «St»  «Zip» «Country»

By Order of the Court Dated: [date]

A settlement has been reached in a class action lawsuit claiming that Lemonade, Inc., Lemonade Insurance Company, Lemonade Insurance Agency, LLC, Lemonade, Ltd., and Lemonade Life Insurance Agency, LLC ("Lemonade"), collected, captured, received, or otherwise obtained and/or stored the biometric identifiers and biometric information (collectively, "biometric information") of thousands of Illinois insureds in violation of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. Lemonade denies the allegations.

**Am I a Class Member?** Our records indicate you may be an Illinois Settlement Sub-Class Member. Illinois Settlement Sub-Class Members are Illinois residents who used who, between June 25, 2019 and May 27, 2021, provided first notice of loss through a video claim submission to Lemonade from which Lemonade could have collected, captured, received, or otherwise obtained and/or stored data or information that could be construed as biometric identifiers or biometric information. .

**What Can I Get?** If approved by the Court, a Settlement Fund of $4,000,000.00 will be established to pay all Settlement Class Members, of which $3,000,000 of the Settlement Fund will be allocated to members of the Illinois Settlement Sub-Class, and $1,000,000 of the Settlement Fund will be allocated to members of a Nationwide Settlement Class, together with notice and administration expenses, approved attorneys' fees and costs, and incentive awards.

**How Do I Get a Payment?** If you are a Settlement Class Member, you must submit a timely and properly completed Claim Form no later than [**claims deadline**] to receive a pro rata payment. Claim Forms can be found and submitted on-line or you may have received a Claim Form in the mail as a postcard attached to a summary of this notice. To submit a Claim Form on-line or to request a paper copy, go to [**SETTLEMENT WEBSITE**] or call toll free**, 1-800-000-0000**.

**What are My Other Options?** You may exclude yourself from the Class by sending a letter to the Settlement Administrator no later than [**objection/exclusion deadline**]. If you exclude yourself, you cannot get a settlement payment, but you keep any rights you may have to sue the Defendants over the legal issues in the lawsuit. You and/or your lawyer have the right to appear before the Court and/or to object to the proposed settlement. Your written objection must be filed no later than [**objection/exclusion deadline**]. Specific instructions about how to object to, or exclude yourself from, the Settlement are available at [www.Lemonadesettlement.com]. If you do nothing and the Court approves the Settlement, you will be bound by all of the Court's orders and judgments. In addition, your claims relating to the alleged collection and storage of biometric information in this case against the Defendants will be released.

**Who Represents Me?** The Court has appointed Milberg Coleman Bryson Phillips Grossman, PLLC, Scott+Scott Attorneys At Law LLP, Freed Kanner London & Millen LLC, Lynch Carpenter LLP, and Bursor & Fisher, P.A. to represent the class. These attorneys are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

**When Will the Court Consider the Proposed Settlement?** The Court will hold the Final Approval Hearing at _____.m. on [date] at the Eighteenth Judicial Circuit Court for the County of DuPage, Illinois, 505 N. County Farm Road, _____, Wheaton, IL 60187. At that hearing, the Court will: hear any objections concerning the fairness of the Settlement; determine the fairness of the Settlement; decide whether to approve Class Counsel's request for attorneys' fees and costs; and decide whether to award the Class Representatives $2,500 each from the Settlement Fund for their services in helping to bring and settle this case. Lemonade has agreed that Class Counsel may be paid reasonable attorneys' fees from the Settlement Fund in an amount to be determined by the Court. Class Counsel is entitled to seek no more than 33 1/3% of the Settlement Fund plus the value of the injunctive relief, but the Court may award less than this amount.

**How Do I Get More Information?** For more information, including a more detailed Notice, a copy of the Settlement Agreement and other documents, go to www.Lemonadesettlement.com, contact the settlement administrator at 1-___-___-____ or Lemonade Settlement Administrator, [address], or call Class Counsel at 646-837-7150.



Lemonade Settlement Administrator
c/o [Settlement Administrator]
PO Box 0000
City, ST 00000-0000

XXX

**LEMONADE SETTLEMENT CLAIM FORM**

THIS CLAIM FORM MUST BE SUBMITTED ONLINE OR POSTMARKED BY [CLAIMS DEADLINE] AND MUST BE FULLY COMPLETED, BE SIGNED, AND MEET ALL CONDITIONS OF THE SETTLEMENT AGREEMENT.

Instructions: Fill out each section of this form and sign where indicated.

Name (First, M.I., Last): _____    _____    _____

Current Mailing Address: _____

City: _____    State: \_\_\_\_ \_\_\_\_    Zip Code: \_\_\_\_ \_\_\_\_ \_\_\_\_ \_\_\_\_ \_\_\_\_

Address Where You Lived When You Submitted Your Insurance Claim (if different)

_____

Email Address (optional): _____

Contact Phone #: ( \_\_\_ \_\_\_ \_\_\_) \_\_\_ \_\_\_ \_\_\_ − \_\_\_ \_\_\_ \_\_\_ \_\_\_ (You may be contacted if further information is required.)

<u>Class Member Verification</u>: By submitting this claim form and checking the boxes below, I declare that I believe I am a member of the Settlement Class and that the following statements are true (each box must be checked to receive a payment):

☐ I submitted an insurance claim to Lemonade between June 25, 2019 and May 27, 2021, and had my Biometric Identifiers and/or Biometric Information collected, captured, received, or otherwise obtained or disclosed by Lemonade or its agent(s) in (select **one**):

       ☐ the State of Illinois; or

       ☐ other State (if not Illinois).

☐ I have not filed for an Opt-Out or to be excluded from this Settlement.

☐ I have not submitted any other Claim for the same account and have not authorized any other person or entity to do so, and know of no other person or entity having done so on my behalf. If I maintained account(s) jointly with any other person or entity, only one Claim has or will be submitted per account.

☐ Under penalty of perjury, all information provided in this Claim Form is true and correct to the best of my knowledge and belief.

Signature: _____    Date: \_\_\_ \_\_\_/ \_\_\_ \_\_\_/ \_\_\_ \_\_\_

Print Name: _____

Before you complete and submit this Claim Form by mail or online, you should read and be familiar with the information contained in this notice and available at [SETTLEMENT WEBSITE]. The Settlement Administrator will review your Claim Form; you may be required to submit additional documentation to validate your claim. If accepted, you will be provided an electronic payment or check for *pro rata* share of the Net Settlement Fund. This process takes time. Please be patient.

**Questions, visit [SETTLEMENT WEBSITE] or call [toll free number]**

# IL Nationwide Postcard Notice

COURT AUTHORIZED NOTICE OF CLASS
ACTION AND PROPOSED SETTLEMENT

OUR RECORDS INDICATE YOU HAVE SUBMITTED AN INSURANCE CLAIM TO LEMONADE AND MAY BE ENTITLED TO A PAYMENT FROM A CLASS ACTION SETTLEMENT.

Lemonade Settlement
Settlement Administrator
P.O. Box 0000
City, ST 00000-0000

||||||||||||||||||||||||
Postal Service: Please do not mark barcode

XXX—«ClaimID»    «MailRec»

«First1» «Last1»
«C/O»
«Addr1»  «Addr2»
«City», «St»  «Zip» «Country»

By Order of the Court Dated: [date]

A settlement has been reached in a class action lawsuit claiming that Lemonade, Inc., Lemonade Insurance Company, Lemonade Insurance Agency, LLC, Lemonade, Ltd., and Lemonade Life Insurance Agency, LLC ("Lemonade"), collected, captured, received, or otherwise obtained and/or stored the biometric identifiers and biometric information (collectively, "biometric information") of thousands of insureds in the United States in violation of various state consumer protection statutes, including, but not limited to, New York's Uniform Deceptive Trade Practices Act Section 349 and California's Unfair Competition Law, Bus. & Prof. Code § 17200, and other common-law claims, including claims for unjust enrichment.. Lemonade denies the allegations.

**Am I a Class Member?** Our records indicate you may be a Nationwide Settlement Class Member. Nationwide Settlement Class Members are United States residents who used who, between June 25, 2019 and May 27, 2021, provided first notice of loss through a video claim submission to Lemonade from which Lemonade could have collected, captured, received, or otherwise obtained and/or stored data or information that could be construed as biometric identifiers or biometric information. .

**What Can I Get?** If approved by the Court, a Settlement Fund of $4,000,000.00 will be established to pay all Settlement Class Members, of which $1,000,000 of the Settlement Fund will be allocated to members of a Nationwide Settlement Class, and $3,000,000 of the Settlement Fund will be allocated to members of the Illinois Settlement Sub-Class, together with notice and administration expenses, approved attorneys' fees and costs, and incentive awards.

**How Do I Get a Payment?** If you are a Settlement Class Member, you must submit a timely and properly completed Claim Form no later than **[claims deadline]** to receive a pro rata payment. Claim Forms can be found and submitted on-line or you may have received a Claim Form in the mail as a postcard attached to a summary of this notice. To submit a Claim Form on-line or to request a paper copy, go to **[SETTLEMENT WEBSITE]** or call toll free**, 1-800-000-0000**.

**What are My Other Options?** You may exclude yourself from the Class by sending a letter to the Settlement Administrator no later than **[objection/exclusion deadline]**. If you exclude yourself, you cannot get a settlement payment, but you keep any rights you may have to sue the Defendants over the legal issues in the lawsuit. You and/or your lawyer have the right to appear before the Court and/or to object to the proposed settlement. Your written objection must be filed no later than **[objection/exclusion deadline]**. Specific instructions about how to object to, or exclude yourself from, the Settlement are available at **[www.Lemonadesettlement.com]**. If you do nothing and the Court approves the Settlement, you will be bound by all of the Court's orders and judgments. In addition, your claims relating to the alleged collection and storage of biometric information in this case against the Defendants will be released.

**Who Represents Me?** The Court has appointed Milberg Coleman Bryson Phillips Grossman, PLLC, Scott+Scott Attorneys At Law LLP, Freed Kanner London & Millen LLC, Lynch Carpenter LLP, and Bursor & Fisher, P.A. to represent the class. These attorneys are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

**When Will the Court Consider the Proposed Settlement?** The Court will hold the Final Approval Hearing at \_\_\_\_\_**.m.** on **[date]** at the Eighteenth Judicial Circuit Court for the County of DuPage, Illinois, 505 N. County Farm Road, _____, Wheaton, IL 60187. At that hearing, the Court will: hear any objections concerning the fairness of the Settlement; determine the fairness of the Settlement; decide whether to approve Class Counsel's request for attorneys' fees and costs; and decide whether to award the Class Representatives $2,500 each from the Settlement Fund for their services in helping to bring and settle this case. Lemonade has agreed that Class Counsel may be paid reasonable attorneys' fees from the Settlement Fund in an amount to be determined by the Court. Class Counsel is entitled to seek no more than 33 1/3% of the Settlement Fund, plus the value of the injunctive relief, but the Court may award less than this amount.

**How Do I Get More Information?** For more information, including a more detailed Notice, a copy of the Settlement Agreement and other documents, go to www.Lemonadesettlement.com, contact the settlement administrator at 1-\_\_\_-\_\_-\_\_\_\_ or Lemonade Settlement Administrator, **[address]**, or call Class Counsel at 646-837-7150.



Lemonade Settlement Administrator
c/o [Settlement Administrator]
PO Box 0000
City, ST 00000-0000

XXX

## LEMONADE SETTLEMENT CLAIM FORM

THIS CLAIM FORM MUST BE SUBMITTED ONLINE OR POSTMARKED BY [CLAIMS DEADLINE] AND MUST BE FULLY COMPLETED, BE SIGNED, AND MEET ALL CONDITIONS OF THE SETTLEMENT AGREEMENT.

Instructions: Fill out each section of this form and sign where indicated.

Name (First, M.I., Last): _____    _____    _____

Current Mailing Address: _____

City: _____ State: ____  ____   Zip Code: ____  ____  ____  ____  ____

Address Where You Lived When You Submitted Your Insurance Claim (if different)

_____

Email Address (optional): _____

Contact Phone #: ( ___  ___  ___) ___  ___  ___  – ___  ___  ___  (You may be contacted if further information is required.)

<u>Class Member Verification</u>: By submitting this claim form and checking the boxes below, I declare that I believe I am a member of the Settlement Class and that the following statements are true (each box must be checked to receive a payment):

☐ I submitted an insurance claim to Lemonade between June 25, 2019 and May 27, 2021, and had my Biometric Identifiers and/or Biometric Information collected, captured, received, or otherwise obtained or disclosed by Lemonade or its agent(s) in (select **one**):

      ☐ the State of Illinois; or

      ☐ other State (if not Illinois).

☐ I have not filed for an Opt-Out or to be excluded from this Settlement.

☐ I have not submitted any other Claim for the same account and have not authorized any other person or entity to do so, and know of no other person or entity having done so on my behalf. If I maintained account(s) jointly with any other person or entity, only one Claim has or will be submitted per account.

☐ Under penalty of perjury, all information provided in this Claim Form is true and correct to the best of my knowledge and belief.

Signature: _____    Date: ___  ___/ ___  ___/ ___  ___

Print Name: _____

Before you complete and submit this Claim Form by mail or online, you should read and be familiar with the information contained in this notice and available at [SETTLEMENT WEBSITE]. The Settlement Administrator will review your Claim Form; you may be required to submit additional documentation to validate your claim. If accepted, you will be provided an electronic payment or check for *pro rata* share of the Net Settlement Fund. This process takes time. Please be patient.

**Questions, visit [SETTLEMENT WEBSITE] or call [toll free number]**

# EXHIBIT C

*to*
*Settlement Agreement*

**CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT**
**DUPAGE COUNTY, ILLINOIS**
*Clarke, et al. v. Lemonade, Inc. et al.*, Civil Action No. ⬚⬚⬚⬚⬚⬚⬚

IF YOU ARE UNITED STATES RESIDENT WHO, BETWEEN JUNE 25, 2019 AND MAY 27, 2021, PROVIDED FIRST NOTICE OF LOSS THROUGH A VIDEO CLAIM SUBMISSION TO LEMONADE FROM WHICH LEMONADE COULD HAVE COLLECTED, CAPTURED, RECEIVED, OR OTHERWISE OBTAINED AND/OR STORED DATA OR INFORMATION THAT COULD BE CONSTRUED AS BIOMETRIC IDENTIFIERS OR BIOMETRIC INFORMATION, YOU MAY BE ENTITLED TO A PAYMENT FROM A CLASS ACTION SETTLEMENT.

*A court authorized this notice. You are not being sued. This is not a solicitation from a lawyer.*

A Settlement has been reached in a class action lawsuit against Lemonade, Inc., Lemonade Insurance Company, Lemonade Insurance Agency, LLC, Lemonade, Ltd., and Lemonade Life Insurance Agency, LLC (collectively, "Lemonade"). In the class action lawsuit, plaintiffs allege that Lemonade unlawfully collected, captured, received, or otherwise obtained and/or stored the Biometric Identifiers and/or Biometric Information of United States insureds through its insurance software. Lemonade denies the allegations.

- You are included if you are a United States resident and who, between June 25, 2019 and May 27, 2021, provided first notice of loss through a video claim submission to Lemonade from which Lemonade could have collected, captured, received, or otherwise obtained and/or stored data or information that could be construed as biometric identifiers or biometric information.

- Those included in the Settlement will be eligible to automatically receive a *pro rata* payment from the Net Settlement Fund.

- Read this notice carefully. Your legal rights are affected whether you act or don't act.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM BY [DATE]** | This is the only way to receive a payment. |
| **EXCLUDE YOURSELF FROM THE CLASS BY [DATE]** | You will receive no benefits, but you will retain any rights you currently have to sue Lemonade about the claims in this case. Excluding yourself is the only option that allows you to ever bring or maintain your own lawsuit against Lemonade regarding the allegations in this case ever again. |
| **OBJECT BY [DATE]** | Write to the Court explaining why you don't like the Settlement and think it shouldn't be approved. Filing an objection does not exclude you from the Settlement. |

These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

The Court in charge of this action has preliminarily approved the Settlement as fair, reasonable, and adequate, and must decide whether to give final approval to the Settlement. The relief provided to Class Members will be provided only if the Court gives final approval to the Settlement and, if there are any appeals, after the appeals are resolved in favor of the Settlement. ***Please be patient***.

**BASIC INFORMATION**

### 1. Why was this Notice issued?

A Court authorized this notice because you have a right to know about a proposed Settlement of this class action lawsuit and about all of your options, before the Court decides whether to give final approval to the Settlement. This Notice explains the lawsuit, the Settlement, and your legal rights.

The case is pending in the Circuit Court of Eighteenth Judicial Circuit, DuPage County, Illinois. The case is called *Clarke, et al. v. Lemonade, Inc. et al., Civil Action No. _____*. The persons who sued are called the Plaintiffs. The Defendants are Lemonade, Inc., Lemonade Insurance Company, Lemonade Insurance Agency, LLC, Lemonade, Ltd., and Lemonade Life Insurance Agency, LLC.

### 2. What is a class action?

In a class action, one or more people called class representatives (in this case, Alexander Clarke, Milton Citchens, Andrew Garcia, Ebony Jones, Kyle Swerdlow, Marla Walker, and Ryann Webb) sue on behalf of a group or a "class" of people who have similar claims. In a class action, the court resolves the issues for all class members, except for those who exclude themselves from the Class.

### 3. What is this lawsuit about?

This lawsuit claims that Lemonade violated Illinois, New York, California, and other state laws and common law by unlawfully collecting, capturing, receiving, or otherwise obtaining and/or storing its Illinois insureds' Biometric Identifiers and/or Biometric Information through its insurance software. Lemonade denies the claims in the lawsuit, contends that it did not do anything wrong, and denies that class certification is warranted or appropriate. The Court did not resolve the claims and defenses raised in this action. Nor has the Court determined that Lemonade did anything wrong or that this matter should be certified as a class action except if the Settlement is fully approved by the Court. Rather, the Parties have, without admitting liability, agreed to settle the lawsuit to avoid the uncertainties and expenses associated with ongoing litigation.

## 4. Why is there a Settlement?

The Court has not decided whether the Plaintiffs or Lemonade should win this case. Instead, both sides agreed to a Settlement. That way, they avoid the uncertainties and expenses associated with ongoing litigation, and Class Members will get compensation sooner rather than, if at all, after the completion of a trial.

**The issuance of this Notice is not an expression of the Court's opinion on the merit or the lack of merit of Plaintiffs' claims or the defenses in the lawsuit. Both parties recognize that to resolve the issues raised in the lawsuit would be time-consuming, uncertain, and expensive.**

### WHO'S INCLUDED IN THE SETTLEMENT?

## 5. How do I know if I am in the Settlement Class?

The Court decided that everyone who fits the following description is a member of the **Illinois Settlement Sub-Class**:

All Defendants' policyholders in the State of Illinois who, between June 25, 2019 and May 27, 2021, provided first notice of loss through a video claim submission from which Defendants or Released Parties could have collected, captured, received, or otherwise obtained or disclosed data or information that could be construed as biometric identifiers of any kind and/or biometric information of any kind.

The Court decided that everyone who fits the following description is a member of the **Nationwide Settlement Class**:

All Defendants' policyholders in the United States who, between June 25, 2019 and May 27, 2021, provided first notice of loss through a video claim submission from which Defendants or Released Parties could have collected, captured, received, or otherwise obtained or disclosed data or information that could be construed as biometric identifiers of any kind and/or biometric information of any kind.

### THE SETTLEMENT BENEFITS

## 6. What does the Settlement provide?

***Monetary Relief***: A Settlement Fund has been created totaling $4,000,000.00, of which $3,000,000 of the Settlement Fund will be allocated to members of the Illinois Settlement Sub-Class, and $1,000,000 of the Settlement Fund will be allocated to members of a Nationwide Settlement Class. Settlement Class Member payments as well as the cost to administer the Settlement, the cost to inform people about the

Settlement, attorneys' fees, and an award to the Class Representatives, will come out of this fund (*see* Question 12).

***Prospective Relief***: On or about May 27, 2021 Lemonade stopped collecting biometric identifiers or biometric information. On or about _____, ____, Lemonade also deleted all previously -collected biometric information and/or biometric identifiers from all Settlement Class Members. If, in the future, Lemonade starts collecting biometric identifiers or biometric information, it will comply with BIPA and all other applicable laws.

A detailed description of the settlement benefits can be found in the <u>Settlement Agreement</u>. [insert hyperlink]

## 7. How can I get a payment from the Settlement?

If you are a Settlement Class Member, you must submit a timely and properly completed Claim Form no later than [**claims deadline**] to receive a pro rata payment. Claim Forms can be found and submitted on-line or you may have received a Claim Form in the mail as a postcard attached to a summary of this notice. To submit a Claim Form on-line or to request a paper copy, go to [SETTLEMENT WEBSITE] or call toll free, **1-800-000-0000.**

## 8. When will I get my payment?

The hearing to consider the fairness of the settlement is scheduled for [Final Approval Hearing Date]. If the Court approves the settlement, eligible Class Members whose claims were approved by the Settlement Administrator will receive their payment shortly after the Settlement has been finally approved and/or after any appeals process is complete. Please be patient; this process could take a while. Class Members will receive their payments via check or direct deposit, at your election, provided however that that the default payment method will be check. All checks will expire and become void 180 days after they are issued.

### REMAINING IN THE SETTLEMENT

## 9. What am I giving up if I stay in the Class?

If the Settlement becomes final, you will give up your right to sue Lemonade and other Released Parties for the claims being resolved by this Settlement. The specific claims you are giving up against Lemonade are described in the Settlement Agreement. You will be "releasing" Lemonade and certain of its affiliates, employees and representatives as described in Section 3.2 of the Settlement Agreement. Unless you exclude yourself (*see* Question 13), you are "releasing" the claims, regardless of whether you submit a claim or not. The Settlement Agreement is available through the "court documents" link on the website.

The Settlement Agreement describes the released claims with specific descriptions, so read it carefully. If you have any questions you can talk to the lawyers listed in Question 11 for free or you can, of course, talk to your own lawyer if you have questions about what this means.

## 10. What happens if I do nothing at all?

You will automatically receive a designated *pro rata* share of the Net Settlement Fund—which will be the remainder of the Settlement Fund after the deduction of attorneys' fees, expenses, incentive awards, notice and settlement administration costs, and any other costs agreed to by the Parties and approved by the Court. You will receive your share by check.

### THE LAWYERS REPRESENTING YOU

## 11. Do I have a lawyer in the case?

The Court has appointed Milberg Coleman Bryson Phillips Grossman, PLLC, Scott+Scott Attorneys At Law LLP, Freed Kanner London & Millen LLC, Lynch Carpenter LLP, and Bursor & Fisher, P.A to be the attorneys representing the Settlement Class. They are called "Class Counsel." They believe, after conducting an extensive investigation, that the Settlement Agreement is fair, reasonable, and in the best interests of the Settlement Class. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

## 12. How will the lawyers be paid?

Any Class Counsel attorneys' fees and costs awarded by the Court will be paid out of the Settlement Fund in an amount to be determined by the Court. The fee petition will seek no more than 33 1/3% of the Settlement Fund, plus the value of the injunctive relief; the Court may award less than this amount. Under the Settlement Agreement, any amount awarded to Class Counsel will be paid out of the Settlement Fund.

Subject to approval by the Court, the Class Representatives may be paid up to $2,500 each from the Settlement Fund.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

## 13. How do I get out of the Settlement?

To exclude yourself from the Settlement, you must mail or otherwise deliver a written request for exclusion stating that you want to be excluded from the *Clarke, et al. v. Lemonade, Inc. et al., Civil Action No.* _____ settlement. Your letter or request for exclusion must also include your name, your address, your signature, the name and number of this case, and a statement that you wish to be excluded. You must

mail or deliver your exclusion request no later than **[objection/exclusion deadline]** to:

Lemonade Settlement
0000 Street
City, ST 00000

## 14. If I don't exclude myself, can I sue Lemonade for the same thing later?

No. Unless you exclude yourself, you give up any right to sue Lemonade for the claims being resolved by this Settlement.

## 15. If I exclude myself, can I get anything from this Settlement?

No. If you exclude yourself, you will not receive a *pro rata* payment from the Net Settlement Fund.

### OBJECTING TO THE SETTLEMENT

## 16. How do I object to the Settlement?

If you are a Class Member and do not exclude yourself from the Settlement Class, you can object to the Settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must file with the Court a letter or brief stating that you object to the Settlement in *Clarke, et al. v. Lemonade, Inc. et al., Civil Action No.* _____, identify all your reasons for your objections (including citations and supporting evidence), and attach any materials you rely on for your objections. Your letter or brief must also include your name, your address, the basis upon which you claim to be a Class Member, the name and contact information of any and all attorneys representing, advising, or in any way assisting you in connection with your objection, and your signature. If you, or an attorney assisting you with your objection, have ever objected to any class action settlement where you or the objecting attorney has asked for or received payment in exchange for dismissal of the objection (or any related appeal) without modification to the settlement, you must include a statement in your objection identifying each such case by full case caption. You must also mail or deliver a copy of your letter or brief to Class Counsel and Defendants' Counsel listed below.

Class Counsel will file with the Court and post on this website its request for attorneys' fees by [two weeks prior to objection deadline].

If you want to appear and speak at the Final Approval Hearing to object to the Settlement, with or without a lawyer (explained below in the answer to Question Number 20), you must say so in your letter or brief and file the objection with the Court and mail a copy to Class Counsel and Defendants' Counsel postmarked no later than **[objection deadline].**

| Court | Class Counsel | Defendant's Counsel |
|---|---|---|
| Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois<br>505 N. County Farm Rd., Wheaton, IL 60187 | Gary M. Klinger<br>Milberg Coleman<br>Bryson Phillips<br>Grossman, PLLC 227<br>W. Monroe Street, Suite 2100,<br>Chicago, IL 60606 | Joel Griswold<br>Baker & Hostetler LLP<br>200 South Orange Avenue, Suite 2300<br>Orlando, FL 32801 |

## 17. What's the difference between objecting and excluding myself from the Settlement?

Objecting simply means telling the Court that you don't like something about the Settlement. You can object only if you stay in the Class. Excluding yourself from the Class is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the Settlement no longer affects you.

### THE COURT'S FINAL APPROVAL HEARING

## 18. When and where will the Court decide whether to approve the Settlement?

The Court will hold the Final Approval Hearing at [time] on **Month 00, 2022** at the Eighteenth Judicial Circuit Court for the County of DuPage, Illinois, 505 N. County Farm Road, Wheaton, IL 60187. The purpose of the hearing will be for the Court to determine whether to approve the Settlement as fair, reasonable, adequate, and in the best interests of the Class; to consider the Class Counsel's request for attorneys' fees and expenses; and to consider the request for an incentive award to the Class Representatives. At that hearing, the Court will be available to hear any timely filed objections and arguments concerning the fairness of the Settlement.

The hearing may be postponed to a different date or time without notice, so it is a good idea to check [SETTLEMENT WEBSITE] or call 1-800-000-0000. If, however, you timely objected to the Settlement and advised the Court that you intend to appear and speak at the Final Approval Hearing, you will receive notice of any change in the date of such Final Approval Hearing.

## 19. Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have, but you are welcome to come at your own expense. If you send an objection or comment, you don't have to come to Court to talk about it. As long as you filed and mailed your written objection on time, the Court will consider it. You may also pay another lawyer to attend, but it's not required.

## 20. May I speak at the hearing?

Yes. So long as you timely filed an objection to the settlement, you may ask the Court for permission to speak at the Fairness Hearing, but do not have to. To do so, you must include in your letter or brief objecting to the settlement a statement saying that it is your "Notice of Intent to Appear in *Clarke, et al. v. Lemonade, Inc. et al., Civil Action No. _____.*" It must include your name, address, telephone number and signature as well as the name and address of your lawyer, if one is appearing for you. Your objection and notice of intent to appear must be filed with the Court and postmarked no later than **[objection deadline]** and be sent to the addresses listed in Question 16.

### GETTING MORE INFORMATION

## 21. Where do I get more information?

This Notice summarizes the Settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement at [SETTLEMENT WEBSITE]. You may also write with questions to Lemonade Settlement, P.O. Box 0000, City, ST 00000. You can call the Settlement Administrator at 1-800-000-0000 or Class Counsel at 1-646-837-7150, if you have any questions. Before doing so, however, please read this full Notice carefully. You may also find additional information elsewhere on the case website. **Please do not telephone the Court to inquire about the settlement or the claims process.**

# EXHIBIT 2



Firm Resume

# FIRM PROFILE

MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLP ("MILBERG") IS A LEADING GLOBAL PLAINTIFFS' FIRM, successfully pioneering and litigating complex litigations in the following practice areas: class actions, antitrust and competition law, securities fraud, consumer protection, cyber security and data breach litigation, financial and insurance litigation, environmental law, securities litigation, and product liability. Our attorneys possess a renowned depth of legal expertise, employ the highest ethical and legal standards, and pride themselves on providing stellar service and achieving extraordinary results for their clients.

Milberg was founded in 1965, taking the lead in landmark cases that have set groundbreaking legal precedents and prompted changes in corporate governance benefiting shareholders and consumers. For more than 50 years, the firm has protected victims' rights, recovering over $50 billion in verdicts and settlements. Milberg was one of the first law firms to prosecute class actions in federal courts on behalf of investors and consumers. The firm pioneered this type of litigation and became widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing.

Milberg has offices in Illinois, New York, California, Florida, Georgia, Kentucky, Louisiana, Mississippi, North Carolina, South Carolina, Kentucky, Tennessee, Puerto Rico and Washington D.C. Recently, Milberg opened offices in London, Belgium and Germany that serve clients in the European Union. In addition, Milberg has expanded in South America, with primary emphasis in Brazil. Milberg has more than 100 attorneys worldwide.

The firm's reputation has been built by successfully taking on challenging cases across a spectrum of practice areas for the past half-century. From resolving business disputes to proving antitrust conspiracies, Milberg is equipped to handle complex, high-stakes cases at any stage of the litigation process.

The firm's lawyers have been regularly recognized as leaders in the plaintiffs' bar by the National Law Journal, Legal 500, Chambers USA, and Super Lawyers, among others.

## Notable Class Action Cases

### Antitrust

*In re: TFT-LCD (Flat Panel) Antitrust Litigation,* No. 3:07-cv-01827, MDL No. 1827 (N.D. Cal.) (combined settlement totaling nearly $1.1 billion in suit alleging the illegal formation of an international cartel to restrict competition in the LCD panel market) (2012).

### Apartment Fee

*Stewart v. Southwood Realty Company* (Cumberland Co., NC) (settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2020).

*Lewis et al. v. Bridge Property Management, LLC et al.* (Wake Co., NC) (settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2020).

*Hargrove v. Grubb Management, Inc. et al.* (Wake Co., NC) (settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2020).

*Rush v. The NRP Group LLC* (USDC MD NC) (settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2020).

*Hamilton v. Arcan Capital, LLC et al.* (Forsyth Co., NC) (settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2021).

*Suarez v. Camden Development, Inc. et al.* (USDC ED NC) (settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2021).

*Milroy et al. v. Bell Partners Inc. et al.* (USDC ED NC) (settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2021).

*Davis v. RAM Partners, LLC* (USDC MD NC) (settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2021).

*Hampton v. KPM et al.* (USDC WD NC) (settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2021).

*Brogden v. Kenney Properties, Inc. et al.* (Wake Co., NC) (settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2021).

*Williams v. Pegasus Residential, LLC* (USDC MD NC) (preliminary approval of settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2021).

*Medina v. Westdale et al*. (USDC ED NC) (settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2021).

*Talley et al. v. Lincoln Property Company* (USDC ED NC) (preliminary approval of settlement of class claims arising from apartment communities allegedly assessing improper eviction fees pending) (2021).

*McCord v. PRG Real Estate Mgmt, Inc. et al.* (USDC MD NC) (pending final approval of settlement of class claims arising from apartment communities allegedly assessing improper eviction fees) (2021).

## **Appliances**

*Ersler, et. al v. Toshiba America et. al*, No. 07- 2304 (D.N.J.) (settlement of claims arising from allegedly defective television lamps) (2009).

*Maytag Neptune Washing Machines* (class action settlement for owners of Maytag Neptune washing machines).

*Stalcup, et al. v. Thomson, Inc.* (Ill. Cir. Ct.) ($100 million class settlement of clams that certain GE, PROSCAN and RCA televisions may have been susceptible to temporary loss of audio when receiving broadcast data packages that were longer than reasonably anticipated or specified) (2004).

*Hurkes Harris Design Associates, Inc., et al. v. Fujitsu Computer Prods. of Am., Inc.* (settlement provides $42.5 million to pay claims of all consumers and other end users who bought certain Fujitsu Desktop 3.5" IDE hard disk drives) (2003).

*Turner v. General Electric Company*, No. 2:05-cv-00186 (M.D. Fla.) (national settlement of claims arising from allegedly defective refrigerators) (2006).

## Automobiles

*In re General Motors Corp. Speedometer Prods. Liability Litig.,* MDL 1896 (W.D. Wash.) (national settlement for repairs and reimbursement of repair costs incurred in connection with defective speedometers) (2007).

*Baugh v. The Goodyear Tire & Rubber Company* (class settlement of claims that Goodyear sold defective tires that are prone to tread separation when operated at highway speeds; Goodyear agreed to provide a combination of both monetary and non-monetary consideration to the Settlement Class in the form of an Enhanced Warranty Program and Rebate Program) (2002).

*Lubitz v. Daimler Chrysler Corp.,* No. L-4883-04 (Bergen Cty. Super. Ct, NJ 2006) (national settlement for repairs and reimbursement of repair costs incurred in connection with defective brake system; creation of $12 million fund; 7th largest judgment or settlement in New Jersey) (2007).

*Berman et al. v. General Motors LLC,* Case No. 2:18-cv-14371 (S.D. Fla.) (Co-Lead Counsel; national settlement for repairs and reimbursement of repair costs incurred in connection with Chevrolet Equinox excessive oil consumption).

## Civil Rights

*In re Black Farmers Discrimination Litigation*, Case No. 1:08-mc-00511 (D.D.C.) ($1.25 billion settlement fund for black farmers who alleged U.S. Department of Agriculture discriminated against them by denying farm loans) (2013).

*Bruce, et. al. v. County of Rensselaer et. al.,* Case No. 02-cv-0847 (N.D.N.Y.) (class settlement of claims that corrections officers and others employed at the Rensselaer County Jail (NY) engaged

in the practice of illegally strip searching all individuals charged with only misdemeanors or minor offenses) (2004).

## Commercial

*In re: Outer Banks Power Outage Litigation,* 4:17-cv-141 (E.D.N.C) (Co-Lead Counsel; $10.35 million settlement for residents, businesses, and vacationers on Hatteras and Ocracoke Islands who were impacted by a 9-day power outage) (2018)

## Construction Materials

*Cordes et al v. IPEX, Inc.*, No. 08-cv-02220-CMA-BNB (D. Colo.) (class action arising out of defective brass fittings; court-appointed member of Plaintiffs' Steering Committee) (2011).

*Elliott et al v. KB Home North Carolina Inc. et al* 08-cv-21190 (N.C. Super. Ct. Wake County) (Lead Counsel; class action settlement for those whose homes were constructed without a weather-resistant barrier)(2017)

*In re: Pella Corporation Architect and Designer Series Windows Marketing, Sales Practices and Products Liability Litigation,* MDL No. 2514 (D.S.C.)(class action arising from allegedly defective windows; Court-appointed Co-Lead Counsel.)

*In re MI Windows and Doors, Inc., Products Liability Litigation*, MDL No. 2333 (D.S.C) (National class action settlement for homeowners who purchased defective windows; Court-appointed Co-Lead Counsel).

*In re: Atlas Roofing Corporation Chalet Shingle Products Liability Litig.*, MDL No. 2495 (N.D. Ga.) (class action arising from allegedly defective shingles; Court-appointed Co-Lead Counsel).

*Helmer et al. v. Goodyear Tire & Rubber Co*., No. 12-cv-00685-RBJ (D. Colo. 2012) (class action arising from allegedly defective radiant heating systems; Colorado class certified, 2014 WL 3353264, July 9, 2014)).

*In re: Zurn Pex Plumbing Products Liability Litigation*, No. o:08-md-01958, MDL No. 1958 (D. Minn.) (class action arising from allegedly plumbing systems; member of Executive Committee; settlement) (2012).

*Hobbie, et al. v. RCR Holdings II, LLC, et al.*, No. 10-1113 , MDL No. 2047 (E.D. La.) ($30 million settlement for remediation of 364 unit residential high-rise constructed with Chinese drywall) (2012).

*In re: Chinese Manufactured Drywall Products Liability Litigation,* No. 2:09-md-02047, MDL No. 2047 (E.D. La.) (litigation arising out of defective drywall) (appointed Co-Chair, Insurance Committee) (2012).

*Galanti v. Goodyear Tire & Rubber Co*., No. 03-209 (D.N.J. 2003) (national settlement and creation of $330 million fund for payment to owners of homes with defective radiant heating systems) (2003).

*In re Synthetic Stucco Litig.,* Civ. Action No. 5:96-CV-287-BR(2) (E.D.N.C.) (member of Plaintiffs' Steering Committee; settlements with four EIFS Manufacturers for North Carolina homeowners valued at more than $50 million).

*In re Synthetic Stucco (EIFS) Prods. Liability Litig.,* MDL No. 1132 (E.D.N.C.) (represented over 100 individuals homeowners in lawsuits against homebuilders and EIFS manufacturers).

*Posey, et al. v. Dryvit Systems, Inc.,* Case No. 17,715-IV (Tenn. Cir. Ct) (Co-Lead Counsel; national class action settlement provided cash and repairs to more than 7,000 claimants) (2002).

*Sutton, et al. v. The Federal Materials Company, Inc., et al*, No. 07-CI-00007 (Ky. Cir. Ct) (Co-Lead Counsel; $10.1 million class settlement for owners of residential and commercial properties constructed with defective concrete).

*Staton v. IMI South, et al.* (Ky. Cir. Ct.) ((Co-Lead Counsel; class settlement for approximately $30 million for repair and purchase of houses built with defective concrete).

*In re Elk Cross Timbers Decking Marketing, Sales Practices and Products Liability Litigation*, No. 15-cv-0018, MDL No. 2577 (D.N.J.) (Lead Counsel; national settlement to homeowners who purchased defective GAF decking and railings).

*Bridget Smith v. Floor and Decor Outlets of America, Inc*., No. 1:15-cv-4316 (N.D. Ga.) (Co-Lead Counsel; National class action settlement for homeowners who purchased unsafe laminate wood flooring).

*In re Lumber Liquidators Chinese-Manufactured Flooring Products Marketing, Sales Practices and Products Liability Litigation* MDL No. 1:15-md-2627 (E.D.Va.) (Formaldehyde case; $36 million national class action settlement for member who purchased a certain type of laminate flooring).

*In re Lumber Liquidators Chinese-Manufactured Laminate Flooring Durability Marketing, Sales Practices Litigation* MDL No. 1:16-md-2743 (E.D.Va.) (Co-Lead Counsel; Durability case; $36 million national class action settlement for member who purchased a certain type of laminate flooring).

*In re Windsor Wood Clad Window Products Liability Litigation* MDL No. 2:16-md-02688 (E.D. Wis.) (National class action settlement for homeowners who purchased defective windows; Court-appointed Lead Counsel).

*In re Allura Fiber Cement Siding Products Liability Litigation* MDL No. 2:19-md-02886 (D.S.C.) (class action arising from allegedly defective cement board siding; Court-appointed Lead Counsel).

## Environmental

*Nnadili, et al. v. Chevron U.S.A., Inc*, No. 02-cv-1620 (D.D.C.) ($6.2 million settlement for owners and residents of 200 properties located above underground plume of petroleum from former Chevron gas station) (2008).

## Fair Labor Standards Act/Wage and Hour

*Craig v. Rite Aid Corporation*, Civil No. 08-2317 (M.D. Pa.) (FLSA collective action and class action settled for $20.9 million) (2013).

*Stillman v. Staples, Inc.,* Civil No. 07-849 (D.N.J. 2009) (FLSA collective action, plaintiffs' trial verdict for $2.5 million; national settlement approved for $42 million) (2010).

*Lew v. Pizza Hut of Maryland, Inc.*, Civil No. CBB-09-CV-3162 (D. Md.) (FLSA collective action, statewide settlement for managers-in-training and assistant managers, providing recompense of 100% of lost wages) (2011).

## Financial

*Roberts v. Fleet Bank (R.I.), N.A.*, Civil Action No. 00-6142 (E. D. Pa.) ($4 million dollar settlement on claims that Fleet changed the interest rate on consumers' credit cards which had been advertised as "fixed.") (2003).

*Penobscot Indian Nation et al v United States Department of Housing and Urban Development*, N. 07-1282 (PLF) (D.D.C. 2008) (represented charitable organization which successfully challenged regulation barring certain kinds of down-payment assistance; Court held that HUD's promulgation of rule violated the Administrative Procedure Act) (2008).

## Impact Fees

*Town of Holly Springs,* No. 17-cvs-6244, 17-cvs-6245, 18-cvs-1373 (Wake Co., NC) (Court appointed Class Counsel; Class action settlement with a $7.9 million fund for builders and developers to recover improper capacity replacement and transportation fees paid to the town) (2019).

*Larry Shaheen v. City of Belmont,* No. 17-cvs-394 (Gaston Co., NC) (Court appointed Class Counsel; Class action settlement with a $1.65 million fund for builders and developers to recover improper capacity replacement and transportation fees paid to the city) (2019).

*Upright Builders Inc. et al. v. Town of Apex,* No. 18-cvs-3720 & 18-cvs-4384, (Wake Co., NC) (Court appointed Class Counsel; Class action settlement with a $15.3 million fund for builders and developers to recover improper capacity replacement and transportation paid fees to the town) (2019).

*Mayfair Partners, LLC et al. v. City of Asheville,* No. 18-cvs-04870 (Buncombe County) (Court appointed Class Counsel; Class action settlement with a $1,850,000 million fund for builders and developers to recover improper impact fees paid to the city) (2020).

*Shenandoah Homes, LLC v. Town of Clayton*, No. 19-cvs-640 (Johnston County) (Court appointed Class Counsel; Class action settlement with a $2.7 million fund for builders and developers to recover improper impact fees paid to the town) (2020).

*Brookline Homes LLC v. City of Mount Holly*, Gaston County file no. 19-cvs-1163 (Gaston County) (Court appointed Class Counsel; Class action settlement with a $483,468 fund for builders and developers to recover improper impact fees paid to the city) (2020).

*Eastwood Construction, LLC et. al v City of Monroe*, Union County file nos. 18-CVS-2692 (Union County) (Court appointed Class Counsel; Class action settlement with a $1,750,000 million fund for builders and developers to recover improper impact fees paid to the city) (2020).

## Insurance

*Young, et al.  v. Nationwide Mut. Ins. Co, et al*., No. 11-5015 (E.D. Ky.) (series of class actions against multiple insurance companies arising from unlawful collection of local taxes on premium payments; class certified and affirmed on appeal, 693 F.3d 532 (6th Cir., 2012); settlements with all defendants for 100% refund of taxes collected) (2014).

*Nichols v. Progressive Direct Insurance Co., et al*., No. 2:06cv146 (E.D. Ky.) (Class Counsel; class action arising from unlawful taxation of insurance premiums; statewide settlement with Safe Auto Insurance Company and creation of $2 million Settlement Fund; statewide settlement with Hartford Insurance Company and tax refunds of $1.75 million) (2012).

## Privacy/Data Breach

*Baksh v. Ivy Rehab Network, Inc*., Case No. 7:20-cv-01845-CS (S.D. N.Y.) (class counsel in a data breach class action settlement; final approval granted).

*In re: GE/CBPS Data Breach Litigation*, 1:2020-cv-02903, Doc. 35 (S.D.N.Y.) (appointed co-lead counsel in nationwide class action).

*Mowery et al. v. Saint Francis Healthcare System*, Case No. 1:20-cv-00013-SRC (E.D. Mo.) (appointed class counsel; final approval granted);

*Chatelain et al. v. C, L and W PLLC d/b/a Affordacare Urgent Care Clinics*, Case No. 50742-A (42nd District Court for Taylor County, Texas) (appointed class counsel; settlement valued at over $7 million; final approval granted).

*Bailey v. Grays Harbor County Public Hospital District et al.*, Case No. 20-2-00217-14 (Grays Harbor County Superior Court, State of Washington) (appointed class counsel in hospital data breach class action involving approximately 88,000 people; final approval granted).

*Nelson, et al. v. Idaho Central Credit Union*, No. CV03-20-00831 (Bannock County, Idaho) (appointed co-lead counsel in data breach class action involving 17,000 class members; granted final approval of settlement valued at $3.3 million).

*In Re: Canon U.S.A. Data Breach Litigation*, Master File No. 1:20-cv-06239-AMD-SJB (E.D.N.Y.) (appointed co-lead counsel).

*Richardson v. Overlake Hospital Medical Center et al.*, Case No. 20-2-07460-8 SEA (King County Superior Court, State of Washington (appointed class counsel in data breach case; final approval granted).

*Kenney et al. v. Centerstone of America, Inc. et al.*, Case No. 3:20-cv-01007-EJR (M.D. Tenn.) (appointed lead class counsel; final approval of $1.5 million settlement granted August 9, 2021).

*Klemm et al. v. Maryland Health Enterprises, Inc. D/B/A Lorien Health Services,* C-03-CV-20-002899 (Circuit Court for Baltimore County, Maryland) (appointed Settlement Class Counsel, preliminary approval granted).

*Suren et al. v. DSV Solutions, LLC*, Case No. 2021CH000037 (Circuit Court for the Eighteenth Judicial Circuit of DuPage County, Illinois) (appointed Settlement Class Counsel, final approval granted September 27, 2021).

*Aguallo et al v. Kemper Corporation et al.,* Case No. 1:21-cv-01883 (N.D. Ill.) (appointed Co-lead Counsel, final approval granted of $17.1 million class settlement).

*Martinez et al. v. NCH Healthcare System, Inc.*, Case No. 2020-CA-000996 (Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida) (Mr. Lietz appointed Settlement Class Counsel; final approval granted).

*Carr et al. v. Beaumont Health et al.*, Case No. 2020-181002-NZ (Circuit Court for the County of Oakland, Michigan) (appointed co-class counsel in data breach case involving 112,000 people; final approval granted October 2021).

*Cece et al. v. St. Mary's Health Care System, Inc. et al.*, Civil Action No. SU20CV0500 (Superior Court of Athens-Clarke County, Georgia) (appointed Settlement Class Counsel in data breach case involving 55,652 people; preliminary approval granted December 2021).

*In re: Herff Jones Data Breach Litigation*, Master File No. 1:21-cv-1329-TWP-DLP (S.D. Ind.) (appointed co-lead counsel in data breach involving over 1 million persons; preliminary approval of $4.35 million settlement granted January 2022).

*In Re: CaptureRx Data Breach Litigation*, No. 5:21-cv-00523-OLG (W.D. Tex.) (appointed co-lead counsel in data breach case involving over 2.4 million class members; preliminary approval of $4.75 million settlement granted February 2022).

*In re Arthur J. Gallagher Data Breach Litigation*, No. 1:21-cv-04056 (N.D. Ill.) (appointed co-lead counsel in data breach case involving over 3 million class members).

*Heath v. Insurance Technologies Corp.*, No. 21-cv-01444 (N.D. Tex.) ($11 million settlement for a major data breach involving more than 4 million consumers).

*Powers, Sanger et al v. Filters Fast LLC*, Case 3:20-cv-00982-jdp (appointed co-lead Settlement Class Counsel; preliminary approval granted November 2021).

*Garcia v. Home Medical Equipment Specialists, LLC*, Case No. D-202-cv-2021-06846 (appointed class counsel; preliminary approval granted January 2022).

*Baldwin et al. v. National Western life Insurance Company*, Case No. 2:21-cv-04066 (W.D. Mo.) (appointed co-class counsel; preliminary approval granted January 2022 in settlement valued at approximately $4 million).

*Hashemi, et. al. v. Bosley, Inc.*, Case No. 21-cv-00946-PSG (RAOx) (C.D. CA) (appointed co-class counsel; preliminary approval granted February 2022).

# **EXHIBIT 3**



# INVESTING IN THE LAW

## Firm Overview



"If we desire respect for the law, we must first make the law respectable."

*Louis D. Brandeis* - 16 October 1912.





WE BELIEVE IN
BOTH THE SPIRIT
AND THE LETTER
OF THE LAW.

Scott+Scott specializes in the investigation and prosecution of complex actions across the globe – recovering billions for its clients. The Firm has extensive experience litigating securities fraud, antitrust, and other complex cases and is a pioneer in structured finance monitoring for client portfolios. We represent individual, institutional and multinational clients in the U.S and EU courts, offering a one-stop shop for international recoupment.

# THE FIRM

Scott+Scott was founded in 1975 and began its securities litigation practice in 1997. The Firm has since grown into one of the most respected law firm specializing in the investigation and prosecution of complex actions across the United States and in Europe. Today, it is comprised of over 125 team members, including over 100 highly experienced attorneys, a 30+ paraprofessional team comprised of paralegals and legal assistants, a finance manager, institutional investor liaisons, and other office support staff, in addition to an IT support and development group, financial analysts, forensic accountants, investment consultants, and an in-house investigations department.

Scott+Scott is headquartered in Connecticut and has additional offices in New York, London, Amsterdam, Berlin, California, Virginia, Ohio, and Arizona.

Scott+Scott has extensive experience litigating securities fraud, antitrust, and other complex cases on behalf of our institutional and individual clients throughout the United States, serving as lead counsel in numerous securities class actions since the enactment of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and as lead and co-lead



counsel in antitrust, consumer, and other complex litigation. The Firm also represents many multinational corporations in foreign jurisdiction litigation in the EU courts.

Scott+Scott's attorneys are recognized experts and leaders in securities monitoring, complex litigation, and corporate governance law. They regularly speak at institutional investor educational conferences around the world and before boards of directors and trustees responsible for managing institutional investments. Scott+Scott attorneys educate institutional investors and governmental entities on the importance of fulfilling fiduciary obligations through the adoption of appropriate asset recovery services, as well as through the development and enforcement of corporate governance initiatives.

Scott+Scott has been a pioneer in structured finance monitoring of our clients' portfolios and the Firm's vast experience in structured debt financial litigation has enabled us to provide clients with in-depth monitoring of their structured finance products. Structured-finance products, like asset-backed securities and collateralized debt obligations, attract investors with high returns relative to other fixed-income instruments. However, those returns can come with substantial undisclosed risks due to investors' limited ability to assess what they are actually acquiring. Most investors cannot review the assets that underlie



securitizations, nor negotiate around the boiler-plate terms that govern securitizations, and have very little control over the parties that administer securitizations.

Scott+Scott's portfolio monitoring service responds to these unique risks. Importantly, the Firm does not just track the performance of our clients' structured-finance positions. We analyze it in the context of other data that allows us to understand what drives losses, should any occur. Initially, Scott+Scott conducts a review of the overall record of the parties that issue and administer our clients' structured-finance investments, such as sponsors, servicers, and trustees. The conduct of those parties reveals whether a securitization is suffering from hidden flaws, such as defective underlying assets, for which investors should be compensated. In addition, Scott+Scott reviews securitizations' asset-level performance ts and their governing agreements to identify any specific instances of those parties breaching their obligations and harming investors. This comprehensive approach enables Scott+Scott to identify hard-to-spot wrongdoing and hold the appropriate parties responsible, ultimately winning significant recoveries for clients who purchased structured-finance products. The Firm has also evaluated and monitored debt and debentures originating from private placements and non-public companies, including municipal bonds and derivatives for our clients.



# CONSUMER LITIGATION

Scott+Scott's Consumer Practice Group consists of some of the premier advocates in the area of consumer protection and has been at the forefront in litigating and securing some of the most significant consumer protection settlements on behalf of its clients, resulting in hundreds of millions of dollars to class members. The Firm's Consumer Practice Group has attorneys dedicated to three primary areas: Data Breach/Data Privacy Litigation, Healthcare and Pharmaceutical Litigation, and Consumer Protection Litigation.



## DATA BREACH/DATA PRIVACY LITIGATION

Scott+Scott has extensive experience litigating data privacy and data breach class actions advancing cutting-edge legal theories. The Firm has achieved some of the largest recoveries in this area and currently serves in a leadership capacity in a number of data privacy and data breach class actions, including:

- *In re Equifax, Inc. Customer Data Security Breach Litigation*, No. 1:17-md-02800 (N.D. Ga.) (claims on behalf of financial institutions injured as a result of the 2017 Equifax data breach that exposed the personal and financial information of approximately 150 million U.S. consumers; preliminary approval of **settlement valued at $32.5 millio**n);

- *In re Google Assistant Privacy Litigation*, No. 5:19-cv-04286 (N.D. Cal.) (class action on behalf of consumers alleging privacy violations whereby Google Assistant records and discloses their private confidential communications without consent);

- *Lopez v. Apple Inc.*, No. 4:19-cv-04577 (N.D. Cal.) (class action on behalf of consumers and their minor children alleging privacy violations by Apple through its Siri application); and

- *In re: American Medical Collection Agency, Inc. Customer Data Security Breach Litigation*, No. 2:19-md-02904 (D.N.J.) (claims on behalf of consumers involving data breach of personal information).

Recently, in settling a class action against The Wendy's Co. involving a breach of personal and financial information, the court, in approving the $50 million dollar settlement, noted that Scott+Scott and its attorneys demonstrated *"very significant experience in these types of class actions and in data breach litigation"* and that the attorneys *"brought to the table an incredible wealth of knowledge, was always prepared, really was thorough and professional in everything that was provided to the Court." First Choice Federal Credit Union v. The Wendy's Co.*, No. 2:16-cv-00506, Transcript at 32 (W.D. Pa. Nov. 6, 2019).

## REPRESENTATIVE DATA BREACH/DATA PRIVACY CASES

Additional data privacy and data breach settlements achieved by Scott+Scott for its clients include:

- *The Home Depot, Inc., Customer Data Security Breach Litigation*, MDL No. 2583 (N.D. Ga.) (co-lead counsel; **$27.25 million settlement** on behalf of financial institutions involving data breach and theft of the personal and financial information of over 40 million credit and debit card holders);

- *In re Target Corporation Customer Data Security Breach Litigation*, MDL No. 2522 (D. Minn.) (**$59 million settlemen**t on behalf of financial institutions injured by the theft of sensitive payment card information);

- *Greater Chautauqua Federal Credit Union v. Kmart Corporation*, No. 1:15-cv-02228 (N.D. Ill.) (settlement valued at $13.4 million on behalf of financial institutions injured by the theft of sensitive payment card information); and

- WinSouth Credit Union v. Mapco Express, Inc., No. 3:14-cv-01573 (M.D. Tenn.) (largest per dollar per card recovery involving payment card data breach brought on behalf of a class of financial institutions).

## INSURANCE AND PHARMACEUTICAL LITIGATION

Scott+Scott represents consumers and health and welfare funds throughout the United States who have been overcharged in connection with their insurance and pharmaceutical transactions. The Firm currently serves in a leadership capacity in a number of insurance and pharmaceutical class actions, including:

- *Sohmer v. UnitedHealth Group Inc.*, No. 0:18-cv-03191 (D. Minn.) (co-lead counsel; claims on behalf of plan participants alleging overcharge for prescription drug copayments);

- *Negron v. Cigna Corporation*, No. 3:16-cv-01702 (D. Conn.) (chair of executive committee; claims on behalf of plan participants alleging overcharge for prescription drug copayments);

- *Forth v. Walgreen Co, Inc.*, No. 1:17-cv-02246 (N.D. Ill.) (class action on behalf of consumers and third party union benefit funds alleging unlawful overcharges for medically necessary prescription drugs); and

- *Stafford v. Rite Aid Corporatio*n, No. 3:17-cv-01340 (S.D. Cal.) (class action on behalf of consumers who were overcharged for prescription drug claims).

## REPRESENTATIVE INSURANCE AND PHARMACEUTICAL CASES

Scott+Scott have significant experience litigating against insurance companies and pharmaceutical manufacturers. The Firm's lawyers have obtained some of the largest settlements in consumer healthcare litigation, including:

- *In re Managed Care Litig.*, MDL No. 1334 (S.D. Fla.) (**settlements** with Aetna, CIGNA, Prudential, Health Net, Humana, and WellPoint providing monetary and injunctive benefits **exceeding $1 billion**); and

- *In re Prudential Ins. Co. SGLI/VGLI Contract Litigation*, MDL No. 2208 (D. Mass.) (**$40 million settlement** was achieved on behalf of a class of military service members and their families who had purchased insurance contracts).

## CONSUMER PROTECTION LITIGATION

Scott+Scott has been at the forefront in prosecuting consumer protection actions against organizations engaging in unfair practices. The Firm currently serves in a leadership capacity in a number of consumer protection class actions, including:

- *Aquilina v. Certain Underwriters at Lloyd's London*, No. 1:18-cv-00496 (D. Haw.) (representing Hawaii homeowners who were placed into insurance excluding lava coverage and suffered devastating losses as a result of the 2018 eruption of Kilauea); and

- *Morris v. Apple, Inc.*, No. 5:20-cv-04812 (N.D. Cal.) (class action on behalf of consumers who purchased iTunes gift cards under false pretenses and were not refunded the value of the iTunes gift cards).

**Representative Consumer Protection Cases:**

Over the past decade, Scott+Scott has litigated a number of diverse cases and fought for rights of consumers to be treated fairly and equitably. The Firm has achieved significant settlements that have protected consumers' rights and recovered substantial monetary benefits, including:

- *The Vulcan Society, Inc. v. The City of New York*, No. 1:07-cv-02067 (E.D.N.Y.) (**$100 million settlement and significant injunctive relief** was obtained for a class of black applicants who sought to be New York City firefighters, but were denied or delayed employment due to racial discrimination);

- *In re Providian Financial Corp. Credit Card Terms Litigation*, MDL No. 1301 (E.D. Pa.) (**$105 million settlement** was achieved on behalf of a class of credit card holders who were charged excessive interest and late charges on their credit cards);

- *In re Pre-Filled Propane Tank Marketing & Sales Practices Litigation*, MDL No. 2086 (W.D. Mo.) (**$37 million settlement** obtained on behalf of class of propane purchasers who alleged defendants overcharged the class for under-filled propane tanks);

- *Murr v. Capital One Bank (USA)*, N.A., No. 1:13-cv-01091 (E.D. Va.) (**$7.3 million settlement** pending on behalf of class of consumers who were misled into accepting purportedly 0% interest credit card offers); and

- *Gunther v. Capital One, N.A.*, No. 2:09-cv-02966 (E.D.N.Y.) (**settlement resulting in class members receiving 100% of their damages** in case alleging consumers were improperly charged undeliverable mail fees).



# ANTITRUST LITIGATION

Scott+Scott represents investors, businesses, and consumers in price-fixing, bid-rigging, monopolization, and other restraints of trade cases on both a class-wide and individual basis. The Firm's work for its clients helps ensure that markets remain free, open, and competitive.

Scott+Scott has been recognized by the American Antitrust Institute with an Outstanding Antitrust Litigation Achievement in Private Law Practice award in 2020, 2018, and an honorable mention in 2014. In addition, the 2018 Antitrust Annual Report found that in 2018, the Firm had the highest antitrust settlement in the country, as well as ranking first nationally in aggregate settlement amount from 2013 to 2018, recovering over $3.4 billion. Scott+Scott's dedicated team of antitrust partners have built one of the nation's top plaintiffs' firms for antitrust actions. Furthermore, our European expansion reflects a commitment and ability to pursue claims on a global basis.



# Antitrust

# CASE EXAMPLES

**Antitrust actions in which Scott+Scott currently serves as a lead or co-lead counsel include:**

- *In re: Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13-cv-07789 (S.D.N.Y.) (challenging price-fixing of foreign exchange rates; over **$2.3 billion in final-approved settlements**). **The largest antitrust settlement of 2018 according to the American Antitrust Institute**;

- *In re Disposable Contact Lens Antitrust Litig.*, No. 15-md-02626 (M.D. Fla.) (class action alleging illegal anticompetitive policies to eliminate discount pricing by the major manufacturers and distributors of disposable contact lenses);

- *In re Cattle Antitrust Litig.*, No. 19-cv-1222 (D. Minn.) (class action challenging conspiracy among the nation's dominant meat packers to suppress fed cattle prices)

- *In re European Gov't Bonds Antitrust Litig.*, No. 19-cv-02601 (S.D.N.Y) (challenging manipulation in the market for European Government Bonds);

- *In re ICE LIBOR Antitrust Litig.*, No. 19-cv-02002 (S.D.N.Y.) (class action alleging anticompetitive conduct in the setting of the ICE LIBOR benchmark rate);

- *Deslandes v. McDonalds USA, LLC*, No. 17-cv-04857 (N.D. Ill.) (class action challenging no-hire agreement among McDonald's franchisees);

- *Butler v. Jimmy John's Franchise, LLC*, No. 18-cv-00133 (S.D. Ill.) (class action challenging no-hire agreement among Jimmy John's franchisees); and

- *Blanton v. Domino's Pizza Franchising LLC*, No. 18-cv-13207 (E.D. Mich.) (class action challenging no-hire agreement among Domino's franchisees).

**Antitrust cases in which Scott+Scott previously served as lead or co-lead counsel include:**

- *Dahl v. Bain Capital Partners, LLC*, No. 07-cv-12388 (D. Mass.) (challenging bid rigging and market allocation of leveraged buyouts by private equity firms; **$590.5 million in settlements**);

- *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-cv-07126 (S.D.N.Y.) (challenging price-fixing of the ISDAfix benchmark interest rate; **$504.5 million in settlements**). **The 3rd largest antitrust settlement of 2018 according to the American Antitrust Institute;**

- *In re GSE Bonds Antitrust Litig.*, No. 19-cv-01704 (S.D.N.Y.) (challenging manipulation in the market for bonds issued by Government-Sponsored Entities, e.g., Freddie Mac and Fannie Mae; **$386 million settlement**);

- *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, MDL No. 1891 (C.D. Cal.) (challenging price-fixing/illegal surcharge of ticket prices; **$86 million in cash and travel voucher settlements**); and
- *Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*, No. 12-cv-03824 (E.D. Pa.) (challenging monopolization in the sale of name-brand pharmaceutical on behalf of indirect purchaser class; **$8 million settlement**).

**The Firm has aided in the recovery for class members by serving on the executive leadership committees in numerous other class action litigation, including:**

- *In re Payment Card Interchange Fee & Merch. Discount Antitrust Litig.*, No. 05-md-01720 (E.D.N.Y.) (challenging price-fixing in the payment cards industry; **$6.24 billion settlement** preliminarily approved);
- *Kleen Products LLC v. Int'l Paper Co.*, No. 10-cv-05711 (N.D. Ill.) (challenging price-fixing of containerboard products; **over $376 million in settlements**);
- *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420 (N.D. Cal.) (challenging price-fixing of lithium-ion batteries on behalf of indirect purchaser class; **over $113 million in settlements**); and
- *In re Mexican Gov't Bonds Antitrust Litig.*, No. 18-cv-02830 (S.D.N.Y.) (an antitrust class action by eight institutional investors prosecuting 10 global financial institutions for colluding to fix the prices of debt securities issued by the Mexican Government between 2006 and 2017).

**Scott+Scott's class action antitrust experience includes serving as co-trial counsel in:**
- In re Scrap Metal Antitrust Litig., No. 02-cv-00844 (N.D. Ohio) (helped obtain a **$34.5 million jury verdict**, which was subsequently affirmed by the U.S. Court of Appeals for the Sixth Circuit); and
- *Ross v. Bank of Am. N.A.*, MDL No. 1409 (S.D.N.Y.) (bench trial involving agreement among payment cards to impose arbitration terms on cardholders).





# WORLD-CLASS ATTORNEYS

We pride ourselves on the caliber of legal talent on our team. In addition to some of the best and brightest rising stars, we have attorneys who have served with distinction in the U.S. Department of Justice, been admitted to the U.S. Supreme Court, served in OAGs at the state level, argued before the UK's CAT and High Courts, and received virtually every accolade offered in our profession.

# JOSEPH P. GUGLIELMO

PRACTICE EMPHASIS

Joseph P. Guglielmo represents institutional and individual clients in antitrust, consumer and securities litigation in federal and state courts throughout the United States.

EDUCATION

Catholic University of America (J.D., 1995; B.A., cum laude, 1992; Certificate of Public Policy)

HIGHLIGHTS

Mr. Guglielmo is a partner in the firm's New York office and was recognized for his efforts representing New York University in obtaining a monumental temporary restraining order of over $200 million from a Bernard Madoff feeder fund. Specifically, New York State Supreme Court Justice Richard B. Lowe III stated, "Scott+Scott has demonstrated a remarkable grasp and handling of the extraordinarily complex matters in this case. The extremely professional and thorough means by which NYU's counsel has litigated this matter has not been overlooked by this Court."

Mr. Guglielmo serves in a leadership capacity in a number of complex antitrust and consumer actions, including: *In Equifax, Inc. Customer Data Security Breach Litigation*, No. 1:17-md-2800 (N.D. Ga.), co-lead counsel, claims on behalf of financial institutions involving data breach of personal and financial information of approximately 150 million consumers, *Arkansas Federal Credit Union v. Hudson Bay*, No. 1:19-cv-4492-PKC (S.D.N.Y.), lead counsel, claims on behalf of financial institutions arising out of data breaches; *Forth v. Walgreen Co, Inc.*, No. 1:17-cv-02246 (N.D. Ill.), lead counsel, asserting claims on behalf of class of consumers and third-party payers alleging overcharge for medically necessary, covered prescription drugs; *Sohmer v. UnitedHealth Group Inc.*, No. 18-cv-03191 (JNE/BRT) (D. Minn.); co-lead counsel, claims on behalf of plan participants alleging over-charge for copayments; *Negron v. Cigna Corporation*, No. 3:16-cv-1702 (WWE) (D. Conn.) (chair of executive committee, claims on behalf of plan participants involving overcharge of copayments for prescription drugs); *In re: Disposable Contact Lens Antitrust Litigation*, No. 3:15-md-2626 (M.D. Fla.), co-lead counsel, claims on behalf of a class of contact lens purchasers alleging violations of the antitrust laws; *In re: American Airlines Federal Credit Union v Sonic Corp.*, No., CIV-19-208G (N.D. Ohio.), Plaintiffs' Executive Committee, claims on behalf of financial institutions involving data breach of financial information of approximately five million consumers; and *In re: American Medical Collection Agency, Inc. Customer Data Security Breach Litigation*, No. 19-md-2904 (D.N.J.), Plaintiffs' Steering Committee, claims on behalf of consumers involving data breach of personal information.

Mr. Guglielmo is also actively involved in *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 1:13-cv-07789-LGS (S.D.N.Y), which involves claims on behalf of purchasers of foreign exchange instruments alleging violations of federal antitrust laws.

Mr. Guglielmo has achieved significant victories and obtained numerous settlements for his clients. Mr. Guglielmo was co-lead counsel in *In re The Home Depot, Inc., Customer Data Security Breach Litigation*, MDL No. 2583 (N.D. Ga.), where a $27.25 million settlement

was obtained on behalf of financial institutions involving a data breach and the theft of the personal and financial information of over 40 million credit and debit card holders. Mr. Guglielmo is counsel in *First Choice Federal Credit Union v. The Wendy's Company*, No. 16-cv-00506 (W.D. Pa.), where a **$50 million settlement** was obtained. He is also co-lead counsel in *Veridian Credit Union v. Eddie Bauer LLC*, No. 2:17-CV-00356-JLR (W.D. Wa.), where a settlement valued at approximately **$9.8 million** was recently obtained. Previously, Mr. Guglielmo was also a member of the Plaintiffs' Steering Committee in *In re Target Corporation Customer Data Security Breach Litigation*, MDL No. 2522 (D. Minn.), where a **$59 million settlement** was obtained on behalf of financial institutions involving data breach of personal and financial information of approximately 110 million credit and debit cardholders. Mr. Guglielmo was also lead counsel in *Winsouth Credit Union v. Mapco Express Inc.*, No. 3:14-cv-1573 (M.D. Tenn.), which achieved the largest dollar-per-card recovery on behalf of financial institutions involving data breach of credit and debit card information. Mr. Guglielmo was one of the principals involved in the litigation and settlement of *In re Managed Care Litigation*, MDL No. 1334 (S.D. Fla.), which included **settlements** with Aetna, CIGNA, Prudential, Health Net, Humana, and WellPoint, providing monetary and injunctive benefits **exceeding $1 billion.**

Additional cases in which Mr. Guglielmo played a leading role and obtained substantial recoveries for his clients include: *Love v. Blue Cross and Blue Shield Ass'n*, No. 03-cv-21296 (S.D. Fla.), which resulted in **settlements of approximately $130 million and injunctive benefits valued in excess of $2 billion;** *In re Insurance Brokerage Antitrust Litigation*, MDL No. 1897 (D.N.J.), **settlements in excess of $180 million;** *Valle v. Popular Community Bank*, No. 653936/2012 (N.Y. Supreme Ct.), **$5.2 million settlement** on behalf of consumers, *In re Pre-Filled Propane Tank Marketing and Sales Practices Litigation*, MDL No. 2086 (W.D. Mo.), consumer **settlements in excess of $40 million;** *Bassman v. Union Pacific Corp.*, No. 97-cv-02819 (N.D. Tex.), **$35.5 million securities class action settlement;** *Garcia v. Carrion,* No. CV 11-1801 (D.P.R.), substantial **corporate governance reforms;** *Boilermakers National Annuity Trust Fund v. WaMu Mortgage Pass-Through Certificates*, No. 09-cv-00037 (W.D. Wash.), **$26 million securities class action settlement**, *Murr v. Capital One Bank (USA), N.A.*, No. 13-cv-1091 (E.D. Va.), **$7.3 million settlement** pending on behalf of class of consumers who were misled into accepting purportedly 0% interest offers, and *Howerton v. Cargill, Inc.*, No. 13-cv-00336 (D. Haw.), **$6.1 million settlement** obtained on behalf of class of consumers who purchased Truvia, purported to be deceptively marketed as "all-natural." Mr. Guglielmo was the principle litigator and obtained a significant opinion from the Hawaii Supreme Court in *Hawaii Medical Association v. Hawaii Medical Service Association*, 113 Hawaii 77 (Haw. 2006), **reversing the trial court's dismissal** and clarifying rights for consumers under the state's unfair competition law.

Mr. Guglielmo **lectures on electronic discovery** and was a **member of the Steering Committee of Working Group 1 of the Sedona Conference®,** an organization devoted to providing guidance and information concerning issues such as discovery and production issues, as well as areas focusing on antitrust law, complex litigation, and intellectual property, and a

member of the drafting team responsible for the Sedona Principles, Third Edition. Presently, Mr. Guglielmo serves on the **board of the Advanced eDiscovery Institute at Georgetown University Law Center**. He is a frequent speaker on electronic discovery issues. Mr. Guglielmo was also recognized for his achievements in litigation by his selection to **The National Law Journal's "Plaintiffs' Hot List."** In 2020, Mr. Guglielmo was recognized by **Super Lawyers** as a top Antitrust lawyer in the New York metro area, was named by **Who's Who in Legal Litigation: Leading Practitioner-E-Discovery** (2020), and was named by **Lawdragon as one of the 500 Leading Plaintiff Financial Lawyers**.

Mr. Guglielmo is also a member of the following associations: District of Columbia Bar Association, New York State Bar Association, and American Bar Association.

## ERIN GREEN COMITE

PRACTICE EMPHASIS

Erin Green Comite litigates complex class actions throughout the United States, representing the rights of shareholders, employees, consumers, and other individuals harmed by corporate misrepresentation and malfeasance.

EDUCATION

University of Washington School of Law (J.D., 2002);
Dartmouth College (B.A., magna cum laude, 1994)

HIGHLIGHTS

Ms. Comite is a partner in the firm's Connecticut office and currently serves in a leadership role in a number of complex class actions including: *First Choice Federal Credit Union v. The Wendy's Company*, No. 16-cv-00506 (W.D. Pa.), co-lead counsel on behalf of financial institutions arising out of data breach; *In re Arby's Restaurant Group, Inc. Litigation*, No. 17-mi-55555 (N.D. Ga.), member of Plaintiffs' Executive Committee on behalf of financial institutions arising out of a data breach, *In re Equifax, Inc. Customer Data Security Breach Litigation*, MDL No. 2800 (N.D. Ga.), chair of law and briefing committee; *Forth v. Walgreen Co, Inc.*, No. 1:17-cv-02246 (N.D. Ill.), co-lead counsel, asserting claims on behalf of class of consumers alleging overcharge for medically necessary, covered prescription drugs; and *Aquilina v. Certain Underwriters at Lloyd's London*, No. 1:18-cv-00496 (D. Haw.), co-lead counsel, alleging that insurers, brokers, and agents improperly steered insureds into surplus lines insurance.

Recently, Ms. Comite has played a significant role in the prosecution of consumer class cases such as: *In re The Home Depot, Inc., Customer Data Security Breach Litigation*, MDL No. 2583 (N.D. Ga.) (**$27.25 million settlement**) and *In re Target Corporation Customer Data Security Breach Litigation*, MDL No. 2522 (D. Minn.) (**$59 million settlement**), two of the largest data breaches impacting consumer personal data to date; *Greater Chautauqua Federal Credit Union v. Kmart Corp.*, No. 15-cv-02228 (N.D. Ill.), *Chair of the Plaintiffs' Steering Committee* (**$8.1 million settlement**); *Morrow v. Ann, Inc.*, No. 1:16-cv-03340 (S.D.N.Y.) (**$8.1 million settlement**); *Howerton v. Cargill, Inc.*, No. 13-cv-00336 (D. Haw.)

($6.1 settlement); *Murr v. Capital One Bank (USA), N.A.*, No. 13-cv-1091 (E.D. Va.) ($7.3 million settlement); and *In re Nutella Mktg. & Sales Practices Litigation*, No. 11-cv-01086 (D.N.J.) ($2.5 million settlement).

Ms. Comite's appellate victories in consumer class actions include *Nunes v. Saks Inc.*, 2019 WL 2305039 (9th Cir. May 30, 2019); *Chavez v. Nestle USA, Inc.*, 511 F. App'x 606 (9th Cir. 2013) (achieving a reversal of dismissal); and *In re Nutella Mktg. & Sales Practices Litigation*, 589 F. App'x 53 (3d Cir. 2014) (defending settlement from professional objectors).

Since joining Scott+Scott in 2002, she has litigated such cases as *In re Priceline.com Securities Litigation* ($80 million settlement); *Schnall v. Annuity and Life Re (Holdings) Ltd.* ($27 million settlement); and *In re Qwest Communications International, Inc.* (settlement obtaining $25 million for the company and achieving corporate governance reforms aimed at ensuring board independence).

While Ms. Comite is experienced in all aspects of complex pre-trial litigation, she is particularly accomplished in achieving favorable results in discovery disputes. *In Hohider v. United Parcel Service, Inc.*, Ms. Comite spearheaded a nearly year-long investigation into every facet of UPS's preservation methods, requiring intensive, full-time efforts by a team of attorneys and paralegals well beyond that required in the normal course of pre-trial litigation. Ms. Comite assisted in devising the plan of investigation in weekly conference calls with the Special Master, coordinated the review of over 30,000 documents that uncovered a blatant trail of deception and prepared dozens of briefs to describe the spoliation and its ramifications on the case to the Special Master. In reaction to UPS's flagrant discovery abuses brought to light through the investigation, the Court conditioned the parties' settlement of the three individual ADA cases on UPS adopting and implementing preservation practices that passed the approval of the Special Master.

Prior to entering law school, Ms. Comite served in the White House as **Assistant to the Special Counsel to President Clinton**. In that capacity, she handled matters related to the White House's response to investigations, including four independent counsel investigations, a Justice Department task force investigation, two major oversight investigations by the House of Representatives and the Senate, and several other congressional oversight investigations.

Ms. Comite's volunteer activities have included **assisting immigrant women, as survivors of domestic violence, with temporary residency applications** as well as **counseling sexual assault survivors**. Currently, Ms. Comite **supports Connecticut Children's Medical Center and March of Dimes/March for Babies**.

## MICHELLE CONSTON
PRACTICE EMPHASIS
Michelle Conston's practice focuses on antitrust litigation.

ADMISSIONS
The Second Circuit Court of Appeals; The Sixth Circuit Court of Appeals; Southern District of New York; Eastern District of Michigan; States of New York, New Jersey and Florida

EDUCATION
Marist College (B.A. Journalism, magna cum laude, 2010); University of Miami School of Law (J.D., magna cum laude, 2013)

ACCOLADES
Selected to Superlawyers® Rising Stars List in Antitrust Litigation in 2018-2020. Law360 "Ones to Watch" 2021.

HIGHLIGHTS
Ms. Conston is an associate in Scott+Scott's New York office and devotes much of her time representing investors in cases involving the manipulation of financial benchmarks by numerous major banks, including *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13-cv-7789 (S.D.N.Y), *In re GSE Bonds Antitrust Litig.*, No. 19-cv-01704 (S.D.N.Y.), and *In re European Government Bonds Antitrust Litig.*, No. 19-cv-2601 (S.D.N.Y.). Ms. Conston also works on cases against pizza restaurants Papa John's and Domino's alleging that their no-poach agreements with their franchisees are per se illegal under the antitrust laws. *In re: Papa John's Employee and Franchisee Employee Antitrust Litig.*, No. 18-cv-00828 (E.D. Ky.) and *Blanton v. Domino's Pizza Franchising LLC*, No. 18-cv-13207 (E.D. Mich.).

During law school, Ms. Conston served as a judicial intern for the Honorable Stephen T. Brown, the Chief Magistrate Judge of the United States District Court for the Southern District of Florida. Ms. Conston also served as a certified legal intern for the United States Attorney's Office for the Southern District of Florida.

Prior to joining Scott+Scott, Ms. Conston represented institutional investors, hedge funds, and individual investors in complex class action litigation arising under the Commodity Exchange Act, Sherman Act, RICO Act, and common law. She was heavily involved in litigating actions alleging the manipulation of the London Interbank Offered Rate ("LIBOR") for several currencies by large financial institutions (e.g., Laydon v. Mizuho Bank, Ltd., No. 12-cv-3419 (S.D.N.Y.) and Sullivan v. Barclays plc, No. 13-cv-00281 (S.D.N.Y.), as well as an action alleging manipulation of the daily London Silver Fixing by the Fixing Banks and several other financial institutions (In re London Silver Fixing, Ltd., Antitrust Litig., No. 14-md-02573 (S.D.N.Y.).

## CAREY ALEXANDER

PRACTICE EMPHASIS
Carey Alexander prosecutes complex consumer class actions with a focus on deceptive pricing and data breach litigation.

ADMISSIONS
United States Courts of Appeal: Ninth Circuit; United States District Courts: Southern, Eastern and Western Districts of New York, Districts of Connecticut, Colorado, Eastern District of Wisconsin and Northern District of Illinois; State of New York

EDUCATION
St. John's University School of Law (J.D., magna cum laude, 2012);
Skidmore College (B.A., 2004)

HIGHLIGHTS
Mr. Alexander is an associate in the firm's New York office and has worked closely with the leadership teams steering numerous class actions, including:

• *In re Equifax, Inc., Customer Data Security Breach Litig.*, No. 1:17-md-2800 (N.D. Ga.) (member of the Plaintiffs' Coordination and Discovery Committee);

• *First Choice Federal Credit Union v. The Wendy's Co.*, No. 2:16-cv-506 (W.D. Pa.) **(settlement valued at $50 million)**; and

• Morrow v. Ann Inc., No. 1:16-cv-3340 (S.D.N.Y.) **(settlement valued at $7.1 million)**.

During law school, Mr. Alexander served as Associate Managing Editor of the **St. John's Law Review**. Mr. Alexander's student note, *Abusive: Dodd–Frank Section 1031 and the Continuing Struggle to Protect Consumers*, 85 St. John's L. Rev. 1105 (2012), has been cited in judicial opinions and several legal journals, including the Harvard Law Review.

Before joining the bar, Mr. Alexander served as an editor of the widely acclaimed consumer-advocacy blog The Consumerist. He also served as a policy advisor to the Bronx Borough President and worked as part of the National Campaign to Restore Civil Rights.

Mr. Alexander has been recognized on the Super Lawyers New York Metro Rising Stars list from 2016 – 2021.


## ALEX OUTWATER

PRACTICE EMPHASIS
Alex Outwater's practice focuses on complex antitrust and consumer class actions.

EDUCATION
University of San Diego School of Law (J.D., 2008);
University of California - Santa Barbara (B.A., Italian Cultural Studies, 1999)

HIGHLIGHTS
• *Indiana State District Council of Laborers & HOD Carriers Pension and Welfare Fund v. Omnicare, Inc.*, No. 2:06-cv-00026-WOB-CJS (E.D. Ky.): (**$20 million settlement**)

• *In Re Tesla Motors, Inc. Stockholder Litigation*, No. 12711-VCS (Del. Ch.): an action alleging Elon Musk, as Tesla's controlling stockholder, and Tesla's Board of Directors, breached fiduciary duties to Tesla shareholders in connection with Tesla's $2.6 billion acquisition of SolarCity (a company in which Musk held a substantial interest)


## SEAN RUSSELL

PRACTICE EMPHASIS
Mr. Russell is an attorney in Scott+Scott's San Diego office where he focuses on complex antitrust litigation and class actions.

ADMISSIONS

United States District Courts: Southern and Central Districts of California, Eastern District of Michigan; State of California

EDUCATION

University of San Diego School of Law (Masters of Taxation, 2016); Thomas Jefferson School of Law (J.D., cum laude, 2015); University of California, Davis (B.A., Economics, 2008)

HIGHLIGHTS

During law school, Mr. Russell was Chief Articles Editor of the Thomas Jefferson Law Review and a Moot Court Competitor. He also served as an extern to the Honorable William V. Gallo of the U.S. District Court for the Southern District of California.

REPRESENTATIVE CASES

Represented class plaintiffs in *Veridian Credit Union v. Eddie Bauer LLC*, No. 2:17-cv-00356 (W.D. Wash.) which resulted in a **$9.8 million settlement.**

Represented class plaintiffs in *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 1:13-cv-07789 (S.D.N.Y.), an action challenging collusion regarding foreign exchange rates which resulted in a **$2.3 billion settlement.**

Represented class plaintiffs in *Alaska Electrical Pension Fund v. Bank of America Corporation*, No. 1:14-cv-07126 (S.D.N.Y.), an action challenging collusion regarding the setting of the ISDAfix benchmark interest rate that resulted in a **$504.5 million settlement.**

*In re: American Airlines Federal Credit Union v Sonic Corp.*, No., CIV-19-208G (N.D. Ohio.), Plaintiffs' Executive Committee, claims on behalf of financial institutions involving data breach of financial information of approximately five million consumers.

Actively involved in *In re UnitedHealth Group PBM Litigation*, No. 0:16-cv-3352 (D. Minn.) asserting ERISA and deceptive trade practice claims on behalf of nationwide class plan participants involving overcharge of co-payments for prescription drugs;

Actively involved in *Josten v. Rite Aid Corp.*, No. 3:18-cv-00152 (S.D. Cal.), an action challenging Rite Aid's reporting of artificially higher prices for certain generic drugs to private and government insurance programs.

Actively involved in numerous No-Poach cases where the franchisor and franchisee entered into agreements that prohibited the franchisees from soliciting or hiring the employees of other franchisees or the franchisor, including *Deslandes v. McDonald's USA, LLC*, No. 1:17-cv-04857 (N.D. Ill.); *Conrad v. Jimmy John's Franchise, LLC*, No 3:18-cv-00133 (S.D. Ill.), *In re: Papa John's Employee and Franchisee Employee Antitrust Litigation*, No. 3:18-cv-00825, and *Blanton v. Domino's Pizza Franchising LLC*, No. 2:18-cv-13207 (E.D. Mich.).

## JOSEPH A. PETTIGREW

PRACTICE EMPHASIS

Joseph A. Pettigrew's practice areas include securities, antitrust, shareholder derivative litigation, and other complex litigation.

ADMISSIONS

States of California and Maryland; United States Supreme Court; United States District Courts: Central, Northern, and Southern Districts of California, District of Maryland

EDUCATION

University of San Diego School of Law (J.D., 2004); Carleton College (B.A., Art History, cum laude, 1998)

HIGHLIGHTS

Mr. Pettigrew is an attorney who works across multiple S+S offices. His work includes the following cases: Dahl v. Bain Capital Partners, LLC, No. 07-cv-12388 (D. Mass.); In re Tile Shop Holdings, Inc. Stockholder Deriv. Litigation, C.A. No. 10884-VCG (Del. Ch.); and In re Robinhood Financial Svs. Litigation, No. 20-cv-1026 (N.D. Cal.).

Mr. Pettigrew has served on the board and as legal counsel to several nonprofit arts organizations.

## ANJA RUSI

PRACTICE EMPHASIS

Ms. Rusi's practice focuses on complex consumer class actions with a focus on deceptive pricing and data breach litigation. She also represents governmental entities who are bringing actions against pharmaceutical manufacturers and distributors in opioid litigation, other than in Connecticut.

Ms. Rusi also represents clients in various Connecticut state court matters including negligence, contractual disputes, and probate administration.

ADMISSIONS

United States District Court for the District of Connecticut; State of Connecticut

EDUCATION

Fairfield University (B.A., 2013); Western New England School of Law (J.D., 2016)

HIGHLIGHTS

Ms. Rusi is an associate in the firm's Connecticut office.  Prior to joining the firm, Ms. Rusi worked for a midsized firm in Hartford representing clients in a broad range of areas including contract and commercial litigation, real estate litigation, and insurance law.

Ms. Rusi practices in varied Connecticut state court matters as well as federal class actions and has been recognized as a "Rising Star" by Connecticut Super Lawyers (2021).

Scott+Scott's attorneys are currently licensed to practice in various federal and state jurisdictions throughout the United States and remain in good standing before their respective state bars for purposes of pro hac vice admission to any state or federal court. The Firm's officers, partners, principals, agents, and employees have never been disciplined, admonished, or warned by the court or had any license, registration, charter, certification, or any similar authorization to engage in the legal profession suspended or revoked for any reason.

# ACCOLADES



### U.S. News & World Report "Best Law Firms"

The Firm is currently ranked by U.S. News & World Report as a "Best Law Firm" in commercial litigation in the New York region.

### American Antitrust Institute

The 2018 Antitrust Annual Report recognized *In re Foreign Currency Benchmark Rates Antitrust Litigation* as the #1 settlement of 2018, as well as ranking the FIrm #1 nationally for aggregate settlements: 2013-2018.

### Global Competition Review

At the 6th Annual Global Competition Review ("GCR") Awards, Scott+Scott won for Litigation of the Year – Cartel Prosecution, which recognized the Firm's efforts in the foreign exchange settlements in the United States, a landmark case in which major banks conspired to manipulate prices paid in the $5.3 trillion-per-day foreign exchange market and have thus far settled for more than $2 billion.

### Law 360 Glass Ceiling Report

Scott+Scott is recognized as one of the top law firms in the nation for female attorneys by the legal publication Law360. The Glass Ceiling Report honors firms that "are demonstrating that the industry's gender diversity goals can turn into a measurable result, and boost the number of women at all levels of a law firm.[1, 2]" This selection highlights the importance Scott+Scott places on diversity and inclusion within the Firm.

### Center for Constitutional RIghts

Scott+Scott was the recipient of the 2010 Center for Constitutional Rights' Pro Bono Social Change Award for its representation of the Vulcan Society, an association of African-American firefighters, in challenging the racially discriminatory hiring practices of the New York City Fire Department.

[1] https://www.law360.com/articles/1310926
  https://www.law360.com/articles/1162859/the-best-law-firms-for-female-attorneys.



**SCOTT + SCOTT**

+ New York
+ London
+ Amsterdam
+ Berlin
+ California
+ Connecticut
+ Virginia
+ Ohio

© 2021 Scott+Scott Attorneys at Law LLP

# EXHIBIT 4



701 BRICKELL AVENUE     888 SEVENTH AVENUE     1990 NORTH CALIFORNIA BLVD.
MIAMI, FL 33131        NEW YORK, NY 10019       WALNUT CREEK, CA 94596

## FIRM RESUME

With offices in Florida, New York, and California, BURSOR & FISHER lawyers have represented both plaintiffs and defendants in state and federal courts throughout the country.

The lawyers at our firm have an active civil trial practice, having won multi-million dollar verdicts or recoveries in six of six class action jury trials since 2008. Our most recent class action trial victory came in May 2019 in *Perez v. Rash Curtis & Associates*, in which Mr. Bursor served as lead trial counsel and won a $267 million jury verdict against a debt collector found to have violated the Telephone Consumer Protection Act.

In August 2013 in *Ayyad v. Sprint Spectrum L.P.*, in which Mr. Bursor served as lead trial counsel, we won a jury verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

In *Thomas v. Global Vision Products, Inc. (II)*, we obtained a $50 million jury verdict in favor of a certified class of 150,000 purchasers of the Avacor Hair Regrowth System. The legal trade publication VerdictSearch reported that this was the second largest jury verdict in California in 2009, and the largest in any class action.

The lawyers at our firm have an active class action practice and have won numerous appointments as class counsel to represent millions of class members, including customers of Honda, Verizon Wireless, AT&T Wireless, Sprint, Haier America, and Michaels Stores as well as purchasers of Avacor™, Hydroxycut, and Sensa™ products. Bursor & Fisher lawyers have been court-appointed Class Counsel or Interim Class Counsel in:

1. *O'Brien v. LG Electronics USA, Inc.* (D.N.J. Dec. 16, 2010) to represent a certified nationwide class of purchasers of LG French-door refrigerators,

2. *Ramundo v. Michaels Stores, Inc.* (N.D. Ill. June 8, 2011) to represent a certified nationwide class of consumers who made in-store purchases at Michaels Stores using a debit or credit card and had their private financial information stolen as a result,

3. *In re Haier Freezer Consumer Litig.* (N.D. Cal. Aug. 17, 2011) to represent a certified class of purchasers of mislabeled freezers from Haier America Trading, LLC,

4. *Rodriguez v. CitiMortgage, Inc.* (S.D.N.Y. Nov. 14, 2011) to represent a certified nationwide class of military personnel against CitiMortgage for illegal foreclosures,

5. *Rossi v. The Procter & Gamble Co.* (D.N.J. Jan. 31, 2012) to represent a certified nationwide class of purchasers of Crest Sensitivity Treatment & Protection toothpaste,

6. *Dzielak v. Whirlpool Corp. et al.* (D.N.J. Feb. 21, 2012) to represent a proposed nationwide class of purchasers of mislabeled Maytag Centennial washing machines from Whirlpool Corp., Sears, and other retailers,

7. *In re Sensa Weight Loss Litig.* (N.D. Cal. Mar. 2, 2012) to represent a certified nationwide class of purchasers of Sensa weight loss products,

8. *In re Sinus Buster Products Consumer Litig.* (E.D.N.Y. Dec. 17, 2012) to represent a certified nationwide class of purchasers,

9. *Ebin v. Kangadis Food Inc.* (S.D.N.Y. Feb. 25, 2014) to represent a certified nationwide class of purchasers of Capatriti 100% Pure Olive Oil,

10. *Forcellati v. Hyland's, Inc.* (C.D. Cal. Apr. 9, 2014) to represent a certified nationwide class of purchasers of children's homeopathic cold and flu remedies,

11. *Ebin v. Kangadis Family Management LLC, et al.* (S.D.N.Y. Sept. 18, 2014) to represent a certified nationwide class of purchasers of Capatriti 100% Pure Olive Oil,

12. *In re Scotts EZ Seed Litig.* (S.D.N.Y. Jan. 26, 2015) to represent a certified class of purchasers of Scotts Turf Builder EZ Seed,

13. *Dei Rossi v. Whirlpool Corp., et al.* (E.D. Cal. Apr. 28, 2015) to represent a certified class of purchasers of mislabeled KitchenAid refrigerators from Whirlpool Corp., Best Buy, and other retailers,

14. *Hendricks v. StarKist Co.* (N.D. Cal. July 23, 2015) to represent a certified nationwide class of purchasers of StarKist tuna products,

15. *In re NVIDIA GTX 970 Graphics Card Litig.* (N.D. Cal. May 8, 2015) to represent a proposed nationwide class of purchasers of NVIDIA GTX 970 graphics cards,

16. *Melgar v. Zicam LLC, et al.* (E.D. Cal. March 30, 2016) to represent a certified ten-jurisdiction class of purchasers of Zicam Pre-Cold products,

17. *In re Trader Joe's Tuna Litigation* (C.D. Cal. December 21, 2016) to represent purchaser of allegedly underfilled Trader Joe's canned tuna.

18. *In re Welspun Litigation* (S.D.N.Y. January 26, 2017) to represent a proposed nationwide class of purchasers of Welspun Egyptian cotton bedding products,

19. *Retta v. Millennium Products, Inc.* (C.D. Cal. January 31, 2017) to represent a certified nationwide class of Millennium kombucha beverages,

20. *Moeller v. American Media, Inc.*, (E.D. Mich. June 8, 2017) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

21. *Hart v. BHH, LLC* (S.D.N.Y. July 7, 2017) to represent a nationwide class of purchasers of Bell & Howell ultrasonic pest repellers,

22. *McMillion v. Rash Curtis & Associates* (N.D. Cal. September 6, 2017) to represent a certified nationwide class of individuals who received calls from Rash Curtis & Associates,

23. *Lucero v. Solarcity Corp.* (N.D. Cal. September 15, 2017) to represent a certified nationwide class of individuals who received telemarketing calls from Solarcity Corp.,

24. *Taylor v. Trusted Media Brands, Inc.* (S.D.N.Y. Oct. 17, 2017) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

25. *Gasser v. Kiss My Face, LLC* (N.D. Cal. Oct. 23, 2017) to represent a proposed nationwide class of purchasers of cosmetic products,

26. *Gastelum v. Frontier California Inc.* (S.F. Superior Court February 21, 2018) to represent a certified California class of Frontier landline telephone customers who were charged late fees,

27. *Williams v. Facebook, Inc.* (N.D. Cal. June 26, 2018) to represent a proposed nationwide class of Facebook users for alleged privacy violations,

28. *Ruppel v. Consumers Union of United States, Inc.* (S.D.N.Y. July 27, 2018) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

29. *Bayol v. Health-Ade* (N.D. Cal. August 23, 2018) to represent a proposed nationwide class of Health-Ade kombucha beverage purchasers,

30. *West v. California Service Bureau* (N.D. Cal. September 12, 2018) to represent a certified nationwide class of individuals who received calls from California Service Bureau,

31. *Gregorio v. Premier Nutrition Corporation* (S.D.N.Y. Sept. 14, 2018) to represent a nationwide class of purchasers of protein shake products,

32. *Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast* (S.D.N.Y. Oct. 24, 2018) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

33. *Bakov v. Consolidated World Travel Inc. d/b/a Holiday Cruise Line* (N.D. Ill. Mar. 21, 2019) to represent a certified class of individuals who received calls from Holiday Cruise Line,

34. *Martinelli v. Johnson & Johnson* (E.D. Cal. March 29, 2019) to represent a certified class of purchasers of Benecol spreads labeled with the representation "No Trans Fat,"

35. *Edwards v. Hearst Communications, Inc.* (S.D.N.Y. April 24, 2019) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

36. *Galvan v. Smashburger* (C.D. Cal. June 25, 2019) to represent a proposed class of purchasers of Smashburger's "Triple Double" burger,

37. *Kokoszki v. Playboy Enterprises, Inc.* (E.D. Mich. Feb. 7, 2020) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

38. *Russett v. The Northwestern Mutual Life Insurance Co.* (S.D.N.Y. May 28, 2020) to represent a class of insurance policyholders that were allegedly charged unlawful paper billing fees,

39. *In re: Metformin Marketing and Sales Practices Litigation* (D.N.J. June 3, 2020) to represent a proposed nationwide class of purchasers of generic diabetes medications that were contaminated with a cancer-causing carcinogen,

40. *Hill v. Spirit Airlines, Inc.* (S.D. Fla. July 21, 2020) to represent a proposed nationwide class of passengers whose flights were cancelled by Spirit Airlines

due to the novel coronavirus, COVID-19, and whose tickets were not refunded,

41. *Kramer v. Alterra Mountain Co.* (D. Colo. July 31, 2020) to represent a proposed nationwide class of purchasers to recoup the unused value of their Ikon ski passes after Alterra suspended operations at its ski resorts due to the novel coronavirus, COVID-19,

42. *Qureshi v. American University* (D.D.C. July 31, 2020) to represent a proposed nationwide class of students for tuition and fee refunds after their classes were moved online by American University due to the novel coronavirus, COVID-19,

43. *Hufford v. Maxim Inc.* (S.D.N.Y. Aug. 13, 2020) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

44. *Desai v. Carnegie Mellon University* (W.D. Pa. Aug. 26, 2020) to represent a proposed nationwide class of students for tuition and fee refunds after their classes were moved online by Carnegie Mellon University due to the novel coronavirus, COVID-19,

45. *Heigl v. Waste Management of New York, LLC* (E.D.N.Y. Aug. 27, 2020) to represent a class of waste collection customers that were allegedly charged unlawful paper billing fees,

46. *Stellato v. Hofstra University* (E.D.N.Y. Sept. 18, 2020) to represent a proposed nationwide class of students for tuition and fee refunds after their classes were moved online by Hofstra University due to the novel coronavirus, COVID-19,

47. *Kaupelis v. Harbor Freight Tools USA, Inc.* (C.D. Cal. Sept. 23, 2020), to represent consumers who purchased defective chainsaws,

48. *Soo v. Lorex Corporation* (N.D. Cal. Sept. 23, 2020), to represent consumers whose security cameras were intentionally rendered non-functional by manufacturer,

49. *Miranda v. Golden Entertainment (NV), Inc.* (D. Nev. Dec. 17, 2020), to represent consumers and employees whose personal information was exposed in a data breach,

50. *Benbow v. SmileDirectClub, Inc.* (Cir. Ct. Cook Cnty. Feb. 4, 2021), to represent a certified nationwide class of individuals who received text messages from SmileDirectClub, in alleged violation of the Telephone Consumer Protection Act,

51. *Suren v. DSV Solutions, LLC* (Cir. Ct. DuPage Cnty. Apr. 8, 2021), to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

52. *De Lacour v. Colgate-Palmolive Co.* (S.D.N.Y. Apr. 23, 2021), to represent a certified class of consumers who purchased allegedly "natural" Tom's of Maine products,

53. *Wright v. Southern New Hampshire University* (D.N.H. Apr. 26, 2021), to represent a certified nationwide class of students for tuition and fee refunds after their classes were moved online by Southern New Hampshire University due to the novel coronavirus, COVID-19,

54. *Sahlin v. Hospital Housekeeping Systems, LLC* (Cir. Ct. Williamson Cnty. May 21, 2021), to represent a certified class of employees who used a

fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

55. *Landreth v. Verano Holdings LLC, et al.* (Cir. Ct. Cook Cnty. June 2, 2021), to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act.

56. *Rocchio v. Rutgers, The State University of New Jersey*, (Sup. Ct., Middlesex Cnty. October 27, 201), to represent a certified nationwide class of students for fee refunds after their classes were moved online by Rutgers due to the novel coronavirus, COVID-19,

57. *Malone v. Western Digital Corp.*, (N.D. Cal. Dec. 22, 2021), to represent a class of consumers who purchased hard drives that were allegedly deceptively advertised,

58. *Jenkins v. Charles Industries, LLC*, (Cir. Ct. DuPage Cnty. Dec. 21, 2021) to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

59. *Frederick v. Examsoft Worldwide, Inc.*, (Cir. Ct. DuPage Cnty. Jan. 6, 2022) to represent a certified class of exam takers who used virtual exam proctoring software, in alleged violation of the Illinois Biometric Information Privacy Act,

60. *Isaacson v. Liqui-Box Flexibles, LLC, et al.*, (Cir. Ct. Will Cnty. Jan. 18, 2022) to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

61. *Goldstein v. Henkel Corp.*, (D. Conn. Mar. 3, 2022) to represent a proposed class of purchasers of Right Guard antiperspirants that were allegedly contaminated with benzene,

62. *McCall v. Hercules Corp.*, (N.Y. Sup. Ct., Westchester Cnty. Mar. 14, 2022) to represent a certified class of who laundry card purchasers who were allegedly subjected to deceptive practices by being denying cash refunds,

63. *Lewis v. Trident Manufacturing, Inc.*, (Cir. Ct. Kane Cnty. Mar. 16, 2022) to represent a certified class of workers who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

64. *Croft v. Spinx Games Limited, et al.*, (W.D. Wash. Mar. 31, 2022) to represent a certified class of Washington residents who lost money playing mobile applications games that allegedly constituted illegal gambling under Washington law,

65. *Fischer v. Instant Checkmate LLC*, (N.D. Ill. Mar. 31, 2022) to represent a certified class of Illinois residents whose identities were allegedly used without their consent in alleged violation of the Illinois Right of Publicity Act,

66. *Loftus v. Outside Integrated Media, LLC*, (E.D. Mich. May 5, 2022) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act.

## SCOTT A. BURSOR

Mr. Bursor has an active civil trial practice, having won multi-million verdicts or recoveries in six of six civil jury trials since 2008. Mr. Bursor's most recent victory came in

May 2019 in *Perez v. Rash Curtis & Associates*, in which Mr. Bursor served as lead trial counsel and won a $267 million jury verdict against a debt collector for violations of the Telephone Consumer Protection Act (TCPA).

In *Ayyad v. Sprint Spectrum L.P.* (2013), where Mr. Bursor served as lead trial counsel, the jury returned a verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

In *Thomas v. Global Vision Products, Inc.* (2009), the jury returned a $50 million verdict in favor of the plaintiff and class represented by Mr. Bursor. The legal trade publication VerdictSearch reported that this was the second largest jury verdict in California in 2009.

Class actions are rarely tried to verdict. Other than Mr. Bursor and his partner Mr. Fisher, we know of no lawyer that has tried more than one class action to a jury. Mr. Bursor's perfect record of six wins in six class action jury trials, with recoveries ranging from $21 million to $299 million, is unmatched by any other lawyer. Each of these victories was hard-fought against top trial lawyers from the biggest law firms in the United States.

Mr. Bursor graduated from the University of Texas Law School in 1996. He served as Articles Editor of the Texas Law Review, and was a member of the Board of Advocates and Order of the Coif. Prior to starting his own practice, Mr. Bursor was a litigation associate at a large New York based law firm where he represented telecommunications, pharmaceutical, and technology companies in commercial litigation.

Mr. Bursor is a member of the state bars of New York, Florida, and California, as well as the bars of the United States Court of Appeals for the Second, Third, Fourth, Sixth, Ninth and Eleventh Circuits, and the bars of the United States District Courts for the Southern and Eastern Districts of New York, the Northern, Central, Southern and Eastern Districts of California, the Southern and Middle Districts of Florida, and the Eastern District of Michigan.

### *Representative Cases*

Mr. Bursor was appointed lead or co-lead class counsel to the largest, 2nd largest, and 3rd largest classes ever certified. Mr. Bursor has represented classes including more than 160 million class members, roughly 1 of every 2 Americans. Listed below are recent cases that are representative of Mr. Bursor's practice:

Mr. Bursor negotiated and obtained court-approval for two landmark settlements in *Nguyen v. Verizon Wireless* and *Zill v. Sprint Spectrum* (the largest and 2nd largest classes ever certified). These settlements required Verizon and Sprint to open their wireless networks to third-party devices and applications. These settlements are believed to be the most significant legal development affecting the telecommunications industry since 1968, when the FCC's Carterfone decision similarly opened up AT&T's wireline telephone network.

Mr. Bursor was the lead trial lawyer in *Ayyad v. Sprint Spectrum, L.P.* representing a class of approximately 2 million California consumers who were charged an early termination fee under a Sprint cellphone contract, asserting claims that such fees were unlawful liquidated

damages under the California Civil Code, as well as other statutory and common law claims. After a five-week combined bench-and-jury trial, the jury returned a verdict in June 2008 and the Court issued a Statement of Decision in December 2008 awarding the plaintiffs $299 million in cash and debt cancellation. Mr. Bursor served as lead trial counsel for this class again in 2013 during a month-long jury trial in which Sprint asserted a $1.06 billion counterclaim against the class. Mr. Bursor secured a verdict awarding Sprint only $18.4 million, the exact amount calculated by the class's damages expert. This award was less than 2% of the damages Sprint sought, less than 6% of the amount of the illegal termination fees Sprint charged to class members. In December 2016, after more than 13 years of litigation, the case was settled for $304 million, including $79 million in cash payments plus $225 million in debt cancellation.

Mr. Bursor was the lead trial lawyer in *White v. Cellco Partnership d/b/a Verizon Wireless* representing a class of approximately 1.4 million California consumers who were charged an early termination fee under a Verizon cellphone contract, asserting claims that such fees were unlawful liquidated damages under the California Civil Code, as well as other statutory and common law claims. In July 2008, after Mr. Bursor presented plaintiffs' case-in-chief, rested, then cross-examined Verizon's principal trial witness, Verizon agreed to settle the case for a $21 million cash payment and an injunction restricting Verizon's ability to impose early termination fees in future subscriber agreements.

Mr. Bursor was the lead trial lawyer in *Thomas v. Global Visions Products Inc.* Mr. Bursor represented a class of approximately 150,000 California consumers who had purchased the Avacor® hair regrowth system. In January 2008, after a four-week combined bench-and-jury trial. Mr. Bursor obtained a $37 million verdict for the class, which the Court later increased to $40 million.

Mr. Bursor was appointed class counsel and was elected chair of the Official Creditors' Committee in *In re Nutraquest Inc.*, a Chapter 11 bankruptcy case before Chief Judge Garrett E. Brown, Jr. (D.N.J.) involving 390 ephedra-related personal injury and/or wrongful death claims, two consumer class actions, four enforcement actions by governmental agencies, and multiple adversary proceedings related to the Chapter 11 case. Working closely with counsel for all parties and with two mediators, Judge Nicholas Politan (Ret.) and Judge Marina Corodemus (Ret.), the committee chaired by Mr. Bursor was able to settle or otherwise resolve every claim and reach a fully consensual Chapter 11 plan of reorganization, which Chief Judge Brown approved in late 2006. This settlement included a $12.8 million recovery to a nationwide class of consumers who alleged they were defrauded in connection with the purchase of Xenadrine® dietary supplement products.

Mr. Bursor was the lead trial lawyer in *In re: Pacific Bell Late Fee Litigation*. After filing the first class action challenging Pac Bell's late fees in April 2010, winning a contested motion to certify a statewide California class in January 2012, and defeating Pac Bell's motion for summary judgment in February 2013, Mr. Bursor obtained final approval of the $38 million class settlement. The settlement, which Mr. Bursor negotiated the night before opening statements were scheduled to commence, included a $20 million cash payment to provide refunds to California customers who paid late fees on their Pac Bell wireline telephone accounts, and an injunction that reduced other late fee charges by $18.6 million.

## L. TIMOTHY FISHER

L. Timothy Fisher has an active practice in consumer class actions and complex business litigation and has also successfully handled a large number of civil appeals.

Mr. Fisher has been actively involved in numerous cases that resulted in multi-million dollar recoveries for consumers and investors. Mr. Fisher has handled cases involving a wide range of issues including nutritional labeling, health care, telecommunications, corporate governance, unfair business practices and consumer fraud. With his partner Scott A. Bursor, Mr. Fisher has tried five class action jury trials, all of which produced successful results. In *Thomas v. Global Vision Products*, Mr. Fisher obtained a jury award of $50,024,611 — the largest class action award in California in 2009 and the second-largest jury award of any kind. In 2019, Mr. Fisher served as trial counsel with Mr. Bursor and his partner Yeremey Krivoshey in *Perez. v. Rash Curtis & Associates*, where the jury returned a verdict for $267 million in statutory damages under the Telephone Consumer Protection Act.

Mr. Fisher was admitted to the State Bar of California in 1997. He is also a member of the bars of the United States Court of Appeals for the Ninth Circuit, the United States District Courts for the Northern, Central, Southern and Eastern Districts of California, the Northern District of Illinois, the Eastern District of Michigan, and the Eastern District of Missouri. Mr. Fisher taught appellate advocacy at John F. Kennedy University School of Law in 2003 and 2004. In 2010, he contributed jury instructions, a verdict form and comments to the consumer protection chapter of Justice Elizabeth A. Baron's *California Civil Jury Instruction Companion Handbook* (West 2010). In January 2014, Chief Judge Claudia Wilken of the United States District Court for the Northern District of California appointed Mr. Fisher to a four-year term as a member of the Court's Standing Committee on Professional Conduct.

Mr. Fisher received his Juris Doctor from Boalt Hall at the University of California at Berkeley in 1997. While in law school, he was an active member of the Moot Court Board and participated in moot court competitions throughout the United States. In 1994, Mr. Fisher received an award for Best Oral Argument in the first-year moot court competition.

In 1992, Mr. Fisher graduated with highest honors from the University of California at Berkeley and received a degree in political science. Prior to graduation, he authored an honors thesis for Professor Bruce Cain entitled "The Role of Minorities on the Los Angeles City Council." He is also a member of Phi Beta Kappa.

### *Representative Cases*

*Thomas v. Global Vision Products, Inc.* (Alameda County Superior Court). Mr. Fisher litigated claims against Global Vision Products, Inc. and other individuals in connection with the sale and marketing of a purported hair loss remedy known as Avacor. The case lasted more than seven years and involved two trials. The first trial resulted in a verdict for plaintiff and the class in the amount of $40,000,000. The second trial resulted in a jury verdict of $50,024,611, which led to a $30 million settlement for the class.

*In re Cellphone Termination Fee Cases* - Handset Locking Actions (Alameda County Superior Court).  Mr. Fisher actively worked on five coordinated cases challenging the secret locking of cell phone handsets by major wireless carriers to prevent consumers from activating them on competitive carriers' systems.  Settlements have been approved in all five cases on terms that require the cell phone carriers to disclose their handset locks to consumers and to provide unlocking codes nationwide on reasonable terms and conditions.  The settlements fundamentally changed the landscape for cell phone consumers regarding the locking and unlocking of cell phone handsets.

*In re Cellphone Termination Fee Cases* - Early Termination Fee Cases (Alameda County Superior Court and Federal Communications Commission).  In separate cases that are a part of the same coordinated litigation as the Handset Locking Actions, Mr. Fisher actively worked on claims challenging the validity under California law of early termination fees imposed by national cell phone carriers. In one of those cases, against Verizon Wireless, a nationwide settlement was reached after three weeks of trial in the amount of $21 million.  In a second case, which was tried to verdict, the Court held after trial that the $73 million of flat early termination fees that Sprint had collected from California consumers over an eight-year period were void and unenforceable.

### *Selected Published Decisions*

*Melgar v. Zicam LLC*, 2016 WL 1267870 (E.D. Cal. Mar. 30, 2016) (certifying 10-jurisdiction class of purchasers of cold remedies, denying motion for summary judgment, and denying motions to exclude plaintiff's expert witnesses).

*Salazar v. Honest Tea, Inc*., 2015 WL 7017050 (E.D. Cal. Nov. 12. 2015) (denying motion for summary judgment).

*Dei Rossi v. Whirlpool Corp.*, 2015 WL 1932484 (E.D. Cal. Apr. 27, 2015) (certifying California class of purchasers of refrigerators that were mislabeled as Energy Star qualified).

*Bayol v. Zipcar, Inc.*, 78 F.Supp.3d 1252 (N.D. Cal. 2015) (denying motion to dismiss claims alleging unlawful late fees under California Civil Code § 1671).

*Forcellati v. Hyland's, Inc.*, 2015 WL 9685557 (C.D. Cal. Jan. 12, 2015) (denying motion for summary judgment in case alleging false advertising of homeopathic cold and flu remedies for children).

*Bayol v. Zipcar, Inc.*, 2014 WL 4793935 (N.D. Cal. Sept. 25, 2014) (denying motion to transfer venue pursuant to a forum selection clause).

*Forcellati v. Hyland's Inc.*, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) (certifying nationwide class of purchasers of homeopathic cold and flu remedies for children).

*Hendricks v. StarKist Co.*, 30 F.Supp.3d 917 (N.D. Cal. 2014) (denying motion to dismiss in case alleging underfilling of 5-ounce cans of tuna).

*Dei Rossi v. Whirlpool Corp.*, 2013 WL 5781673 (E.D. Cal. October 25, 2013) (denying motion to dismiss in case alleging that certain KitchenAid refrigerators were misrepresented as Energy Star qualified).

*Forcellati v. Hyland's Inc.*, 876 F.Supp.2d 1155 (C.D. Cal. 2012) (denying motion to dismiss complaint alleging false advertising regarding homeopathic cold and flu remedies for children).

*Clerkin v. MyLife.com*, 2011 WL 3809912 (N.D. Cal. August 29, 2011) (denying defendants' motion to dismiss in case alleging false and misleading advertising by a social networking company).

*In re Cellphone Termination Fee Cases*, 186 Cal.App.4th 1380 (2010) (affirming order approving $21 million class action settlement).

*Gatton v. T-Mobile USA, Inc.*, 152 Cal.App.4th 571 (2007) (affirming order denying motion to compel arbitration).

## ***Selected Class Settlements***

*Melgar v. Zicam* (Eastern District of California) - $16 million class settlement of claims alleging cold medicine was ineffective.

*Gastelum v. Frontier California Inc.* (San Francisco Superior Court) - $10.9 million class action settlement of claims alleging that a residential landline service provider charged unlawful late fees.

*West v. California Service Bureau, Inc.* (Northern District of California) - $4.1 million class settlement of claims under the Telephone Consumer Protection Act.

*Gregorio v. Premier Nutrition Corp.* (Southern District of New York) - $9 million class settlement of false advertising claims against protein shake manufacturer.

*Morris v. SolarCity Corp.* (Northern District of California) - $15 million class settlement of claims under the Telephone Consumer Protection Act.

*Retta v. Millennium Products, Inc.* (Central District of California) - $8.25 million settlement to resolve claims of bottled tea purchasers for alleged false advertising.

*Forcellati v. Hyland's* (Central District of California) – nationwide class action settlement providing full refunds to purchasers of homeopathic cold and flu remedies for children.

*Dei Rossi v. Whirlpool* (Eastern District of California) – class action settlement providing $55 cash payments to purchasers of certain KitchenAid refrigerators that allegedly mislabeled as Energy Star qualified.

*In Re NVIDIA GTX 970 Graphics Chip Litigation* (Northern District of California) - $4.5 million class action settlement of claims alleging that a computer graphics card was sold with false and misleading representations concerning its specifications and performance.

*Hendricks v. StarKist Co.* (Northern District of California) – $12 million class action settlement of claims alleging that 5-ounce cans of tuna were underfilled.

*In re Zakskorn v. American Honda Motor Co.* Honda (Eastern District of California) – nationwide settlement providing for brake pad replacement and reimbursement of out-of-pocket expenses in case alleging defective brake pads on Honda Civic vehicles manufactured between 2006 and 2011.

*Correa v. Sensa Products, LLC* (Los Angeles Superior Court) - $9 million settlement on behalf of purchasers of the Sensa weight loss product.

*In re Pacific Bell Late Fee Litigation* (Contra Costa County Superior Court) - $38.6 million settlement on behalf of Pac Bell customers who paid an allegedly unlawful late payment charge.

*In re Haier Freezer Consumer Litigation* (Northern District of California) - $4 million settlement, which provided for cash payments of between $50 and $325.80 to class members who purchased the Haier HNCM070E chest freezer.

*Thomas v. Global Vision Products, Inc.* (Alameda County Superior Court) - $30 million settlement on behalf of a class of purchasers of a hair loss remedy.

*Guyette v. Viacom, Inc.* (Alameda County Superior Court) - $13 million settlement for a class of cable television subscribers who alleged that the defendant had improperly failed to share certain tax refunds with its subscribers.

## <u>JOSEPH I. MARCHESE</u>

Joseph I. Marchese is a Partner with Bursor & Fisher, P.A. Joe focuses his practice on consumer class actions, employment law disputes, and commercial litigation. He has represented corporate and individual clients in a wide array of civil litigation, and has substantial trial and appellate experience.

Joe has diverse experience in litigating and resolving consumer class actions involving claims of mislabeling, false or misleading advertising, privacy violations, data breach claims, and violations of the Servicemembers Civil Relief Act.

Joe also has significant experience in multidistrict litigation proceedings. Recently, he served on the Plaintiffs' Executive Committee in *In Re: Blue Buffalo Company, Ltd. Marketing And Sales Practices Litigation*, MDL No. 2562, which resulted in a $32 million consumer class settlement. Currently, he serves on the Plaintiffs' Steering Committee for Economic Reimbursement in *In Re: Valsartan Products Liability Litigation*, MDL. No. 2875.

Joe is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, and the Eastern District of Michigan, as well as the United States Court of Appeals for the Second Circuit.

Joe graduated from Boston University School of Law in 2002 where he was a member of The Public Interest Law Journal. In 1998, Joe graduated with honors from Bucknell University.

### <u>*Selected Published Decisions:*</u>

*Boelter v. Hearst Communications, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. Sept. 7, 2017), granting plaintiff's motion for partial summary judgment on state privacy law violations in putative class action.

*Boelter v. Hearst Communications, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. June 17, 2016), denying publisher's motion to dismiss its subscriber's allegations of state privacy law violations in putative class action.

*In re Scotts EZ Seed Litigation*, 304 F.R.D. 397 (S.D.N.Y. 2015), granting class certification of false advertising and other claims brought by New York and California purchasers of grass seed product.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*In re Michaels Stores Pin Pad Litigation*, 830 F. Supp. 2d 518 (N.D. Ill. 2011), denying retailer's motion to dismiss its customers' state law consumer protection and privacy claims in data breach putative class action.

### *Selected Class Settlements:*

*Edwards v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT (S.D.N.Y. 2019) – final approval granted for $50 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, Case No. 15-cv-05671-NRB (S.D.N.Y. 2019) – final approval granted for $13.75 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

In *re Scotts EZ Seed Litigation*, Case No. 12-cv-4727-VB (S.D.N.Y. 2018) – final approval granted for $47 million class settlement to resolve false advertising claims of purchasers of combination grass seed product.

*In Re:  Blue Buffalo Marketing And Sales Practices Litigation*, Case No. 14-MD-2562-RWS (E.D. Mo. 2016) – final approval granted for $32 million class settlement to resolve claims of pet owners for alleged false advertising of pet foods.

*Rodriguez v. Citimortgage, Inc.*, Case No. 11-cv-4718-PGG (S.D.N.Y. 2015) – final approval granted for $38 million class settlement to resolve claims of military servicemembers for alleged foreclosure violations of the Servicemembers Civil Relief Act, where each class member was entitled to $116,785 plus lost equity in the foreclosed property and interest thereon.

*O'Brien v. LG Electronics USA, Inc., et al.*, Case No. 10-cv-3733-DMC (D.N.J. 2011) – final approval granted for $23 million class settlement to resolve claims of Energy Star refrigerator purchasers for alleged false advertising of the appliances' Energy Star qualification.

## JOSHUA D. ARISOHN

Joshua D. Arisohn is a Partner with Bursor & Fisher, P.A. Josh has litigated precedent-setting cases in the areas of consumer class actions and terrorism. He participated in the first ever

trial to take place under the Anti-Terrorism Act, a statute that affords U.S. citizens the right to assert federal claims for injuries arising out of acts of international terrorism. Josh's practice continues to focus on terrorism-related matters as well as class actions.

Josh is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Southern District of New York and the Eastern District of New York.

Josh previously practiced at Dewey & LeBoeuf LLP and DLA Piper LLP. He graduated from Columbia University School of Law in 2006, where he was a Harlan Fiske Stone Scholar, and received his B.A. from Cornell University in 2002. Josh has been honored as a 2015 and 2016 Super Lawyer Rising Star.

### *Selected Published Decisions:*

*Morris v. SolarCity Corp.*, 2016 WL 1359378 (N.D. Cal. Apr. 4, 2016), denying defendant's motion to dismiss claims that solar company illegally called consumers using an artificial or prerecorded voice and an automatic telephone dialing system.

*Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016), denying defendant's motion to dismiss and finding that the Michigan Video Rental Privacy Act does not violate the First Amendment.

*Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096 (N.D. Cal. 2016), denying defendant's motion dismiss and rejecting its argument that providing a class representative with a cashier's check for his individual damages mooted his individual and class claims.

### *Selected Class Settlements:*

*Morris v. SolarCity Corp.*, Case No. 3:15-cv-05107-RS (N.D. Cal.) - final approval granted for $15 million class settlement to resolve claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

### **JOEL D. SMITH**

Joel D. Smith is a Partner with Bursor & Fisher, P.A. Joel is a trial attorney who has practiced in lower court and appeals courts across the country, as well as the U.S. Supreme Court.

Prior to joining Bursor & Fisher, Joel was a litigator at Crowell & Moring, where he represented Fortune 500 companies, privately held businesses, and public entities in a wide variety of commercial, environmental, and class action matters. Among other matters, Joel served as defense counsel for AT&T, Enterprise-Rent-A-Car, Flowers Foods, and other major U.S. businesses in consumer class actions, including a class action seeking to hold U.S. energy companies accountable for global warming. Joel represented four major U.S. retailers in a case arising from a devastating arson fire and ensuing state of emergency in Roseville, California, which settled on the eve of a trial that was expected to last several months and involve several

dozen witnesses.  Joel also was part of the trial team in a widely publicized trial over the death of a contestant who died after participating in a Sacramento radio station's water drinking contest.

More recently, Joel's practice focuses on consumer class actions involving automotive and other product defects, financial misconduct, false advertising, and privacy violations.

Joel received both his undergraduate and law degrees from the University of California at Berkeley.  While at Berkeley School of Law, he was a member of the California Law Review, received several academic honors, externed for the California Attorney General's office and published an article on climate change policy and litigation.

Joel is admitted to the State Bar of California, as well as the United States Courts of Appeals for the Second, Third and Ninth Circuits; all California district courts; the Eastern District of Michigan; and the Northern District of Illinois.

### Selected Published Decisions:

*Revitch v. DIRECTV, LLC*, --- F.3d --- (9th Cir. 2020), affirming denial of motion to compel arbitration in putative class action alleging unlawful calls under the Telephone Consumer Protection Act.

*Kaupelis v. Harbor Freight Tools USA, Inc.*, 2020 WL 5901116 (C.D. Cal. Sept. 23, 2020), granting class certification of consumer protection claims brought by purchasers of defective chainsaws.

### Selected Class Settlements:

*Crandell et al. v. Volkswagen Group of America*, Case No. 2:18-cv-13377-JSA (D.N.J.)  – final approval granted for a settlement providing relief for Volkswagen Touareg owners to resolve allegations that defects in Touareg vehicles caused the engines to ingest water when driving in the rain.

*Isley et al. v. BMW of N. America, LLC*, Case No. 2:19-cv-12680-ESK (D.N.J.) – final approval granted for settlement providing BMW owners with reimbursements and credit vouchers to resolve allegations that defects in the BMW N63TU engine caused excessive oil consumption.

*Kaupelis v. Harbor Freight Tools USA, Inc.*, 8:19-cv-01203-JVS-DFM (C.D. Cal.) – final approval granted for a settlement valued up to $40 million to resolve allegations that Harbor Freight sold chainsaws with a defective power switch that could prevent the chainsaws from turning off.

*Morris v. SolarCity Corp.*, Case No. 3:15-cv-05107-RS (N.D. Cal.) - final approval granted for $15 million class settlement to resolve claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

## NEAL J. DECKANT

Neal J. Deckant is a Partner with Bursor & Fisher, P.A., where he serves as the firm's Head of Information & e-Discovery.  Neal focuses his practice on complex business litigation and consumer class actions.  Prior to joining Bursor & Fisher, Neal counseled low-income homeowners facing foreclosure in East Boston.

Neal is admitted to the State Bars of California and New York, and is a member of the bars of the United States District Court for the Northern District of California, the United States District Court for the Eastern District of California, the United States District Court for the Central District of California, the United States District Court for the Southern District of California, the United States District Court for the Southern District of New York, the United States District Court for the Eastern District of New York, and the bars of the United States Courts of Appeals for the Second and Ninth Circuits.

Neal received his Juris Doctor from Boston University School of Law in 2011, graduating cum laude with two Dean's Awards.  During law school, Neal served as a Senior Articles Editor for the Review of Banking and Financial Law, where he authored two published articles about securitization reforms, both of which were cited by the New York Court of Appeals, the highest court in the state.  Neal was also awarded Best Oral Argument in his moot court section, and he served as a Research Assistant for his Securities Regulation professor. Neal has also been honored as a 2014, 2015, 2016, and 2017 Super Lawyers Rising Star.  In 2007, Neal graduated with Honors from Brown University with a dual major in East Asian Studies and Philosophy.

### *Selected Published Decisions:*

*Martinelli v. Johnson & Johnson*, 2019 WL 1429653 (N.D. Cal. Mar. 29, 2019), granting class certification of false advertising and other claims brought by purchasers of Benecol spreads labeled with the representation "No Trans Fats."

*Dzielak v. Whirlpool Corp.*, 2017 WL 6513347 (D.N.J. Dec. 20, 2017), granting class certification of consumer protection claims brought by purchasers of Maytag Centennial washing machines marked with the "Energy Star" logo.

*Duran v. Obesity Research Institute*, LLC, 204 Cal. Rptr. 3d 896 (Cal. Ct. App. 2016), reversing and remanding final approval of a class action settlement on appeal, regarding allegedly mislabeled dietary supplements, in connection with a meritorious objection.

*Marchuk v. Faruqi & Faruqi, LLP*, et al., 100 F. Supp. 3d 302 (S.D.N.Y. 2015), granting individual and law firm defendants' motion for judgment as a matter of law on plaintiff's claims for retaliation and defamation, as well as for all claims against law firm partners, Nadeem and Lubna Faruqi.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*Ebin v. Kangadis Food Inc.*, 2014 WL 737878 (S.D.N.Y. Feb. 25, 2014), denying distributor's motion for summary judgment against nationwide class of purchasers of purported "100% Pure Olive Oil" product.

## Selected Class Settlements:

*In Re NVIDIA GTX 970 Graphics Chip Litigation*, Case No. 15-cv-00760-PJH (N.D. Cal. Dec. 7, 2016) – final approval granted for $4.5 million class action settlement to resolve claims that a computer graphics card was allegedly sold with false and misleading representations concerning its specifications and performance.

*Hendricks v. StarKist Co.*, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) – final approval granted for $12 million class action settlement to resolve claims that 5-ounce cans of tuna were allegedly underfilled.

*In re: Kangadis Food Inc.*, Case No. 8-14-72649 (Bankr. E.D.N.Y. Dec. 17, 2014) – class action claims resolved for $2 million as part of a Chapter 11 plan of reorganization, after a corporate defendant filed for bankruptcy, following claims that its olive oil was allegedly sold with false and misleading representations.

## Selected Publications:

Neal Deckant, *X. Reforms of Collateralized Debt Obligations: Enforcement, Accounting and Regulatory Proposals*, 29 Rev. Banking & Fin. L. 79 (2009) (cited in *Quadrant Structured Products Co., Ltd. v. Vertin*, 16 N.E.3d 1165, 1169 n.8 (N.Y. 2014)).

Neal Deckant, *Criticisms of Collateralized Debt Obligations in the Wake of the Goldman Sachs Scandal*, 30 Rev. Banking & Fin. L. 407 (2010) (cited in *Quadrant Structured Products Co., Ltd. v. Vertin*, 16 N.E.3d 1165, 1169 n.8 (N.Y. 2014); *Lyon Village Venetia, LLC v. CSE Mortgage LLC*, 2016 WL 476694, at *1 n.1 (Md. Ct. Spec. App. Feb. 4, 2016); Ivan Ascher, Portfolio Society: On the Capitalist Mode of Prediction, at 141, 153, 175 (Zone Books / The MIT Press 2016); Devon J. Steinmeyer, *Does State National Bank of Big Spring v. Geithner Stand a Fighting Chance?*, 89 Chi.-Kent. L. Rev. 471, 473 n.13 (2014)).

## YITZCHAK KOPEL

Yitzchak Kopel is a Partner with Bursor & Fisher, P.A. Yitz focuses his practice on consumer class actions and complex business litigation. He has represented corporate and individual clients before federal and state courts, as well as in arbitration proceedings.

Yitz has substantial experience in successfully litigating and resolving consumer class actions involving claims of consumer fraud, data breaches, and violations of the telephone consumer protection act. Since 2014, Yitz has obtained class certification on behalf of his clients five times, three of which were certified as nationwide class actions. Bursor & Fisher was appointed as class counsel to represent the certified classes in each of the cases.

Yitz is admitted to the State Bars of New York and New Jersey, the bar of the United States Court of Appeals for the Second, Eleventh, and Ninth Circuits, and the bars of the United States District Courts for the Southern District of New York, Eastern District of New York, Eastern District of Missouri, Eastern District of Wisconsin, Northern Distriict of Illinois, and District of New Jersey.

Yitz received his Juris Doctorate from Brooklyn Law School in 2012, graduating *cum laude* with two Dean's Awards. During law school, Yitz served as an Articles Editor for the Brooklyn Law Review and worked as a Law Clerk at Shearman & Sterling. In 2009, Yitz graduated *cum laude* from Queens College with a B.A. in Accounting.

### *Selected Published Decisions:*

*Bassaw v. United Industries Corp.,* --- F. Supp. 3d ---, 2020 WL 5117916 (S.D.N.Y. Aug. 31, 2020), denying motion to dismiss claims in putative class action concerning insect foggers.

*Poppiti v. United Industries Corp.*, 2020 WL 1433642 (E.D. Mo. Mar. 24, 2020), denying motion to dismiss claims in putative class action concerning citronella candles.

*Bakov v. Consolidated World Travel, Inc.*, 2019 WL 6699188 (N.D. Ill. Dec. 9, 2019), granting summary judgment on behalf of certified class in robocall class action.

*Krumm v. Kittrich Corp.*, 2019 WL 6876059 (E.D. Mo. Dec. 17, 2019), denying motion to dismiss claims in putative class action concerning mosquito repellent.

*Crespo v. S.C. Johnson & Son, Inc.*, 394 F. Supp. 3d 260 (S.D.N.Y. 2019), denying defendant's motion to dismiss fraud and consumer protection claims in putative class action regarding Raid insect fogger.

*Bakov v. Consolidated World Travel, Inc.*, 2019 WL 1294659 (N.D. Ill. Mar. 21, 2019), certifying a class of persons who received robocalls in the state of Illinois.

*Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454 (S.D.N.Y. 2019), denying defendant's motion to dismiss fraud and consumer protection claims in putative class action regarding mosquito repellent.

*Hart v. BHH, LLC*, 323 F. Supp. 3d 560 (S.D.N.Y. 2018), denying defendants' motion for summary judgment in certified class action involving the sale of ultrasonic pest repellers.

*Hart v. BHH, LLC*, 2018 WL 3471813 (S.D.N.Y. July 19, 2018), denying defendants' motion to exclude plaintiffs' expert in certified class action involving the sale of ultrasonic pest repellers.

*Penrose v. Buffalo Trace Distillery, Inc.*, 2018 WL 2334983 (E.D. Mo. Feb. 5, 2018), denying bourbon producers' motion to dismiss fraud and consumer protection claims in putative class action.

*West v. California Service Bureau, Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017), certifying a nationwide class of "wrong-number" robocall recipients.

*Hart v. BHH, LLC*, 2017 WL 2912519 (S.D.N.Y. July 7, 2017), certifying nationwide class of purchasers of ultrasonic pest repellers.

*Browning v. Unilever United States, Inc.*, 2017 WL 7660643 (C.D. Cal. Apr. 26, 2017), denying motion to dismiss fraud and warranty claims in putative class action concerning facial scrub product.

*Brenner v. Procter & Gamble Co.*, 2016 WL 8192946 (C.D. Cal. Oct. 20, 2016), denying motion to dismiss warranty and consumer protection claims in putative class action concerning baby wipes.

*Hewlett v. Consolidated World Travel, Inc.*, 2016 WL 4466536 (E.D. Cal. Aug. 23, 2016), denying telemarketer's motion to dismiss TCPA claims in putative class action.

*Bailey v. KIND, LLC*, 2016 WL 3456981 (C.D. Cal. June 16, 2016), denying motion to dismiss fraud and warranty claims in putative class action concerning snack bars.

*Hart v. BHH, LLC*, 2016 WL 2642228 (S.D.N.Y. May 5, 2016) denying motion to dismiss warranty and consumer protection claims in putative class action concerning ultrasonic pest repellers.

*Marchuk v. Faruqi & Faruqi, LLP, et al.*, 100 F. Supp. 3d 302 (S.D.N.Y. 2015), granting clients' motion for judgment as a matter of law on claims for retaliation and defamation in employment action.

*In re Scotts EZ Seed Litigation*, 304 F.R.D. 397 (S.D.N.Y. 2015), granting class certification of false advertising and other claims brought by New York and California purchasers of grass seed product.

*Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217 (E.D.N.Y. 2015), denying diet pill manufacturers' motion to dismiss its purchasers' allegations for breach of express warranty in putative class action.

*Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151 (S.D.N.Y. 2014), denying online job board's motion to dismiss its subscribers' allegations of consumer protection law violations in putative class action.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*Ebin v. Kangadis Food Inc.*, 2014 WL 737878 (S.D.N.Y. Feb. 25, 2014), denying distributor's motion for summary judgment against nationwide class of purchasers of purported "100% Pure Olive Oil" product.

### *Selected Class Settlements:*

*Hart v. BHH, LLC*, Case No. 1:15-cv-04804 (S.D.N.Y. Sept. 22, 2020), resolving class action claims regarding ultrasonic pest repellers.

*In re: Kangadis Food Inc.*, Case No. 8-14-72649 (Bankr. E.D.N.Y. Dec. 17, 2014), resolving class action claims for $2 million as part of a Chapter 11 plan of reorganization, after a corporate defendant filed for bankruptcy following the certification of nationwide claims alleging that its olive oil was sold with false and misleading representations.

*West v. California Service Bureau*, Case No. 4:16-cv-03124-YGR (N.D. Cal. Jan. 23, 2019), resolving class action claims against debt-collector for wrong-number robocalls for $4.1 million.

## FREDERICK J. KLORCZYK III

Frederick J. Klorczyk III is a Partner with Bursor & Fisher, P.A. Fred focuses his practice on complex business litigation and consumer class actions.

Fred has substantial experience in successfully litigating and resolving consumer class actions involving claims of mislabeling, false or misleading advertising, and privacy violations. In 2019, Fred certified both a California and a 10-state express warranty class on behalf of purchasers of a butter substitute. In 2014, Fred served on the litigation team in *Ebin v. Kangadis Food Inc*. At class certification, Judge Rakoff adopted Fred's choice of law fraud analysis and research directly into his published decision certifying a nationwide fraud class.

Fred is admitted to the State Bars of California, New York, and New Jersey, and is a member of the bars of the United States District Courts for the Northern, Central, Eastern, and Southern Districts of California, the Southern, Eastern, and Northern Districts of New York, the District of New Jersey, the Northern District of Illinois, the Eastern District of Missouri, the Eastern District of Wisconsin, and the Eastern District of Michigan, as well as the bars of the United States Court of Appeals for the Second and Ninth Circuits.

Fred received his Juris Doctor from Brooklyn Law School in 2013, graduating m*agna cum laude* with two CALI Awards for the highest grade in his classes on conflict of laws and criminal law. During law school, Fred served as an Associate Managing Editor for the Brooklyn Journal of Corporate, Financial and Commercial Law and as an intern to the Honorable Alison J. Nathan of the United States District Court for the Southern District of New York and the Honorable Janet Bond Arterton of the United States District Court for the District of Connecticut. In 2010, Fred graduated from the University of Connecticut with a B.S. in Finance.

### *Selected Published Decisions:*

*Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019), denying defendants' motions to dismiss consumer's allegations of state privacy law violations in putative class action.

*In re Welspun Litigation*, 2019 WL 2174089 (S.D.N.Y. May 20, 2019), denying retailers' and textile manufacturer's motion to dismiss consumers' allegations of false advertising relating to purported "100% Egyptian Cotton" linen products.

*Martinelli v. Johnson & Johnson*, 2019 WL 1429653 (E.D. Cal. Mar. 29, 2019), granting class certification of California false advertising claims and multi-state express warranty claims brought by purchasers of a butter substitute.

*Porter v. NBTY, Inc.*, 2016 WL 6948379 (N.D. Ill. Nov. 28, 2016), denying supplement manufacturer's motion to dismiss consumers' allegations of false advertising relating to whey protein content.

*Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d. 282 (S.D.N.Y. 2015), denying supplement manufacturer's motion to dismiss consumers' allegations of false advertising relating to a homeopathic cold product.

*In re Scotts EZ Seed Litigation*, 304 F.R.D. 397 (S.D.N.Y. 2015), granting class certification of false advertising and other claims brought by New York and California purchasers of grass seed product.

*Marchuk v. Faruqi & Faruqi, LLP, et al.*, 100 F. Supp. 3d 302 (S.D.N.Y. 2015), granting individual and law firm defendants' motion for judgment as a matter of law on plaintiff's claims for retaliation and defamation, as well as for all claims against law firm partners, Nadeem and Lubna Faruqi.

*Ebin v. Kangadis Food Inc.*, Case No. 13-4775 (2d Cir. Apr. 15, 2015), denying olive oil manufacturer's Rule 23(f) appeal following grant of nationwide class certification.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*Ebin v. Kangadis Food Inc.*, 2014 WL 737878 (S.D.N.Y. Feb. 25, 2014), denying distributor's motion for summary judgment against nationwide class of purchasers of purported "100% Pure Olive Oil" product.

### *Selected Class Settlements:*

*Gregorio v. Premier Nutrition Corp.*, Case No. 17-cv-05987-AT (S.D.N.Y. 2019) – final approval granted for $9 million class settlement to resolve claims of protein shake purchasers for alleged false advertising.

*Ruppel v. Consumers Union of United States, Inc.*, Case No. 16-cv-02444-KMK (S.D.N.Y. 2018) – final approval granted for $16.375 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*In Re: Blue Buffalo Marketing And Sales Practices Litigation*, Case No. 14-MD-2562-RWS (E.D. Mo. 2016) –final approval granted for $32 million class settlement to resolve claims of pet owners for alleged false advertising of pet foods.

*In re: Kangadis Food Inc.*, Case No. 8-14-72649 (Bankr. E.D.N.Y. Dec. 17, 2014) – resolved class action claims for $2 million as part of a Chapter 11 plan of reorganization, after a corporate defendant filed for bankruptcy following the certification of nationwide claims alleging that its olive oil was sold with false and misleading representations.

## YEREMEY O. KRIVOSHEY

Yeremey O. Krivoshey is a Partner with Bursor & Fisher, P.A. Mr. Krivoshey has particular expertise in COVID-19 related consumer litigation, unlawful fees and liquidated damages in consumer contracts, TCPA cases, product recall cases, and fraud and false advertising litigation. He has represented clients in a wide array of civil litigation, including appeals before the Ninth Circuit.

Mr. Krivoshey served as trial counsel with Mr. Bursor in *Perez. v. Rash Curtis & Associates*, where, in May 2019, the jury returned a verdict for $267 million in statutory damages under the Telephone Consumer Protection Act. Since 2017, Mr. Krivoshey has secured over $200 million for class members in consumer class settlements. Mr. Krivoshey has been honored multiple times as a Super Lawyers Rising Star.

Mr. Krivoshey is admitted to the State Bar of California. He is also a member of the bars of the United States Court of Appeals for the Ninth Circuit and the United States District Courts for the Northern, Central, Southern, and Eastern Districts of California, as well as the District of Colorado.

Mr. Krivoshey graduated from New York University School of Law in 2013, where he was a Samuel A. Herzog Scholar. Prior to Bursor & Fisher, P.A., Mr. Krivoshey worked as a Law Clerk at Vladeck, Waldman, Elias & Engelhard, P.C, focusing on employment discrimination and wage and hour disputes. In law school, he has also interned at the American Civil Liberties Union and the United States Department of Justice. In 2010, Mr. Krivoshey graduated *cum laude* from Vanderbilt University.

### *Representative Cases:*

*Perez v. Rash Curtis & Associates*, Case No. 16-cv-03396-YGR (N.D. Cal. May 13, 2019). Mr. Krivoshey litigated claims against a national health-care debt collection agency on behalf of people that received autodialed calls on their cellular telephones without their prior express consent. Mr. Krivoshey successfully obtained nationwide class certification, defeated the defendant's motion for summary judgment, won summary judgment as to the issue of prior express consent and the use of automatic telephone dialing systems, and navigated the case towards trial. With his partner, Scott Bursor, Mr. Krivoshey obtained a jury verdict finding that the defendant violated the Telephone Consumer Protection Act ("TCPA") 534,712 times. Under the TCPA, class members are entitled to $500 per each call made in violation of the TCPA – in this case, $267 million for 534,712 unlawful calls.

## *Selected Published Decisions:*

*Goodrich, et al. v. Alterra Mountain Co., et al.,* 2021 WL 2633326 (D. Col. June 25, 2021), denying ski pass company's motion to dismiss its customers' allegations concerning refunds owed due to cancellation of ski season due to COVID-19.

*Bayol v. Zipcar, Inc.*, 2014 WL 4793935 (N.D. Cal. Sept. 25, 2014), denying enforcement of forum selection clause based on public policy grounds.

*Bayol v. Zipcar, Inc.*, 78 F. Supp. 3d 1252 (N.D. Cal. Jan. 29, 2015), denying car-rental company's motion to dismiss its subscriber's allegations of unlawful late fees.

*Brown v. Comcast Corp.*, 2016 WL 9109112 (C.D. Cal. Aug. 12, 2016), denying internet service provider's motion to compel arbitration of claims alleged under the Telephone Consumer Protection Act.

*Chaisson, et al. v. University of Southern California* (Cal. Sup. Ct. Mar. 25, 2021), denying university's demurrer as to its students' allegations of unfair and unlawful late fees.

*Choi v. Kimberly-Clark Worldwide, Inc.*, 2019 WL 4894120 (C.D. Cal. Aug. 28, 2019), denying tampon manufacturer's motion to dismiss its customer's design defect claims.

*Horanzy v. Vemma Nutrition Co.*, Case No. 15-cv-298-PHX-JJT (D. Ariz. Apr. 16, 2016), denying multi-level marketer's and its chief scientific officer's motion to dismiss their customer's fraud claims.

*McMillion, et al. v. Rash Curtis & Associates*, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017), granting nationwide class certification of Telephone Consumer Protection Act claims by persons receiving autodialed and prerecorded calls without consent.

*McMillion, et al. v. Rash Curtis & Associates*, 2018 WL 692105 (N.D. Cal. Feb. 2, 2018), granting plaintiffs' motion for partial summary judgment on Telephone Consumer Protection Act violations in certified class action.

*Perez v. Indian Harbor Ins. Co.*, 2020 WL 2322996 (N.D. Cal. May 11, 2020), denying insurance company's motion to dismiss or stay assigned claims of bad faith and fair dealing arising out of $267 million trial judgment.

*Perez v. Rash Curtis & Associates*, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020), upholding constitutionality of $267 million class trial judgment award.

*Salazar v. Honest Tea, Inc.*, 2015 WL 7017050 (E.D. Cal. Nov. 12. 2015), denying manufacturer's motion for summary judgment as to customer's false advertising claims.

## *Selected Class Settlements:*

*Perez v. Rash Curtis & Associates*, Case No. 16-cv-03396-YGR (N.D. Cal. Oct. 1, 2021) granting final approval to a $75.6 million non-reversionary cash common fund settlement, the

largest ever consumer class action settlement stemming from a violation of the Telephone Consumer Protection Act.

*Strassburger v. Six Flags Theme Parks Inc., et al.* (Ill. Cir. Ct. 2021) pending approval to $83.6 million settlement to resolve claims of theme park members for alleged wrongful charging of fees during the COVID-19 pandemic.

*Juarez-Segura, et al. v. Western Dental Services, Inc.* (Cal. Sup. Ct. Aug. 9, 2021) granting final approval to $35 million settlement to resolve claims of dental customers for alleged unlawful late fees.

*Moore v. Kimberly-Clark Worldwide, Inc.* (Ill. Cir. Ct. July 22, 2020) granting final approval to $11.2 million settlement to resolve claims of tampon purchasers for alleged defective products.

*Retta v. Millennium Prods., Inc.*, 2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) granting final approval to $8.25 million settlement to resolve claims of kombucha purchasers for alleged false advertising.

*Cortes v. National Credit Adjusters, L.L.C.* (E.D. Cal. Dec. 7, 2020) granting final approval to $6.8 million settlement to resolve claims of persons who received alleged autodialed calls without prior consent in violation of the TCPA.

*Bayol et al. v. Health-Ade LLC, et al.* (N.D. Cal. Oct. 11, 2019) – granting final approval to $3,997,500 settlement to resolve claims of kombucha purchasers for alleged false advertising.

## PHILIP L. FRAIETTA

Philip L. Fraietta is a Partner with Bursor & Fisher, P.A. Phil focuses his practice on data privacy, complex business litigation, consumer class actions, and employment law disputes. Phil has been named a "Rising Star" in the New York Metro Area by Super Lawyers® every year since 2019.

Phil has significant experience in litigating consumer class actions, particularly those involving privacy claims under statutes such as the Michigan Preservation of Personal Privacy Act, the Illinois Biometric Information Privacy Act, and Right of Publicity statutes. Since 2016, Phil has recovered over $100 million for class members in privacy class action settlements. In addition to privacy claims, Phil has significant experience in litigating and settling class action claims involving false or misleading advertising.

Phil is admitted to the State Bars of New York, New Jersey, and Michigan, the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, the Western District of New York, the Northern District of New York, the District of New Jersey, the Eastern District of Michigan, the Western District of Michigan, the Northern District of Illinois, the Central District of Illinois, and the United States Court of Appeals for the Second, Third, and Ninth Circuits. Phil was a Summer Associate with Bursor & Fisher prior to joining the firm.

Phil received his Juris Doctor from Fordham University School of Law in 2014, graduating cum laude. During law school, Phil served as an Articles & Notes Editor for the Fordham Law Review, and published two articles.  In 2011, Phil graduated cum laude from Fordham University with a B.A. in Economics.

### *Selected Published Decisions:*

*Fischer v. Instant Checkmate LLC*, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022), certifying class of Illinois residents for alleged violations of Illinois' Right of Publicity Act by background reporting website.

*Kolebuck-Utz v. Whitepages Inc.,* 2021 WL 157219 (W.D. Wash. Apr. 22, 2021), denying defendant's motion to dismiss for alleged violations of Ohio's Right to Publicity Law.

*Bergeron v. Rochester Institute of Technology,* 2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020), denying university's motion to dismiss for failure to refund tuition and fees for the Spring 2020 semester in light of the COVID-19 pandemic.

*Porter v. NBTY, Inc.,* 2019 WL 5694312 (N.D. Ill. Nov. 4, 2019), denying supplement manufacturer's motion for summary judgment on consumers' allegations of false advertising relating to whey protein content.

*Boelter v. Hearst Communications, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017), granting plaintiff's motion for partial summary judgment on state privacy law violations in putative class action.

### *Selected Class Settlements:*

*Edwards v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT (S.D.N.Y. 2019) – final approval granted for $50 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Ruppel v. Consumers Union of United States, Inc.*, Case No. 16-cv-02444-KMK (S.D.N.Y. 2018) – final approval granted for $16.375 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, Case No. 15-cv-05671-NRB (S.D.N.Y. 2019) – final approval granted for $13.75 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Benbow v. SmileDirectClub, LLC*, Case No. 2020-CH-07269 (Cir. Ct. Cook Cnty. 2021) – final approval granted for $11.5 million class settlement to resolve claims for alleged TCPA violations.

*Gregorio v. Premier Nutrition Corp.*, Case No. 17-cv-05987-AT (S.D.N.Y. 2019) – final approval granted for $9 million class settlement to resolve claims of protein shake purchasers for alleged false advertising.

*Taylor v. Trusted Media Brands, Inc.*, Case No. 16-cv-01812-KMK (S.D.N.Y. 2018) – final approval granted for $8.225 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Moeller v. American Media, Inc.*, Case No. 16-cv-11367-JEL (E.D. Mich. 2017) – final approval granted for $7.6 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Rocchio v. Rutgers, The State University of New Jersey*, Case No. MID-L-003039-20 (Sup. Ct. Middlesex Cnty. 2022) – final approval granted for $5 million class settlement to resolve claims for failure to refund mandatory fees for the Spring 2020 semester in light of the COVID-19 pandemic.

*Heigl v. Waste Management of New York, LLC*, Case No. 19-cv-05487-WFK-ST (E.D.N.Y. 2021) – final approval granted for $2.7 million class settlement to resolve claims for charging allegedly unlawful fees pertaining to paper billing.

*Frederick v. Examsoft Worldwide, Inc.*, Case No. 2021L001116 (Cir. Ct. DuPage Cnty. 2022) – final approval granted for $2.25 million class settlement to resolve claims for alleged BIPA violations.

## SARAH N. WESTCOT

Sarah N. Westcot is a Partner with Bursor & Fisher, P.A.  Ms. Westcot focuses her practice on complex business litigation, consumer class actions, and employment law disputes. She has represented clients in a wide array of civil litigation, and has substantial trial and appellate experience.

Ms. Westcot served as trial counsel in *Ayyad v. Sprint Spectrum L.P.*, where Bursor & Fisher won a jury verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

Ms. Westcot also has significant experience in high-profile, multi-district litigations.  She currently serves on the Plaintiffs' Steering Committee in *In re Zantac (Ranitidine) Products Liability Litigation,* MDL No. 2924 (S.D. Florida).

Ms. Westcot is admitted to the State Bars of California and Florida, and is a member of the bars of the United States District Courts for the Northern, Central, Southern, and Eastern Districts of California and the Southern and Middle Districts of Florida.

Ms. Westcot received her Juris Doctor from the University of Notre Dame Law School in 2009.  During law school, Ms. Westcot was a law clerk with the Cook County State's Attorney's Office in Chicago and the Santa Clara County District Attorney's Office in San Jose, CA.  She graduated with honors from the University of Florida in 2005.

## ALEC M. LESLIE

Alec Leslie is a Partner with Bursor & Fisher, P.A. He focuses his practice on consumer class actions, employment law disputes, and complex business litigation.

Alec is admitted to the State Bar of New York and is a member of the bar of the United States District Courts for the Southern and Eastern Districts of New York. Alec was a Summer Associate with Bursor & Fisher prior to joining the firm.

Alec received his Juris Doctor from Brooklyn Law School in 2016, graduating *cum laude*. During law school, Alec served as an Articles Editor for Brooklyn Law Review. In addition, Alec served as an intern to the Honorable James C. Francis for the Southern District of New York and the Honorable Vincent Del Giudice, Supreme Court, Kings County. Alec graduated from the University of Colorado with a B.A. in Philosophy in 2012.

### *Selected Class Settlements:*

*Gregorio v. Premier Nutrition Corp.*, Case No. 17-cv-05987-AT (S.D.N.Y. 2019) – final approval granted for class settlement to resolve claims of protein shake purchasers for alleged false advertising.

*Wright v. Southern New Hampshire Univ.*, Case No. 1:20-cv-00609-LM (D.N.H. 2021) – final approval granted for class settlement to resolve claims over COVID-19 tuition and fee refunds to students.

*Mendoza et al. v. United Industries Corp.*, Case No. 21PH-CV00670 (Phelps Cnty. Mo. 2021) – final approval granted for class settlement to resolve false advertising claims on insect repellent products.

*Kaupelis v. Harbor Freight Tools USA, Inc.*, Case No. 8:19-cv-01203-JVS-DFM (C.D. Cal. 2021) – final approval granted for class settlement involving allegedly defective and dangerous chainsaws.

*Rocchio v. Rutgers Univ.*, Case No. MID-L-003039-20 (Middlesex Cnty. N.J. 2021) – final approval granted for class settlement to resolve claims over COVID-19 fee refunds to students.

## ANDREW OBERGFELL

Andrew Obergfell is an Associate with Bursor & Fisher, P.A. Andrew focuses his practice on complex civil litigation and class actions.

Andrew graduated from Drew University with *summa cum laude* distinction. While at Drew University, Andrew was captain of the varsity baseball team. Andrew was inducted into the Phi Beta Kappa honor society and was President of the college's chapter of the Pi Sigma Alpha political science honor society.

Andrew attended Seton Hall University School of Law, where he obtained his law degree with *magna cum laude* distinction, and was inducted into the prestigious Order of the Coif honor society. While in law school, Andrew was an editor and published author for the Seton Hall Law Review, participated in the Impact Litigation Clinic, and was a member of the Interscholastic Moot Court Board. As part of the Interscholastic Moot Court Board, Andrew received the national best-brief award in the 2015 ABA National Appellate Advocacy Competition, as well as the 2015 best student-written brief of the year award as recognized by Scribes, the American Society of Legal Writers.

Prior to joining the firm, Andrew practiced at an AmLaw 100 law firm. He also clerked for The Honorable Douglas M. Fasciale in the New Jersey Superior Court, Appellate Division, in Newark, New Jersey.

## STEPHEN BECK

Stephen is an Associate with Bursor & Fisher, P.A. Stephen focuses his practice on complex civil litigation and class actions.

Stephen is admitted to the State Bar of Florida and is a member of the bars of the United States District Courts for the Southern and Middle Districts of Florida.

Stephen received his Juris Doctor from the University of Miami School of Law in 2018. During law school, Stephen received an Honors distinction in the Litigation Skills Program and was awarded the Honorable Theodore Klein Memorial Scholarship for excellence in written and oral advocacy. Stephen also received the CALI Award in Legislation for earning the highest grade on the final examination. Stephen graduated from the University of North Florida with a B.A. in Philosophy in 2015.

## BRITTANY SCOTT

Brittany Scott is an Associate with Bursor & Fisher, P.A. Brittany focuses her practice on data privacy, complex civil litigation, and consumer class actions. Brittany was an intern with Bursor & Fisher prior to joining the firm.

Brittany has substantial experience litigating consumer class actions, including those involving data privacy claims under statutes such as the Illinois Biometric Information Privacy Act, the Fair Credit Reporting Act, and the Michigan Preservation of Personal Privacy Act. In addition to data privacy claims, Brittany has significant experience in litigating class action claims involving false and misleading advertising.

Brittany is admitted the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Central, Southern, and Eastern Districts of California, the Eastern District of Wisconsin, and the Northern District of Illinois.

Brittany received her Juris Doctor from the University of California, Hastings College of the Law in 2019, graduating cum laude. During law school, Brittany was a member of the Constitutional Law Quarterly, for which she was the Executive Notes Editor. Brittany published



a note in the Constitutional Law Quarterly entitled "Waiving Goodbye to First Amendment Protections: First Amendment Waiver by Contract." Brittany also served as a judicial extern to the Honorable Andrew Y.S. Cheng for the San Francisco Superior Court. In 2016, Brittany graduated from the University of California Berkeley with a B.A. in Political Science.

### *Selected Class Settlements:*

*Morrissey v. Tula Life, Inc.,* Case No. 2021L0000646 (18th Judicial Circuit Court DuPage County 2021) – final approval granted for $4 million class settlement to resolve claims of cosmetics purchasers for alleged false advertising.

## MAX ROBERTS

Max Roberts is an Associate with Bursor & Fisher, P.A. Max focuses his practice on complex civil litigation, data privacy, and class actions. Max was a Summer Associate with Bursor & Fisher prior to joining the firm.

Max is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Northern, Southern, and Eastern Districts of New York, the Northern and Central Districts of Illinois, the Eastern District of Michigan, the District of Colorado, and the United States Court of Appeals for the Ninth Circuit.

Max received his Juris Doctor from Fordham University School of Law in 2019, graduating *cum laude.* During law school, Max was a member of Fordham's Moot Court Board, the Brennan Moore Trial Advocates, and the Fordham Urban Law Journal, for which he published a note entitled *Weaning Drug Manufacturers Off Their Painkiller: Creating an Exception to the Learned Intermediary Doctrine in Light of the Opioid Crisis*. In addition, Max served as an intern to the Honorable Vincent L. Briccetti of the Southern District of New York and the Fordham Criminal Defense Clinic. Max graduated from Johns Hopkins University in 2015 with a B.A. in Political Science.

Outside of the law, Max is an avid triathlete.

### *Selected Published Decisions:*

*Soo v. Lorex Corp.,* 2020 WL 5408117 (N.D. Cal. Sept. 9, 2020), denying defendants' motion to compel arbitration and denying in part motion dismiss consumer protection claims in putative class action concerning security cameras.

*Salerno v. Florida Southern College*, 488 F. Supp. 3d 1211 (M.D. Fla. 2020), denying motion to dismiss student's allegations that university committed a breach of contract by failing to refund students after it shifted to online learning during the COVID-19 pandemic.

*Saleh v. Nike, Inc.*, --- F. Supp. 3d ---, 2021 WL 4437734 (C.D. Cal. Sept. 27, 2021), denying in part motion to dismiss alleged violations of California Invasion of Privacy Act.

*Bugarin v. All Nippon Airways Co.*, 2021 WL 4974978 (N.D. Cal. Oct. 26, 2021), denying motion to compel arbitration of airline passenger's breach of contract claims.

*Sholopa v. Turk Hava Yollari A.O., Inc. d/b/a Turkish Airlines*, 2022 WL 976825 (S.D.N.Y. Mar. 31, 2022), denying motion to dismiss passenger's allegations that airline committed a breach of contract by failing to refund passengers for cancelled flights during the COVID-19 pandemic.

### *Selected Class Settlements:*

*Miranda v. Golden Entertainment (NV), Inc.*, Case No. 2:20-cv-534-AT (D. Nev. 2021) – final approval granted for class settlement valued at over $4.5 million to resolve claims of customers and employees of casino company stemming from data breach.

*Malone v. Western Digital Corp.*, Case No. 5:20-cv-3584-NC (N.D. Cal. 2021) – final approval granted for class settlement valued at $5.7 million to resolve claims of hard drive purchasers for alleged false advertised.

*Frederick v. ExamSoft Worldwide, Inc.*, Case No. 2021-L-001116 (18th Judicial Circuit Court DuPage County, Illinois 2021) – final approval granted for $2.25 million class settlement to resolve claims of Illinois students for alleged violations of the Illinois Biometric Information Privacy Act.

## CHRISTOPHER R. REILLY

Chris Reilly is an Associate with Bursor & Fisher, P.A. Chris focuses his practice on consumer class actions and complex business litigation.

Chris is admitted to the State Bar of Florida and is a member of the bar of the United States District Courts for the Southern and Middle Districts of Florida.

Chris received his Juris Doctor from Georgetown University Law Center in 2020. During law school, Chris clerked for the Senate Judiciary Committee, where he worked on antitrust and food and drug law matters under Senator Richard Blumenthal. He has also clerked for the Mecklenburg County District Attorney's Office, the ACLU Prison Project, and the Pennsylvania General Counsel's Office. Chris served as Senior Editor of Georgetown's Journal of Law and Public Policy. In 2017, Chris graduated from the University of Florida with a B.A. in Political Science.

## RACHEL MILLER

Rachel Miller is an Associate with Bursor & Fisher, P.A. Rachel focuses her practice on complex civil litigation and class actions.

Rachel is admitted to the State Bar of Florida and is a member of the bar of the United States District Court for the Southern District of Florida.

Rachel received her Juris Doctor from the University of Chicago Law School in 2015. During law school, Rachel participated in the Criminal & Juvenile Justice Clinic and received the 2014 Public Interest Law Society Award for Public Service. Rachel graduated *cum laude* from the University of Florida in 2012 with a B.A. in Political Science.

## JULIA VENDITTI

Julia Venditti is an Associate with Bursor & Fisher, P.A. Julia focuses her practice on complex civil litigation and class actions. Julia was a Summer Associate with Bursor & Fisher prior to joining the firm.

Julia is admitted to the State Bar of California and is a member of the bars of the United States District Courts for the Northern and Southern Districts of California.

Julia received her Juris Doctor in 2020 from the University of California, Hastings College of the Law, where she graduated *cum laude* with two CALI Awards for the highest grade in her Evidence and California Community Property classes. During law school, Julia was a member of the UC Hastings Moot Court team and competed at the Evans Constitutional Law Moot Court Competition, where she finished as a national quarterfinalist and received a best brief award. Julia was also inducted into the UC Hastings Honors Society and was awarded Best Brief and an Honorable Mention for Best Oral Argument in her First-Year Moot Court section. In addition, Julia served as a Research Assistant for her Constitutional Law professor, as a Teaching Assistant for Legal Writing & Research, and as a Law Clerk at the San Francisco Public Defender's Office. In 2017, Julia graduated *magna cum laude* from Baruch College/CUNY, Weissman School of Arts and Sciences, with a B.A. in Political Science.

## SEAN L. LITTERAL

Sean L. Litteral is an Associate with Bursor & Fisher, P.A. Sean focuses his practice on complex business litigation, consumer class actions, and employment law disputes. He holds degrees from Berea College, the London School of Economics and Political Science, and Berkeley Law.

Sean has represented clients in a variety of matters, including survivors against the Boy Scouts of America for covering up decades of sexual abuse; warehouse workers against Walmart for failing to comply with COVID-19 health and safety guidelines; and drivers against Corinthian International Parking Services for systematically violating California's wage and hour laws.

Sean clerked for the Alaska Supreme Court and served as a fellow for the U.S. House Committee on Education and Labor and the Atlanta City Council. He previously externed for the Special Litigation Section, Civil Rights Division of the U.S. Department of Justice; the Berkeley Environmental Law Clinic; and the Corporate Sustainability Program at the Pontificia Universidad Católica de Chile.

He has published in the UC Davis Environmental Law & Policy Journal, the Harvard Latinx Law Review, and the Stanford Law and Policy Review on a broad scope of matters, including corporate sustainability, international trade, and national security.

## JULIAN DIAMOND

Julian Diamond is an Associate with Bursor & Fisher, P.A. Julian focuses his practice on privacy law and class actions. Julian was a Summer Associate with Bursor & Fisher prior to joining the firm.

Julian received his Juris Doctor from Columbia Law School, where he was a Harlan Fiske Stone Scholar. During law school, Julian was Articles Editor for the Columbia Journal of Environmental Law. Prior to law school, Julian worked in education. Julian graduated from California State University, Fullerton with a B.A. in History and a single subject social science teaching credential.

## MATTHEW GIRARDI

Matt Girardi is an Associate with Bursor & Fisher, P.A. Matt focuses his practice on complex civil litigation and class actions, and has focused specifically on consumer class actions involving product defects, financial misconduct, false advertising, and privacy violations. Matt was a Summer Associate with Bursor & Fisher prior to joining the firm.

Matt is admitted to the State Bar of New York, and is a member of the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, and the Eastern District of Michigan

Matt received his Juris Doctor from Columbia Law School in 2020, where he was a Harlan Fiske Stone Scholar. During law school, Matt was the Commentary Editor for the Columbia Journal of Tax Law, and represented fledgling businesses for Columbia's Entrepreneurship and Community Development Clinic. In addition, Matt worked as an Honors Intern in the Division of Enforcement at the U.S. Securities and Exchange Commission. Prior to law school, Matt graduated from Brown University in 2016 with a B.A. in Economics, and worked as a Paralegal Specialist at the U.S. Department of Justice in the Antitrust Division.

# EXHIBIT 5



## FIRM SUMMARY

With offices in Pittsburgh, San Diego, Los Angeles, Philadelphia, and Chicago, Lynch Carpenter is a national firm specializing in complex class and collective actions, and is involved in several high-profile multidistrict litigation proceedings. The attorneys of Lynch Carpenter have litigated class-action matters involving financial fraud (including securities fraud, derivative actions, and lending fraud), data breach, privacy, consumer fraud, breach of contract, labor and employment, antitrust, and civil rights, in federal and state courts throughout the country. Litigation prosecuted by Lynch Carpenter and its attorneys has resulted in substantial monetary recoveries and injunctive benefits on behalf of class members, described in more detail below. In addition, the Lynch Carpenter team has generated seminal legal authority in both trial and appellate courts.

Lynch Carpenter represents a wide variety of clients, including individual consumers and employees, small businesses, banks and credit unions, non-profits, issue advocacy groups, and governmental entities. Lynch Carpenter attorneys have been a national leader in payment card data breach litigation since 2014, recovering over $100 million for financial institutions that suffered fraud losses and card reissuance costs in the wake of payment card data compromises at major retailers such as Target, Home Depot, Eddie Bauer, and Wendy's. Lynch Carpenter partner Gary Lynch has worked closely with the Independent Community Bankers of America, the Credit Union National Association, and state-level associations and leagues to prosecute these cases. The firm also advocates for and consults with these groups outside of the court system, such as by drafting proposed legislation and hosting educational seminars about data breach litigation and privacy laws.

Lynch Carpenter currently has 22 attorneys practicing nationwide. Lynch Carpenter's attorneys are recipients of numerous additional individual awards, as described in more detail in the individual biographies on the firm's website.

## REPRESENTATIVE CASES

### CONSUMER PROTECTION/PRODUCTS LIABILITY

*In re Robinhood Outage Litig.*, No. 20-cv-1626 (N.D. Cal.). In July 2020, Jamisen Etzel was appointed to the executive committee overseeing consolidated actions brought by consumers who sustained losses when the trading application Robinhood suffered severe service outages in early 2020 during a period of intense market volatility. A consolidated amended complaint was filed in August 2020, and rulings on Robinhood's initial dispositive motion is expected in early 2021.

*Morrow v. Ann Inc.*, 16-cv-3340 (S.D.N.Y.). Lynch Carpenter attorneys were co-class counsel in a case alleging deceptive pricing practices by a major national retail chain. After plaintiffs overcame a motion to dismiss, the case settled for $6.1 million worth of class benefits. The settlement was approved in April 2018.

*Luca v. Wyndham Hotel Group, LLC*, 2:16-cv-746 (W.D. Pa.). Lynch Carpenter attorneys were co-lead counsel in a class action against the Wyndham hotel companies for violations of New Jersey consumer protection statutes. Plaintiffs alleged that Wyndham's websites deceptively masked the resort fees charged at certain hotels and forced patrons to agree to illegal terms and conditions. In 2017, plaintiffs defeated a motion to dismiss filed by two of the primary operating subsidiaries. A class settlement worth up to $7.6 million was reached in 2019 and approved later that year.

*Van v. LLR, Inc.*, 3:18-cv-0197 (D. Ak.); 962 F.3d 1160 (9th Cir. 2020). Lynch Carpenter partners Jamisen Etzel and Kelly Iverson won a significant consumer rights ruling from the United States Court of Appeals for the Ninth Circuit. The action alleged the defendant's overcharged customers over the course of more than a year; however, after notice of the suit but before it was filed, the defendant refunded the entire class – but only the amount overcharged without interest or other statutory damages. The district judge dismissed the action based on lack of subject matter jurisdiction after finding that the consumers' lost time value of money was "too little" to be a constitutionally recognizable harm. The appeals court reversed and, in a published decision, held that the temporary loss of money is a sufficient "injury-in-fact" under Article III of the Constitution to confer standing on a consumer to file a federal lawsuit. In September 2021, the District of Alaska certified a class of consumers asserting claims under Alaska's Unfair Trade Practices and Consumer Protection Act.

***Robert Brown, et al. v. Electrolux Home Products, Inc., d/b/a Frigidaire***, No. 15-11455 (11th Cir.). In July 2015, Lynch Carpenter attorneys co-authored a brief on behalf of Public Justice, P.C.; the National Association of Consumer Advocates; U.S. PIRG (United States Public Interest Research Group); Consumer Action; and the Consumer Federation of California, appearing as *amici curiae* to the Eleventh Circuit and arguing in support of affirmance of a district court's certification of a class of purchasers of defective washing machines.

***Kobylanski v. Motorola Mobility, Inc., et al.***, No. 2:13-cv-1181 (W.D. Pa.). Lynch Carpenter attorneys represented purchasers of MOTOACTV wearable fitness devices who alleged that the devices, although marketed as "sweat-proof" and "rain-resistant," were in fact susceptible to damage from even slight amounts of moisture. A settlement was reached which provided for full refunds for class members who had previously submitted a claim for water damage to Motorola but were denied a repair or replacement, and additional forms of relief for class members who had not previously complained of water damage. The settlement was approved in October 2014.

***Quinn et al. v. Walgreen Co., Wal-Mart Stores, Inc., Supervalu, Inc., and Perrigo Company of South Carolina, Inc.***, No. 7:12-cv-8187 (S.D.N.Y.). Lynch Carpenter attorneys served as co-lead counsel on behalf of purchasers of glucosamine/chondroitin products manufactured by Perrigo and sold by various retailers. A settlement was reached in 2014 which provided for a total settlement fund of $2.8 million and provided for full or partial refunds to class members who submitted valid claims. Final approval was granted in March 2015.

***In re Nutramax Cosamin Marketing and Sales Practices Litigation* – MDL No. 2498**, (D. Md.). Lynch Carpenter attorneys represented several plaintiffs in nationwide litigation regarding Nutramax's false and misleading marketing of glucosamine/chondroitin supplements, which multiple studies have determined to be without efficacy for the conditions they purport to treat. After the cases were consolidated for pre-trial proceedings, Lynch Carpenter partner Ed Kilpela was appointed to the Executive Committee overseeing the litigation.

***Howard's Towing Unfair Trade Practices Litigation***, (C.P. Allegheny County, Pennsylvania). Lynch Carpenter partner Kelly Iverson is currently co-lead counsel representing individuals in a series of coordinated cases against various property operators and a towing company alleged to be charging more than allowed by law for the return of vehicles that were towed from parking lots. In June 2021, Judge Ignelzi granted the Plaintiffs' motions for class certification.

***In re Wireless Phone Equipment Replacement Insurance Litigation,*** (C.P. Allegheny County, Pennsylvania). Lynch Carpenter attorneys were lead counsel in this national litigation alleging consumer fraud in connection with wireless phone equipment replacement insurance. In November 2004, the Court approved a class settlement and entered Findings of Fact and Conclusions of Law which commented on the adequacy of Lynch Carpenter attorney Gary Lynch as co-lead counsel as follows:

> "Class counsel have abundant experience as lead counsel in consumer class action litigation. Indeed, class counsel have frequently appeared before this Court. Other courts have routinely recognized class counsels' adequacy . . . . This Court readily agrees with these other courts, and finds that Bruce Carlson and Gary Lynch are more than adequate counsel, and indeed are capable and diligent class action attorneys."

***Mednick v. Precor, Inc.***, No. 14-cv-03624 (N.D. Ill.): Lynch Carpenter partner Katrina Carroll served as court-appointed Co-Lead Counsel in this products liability matter concerning the heart rate monitoring feature on Precor fitness machines. Due to Ms. Carroll's efforts, the plaintiffs defeated a contested class certification motion and obtained class certification for a multi-state consumer class. Ms. Carroll was instrumental in negotiating a class settlement providing meaningful relief for class members shortly thereafter, for which the Court recently issued final approval.

***Bishop et al. v. Behr Process Corp. et al.***, No. 1:17-cv-4464 (N.D. Ill.): Katrina Carroll currently serves as court-appointed Co-Lead Counsel in this national products liability class action matter relating to defective deck paint. Together with her co-counsel, Ms. Carroll obtained a substantial settlement for the class, which has been finally approved by the Court and is currently being administered.

***In re Rust-Oleum Restore Marketing, Sales Practices and Prods. Liab. Litig.*** No. 1:15-cv-1364 (N.D. Ill.): In this sprawling products liability MDL relating to defective deck resurfacing products, Katrina Carroll was instrumental in negotiating a $9.3 million settlement providing meaningful relief to consumers, which received final approval in March of 2017 by the Honorable Amy J. St. Eve of the United States District Court for the Northern District of Illinois, now a sitting Judge of the Court of Appeals for the Seventh Circuit. Over the course of the litigation, among other things, the court resolved an extremely challenging motion to dismiss substantially in plaintiffs' favor, issuing a sixty-page opinion, oft-cited in warranty and consumer fraud class actions across the country. Katrina oversaw the plaintiffs' briefing on that motion.

**FINANCIAL FRAUD, LENDING PRACTICES, AND SECURITIES**

***In re: FedLoan Student Loan Servicing Litigation* – MDL No. 2833**, (E.D. Pa.). Lynch Carpenter serves as court-appointed co-lead counsel on behalf of student loan borrowers and federal grant recipients in this multidistrict litigation. The claims relate to widespread and systemic failures on the part of a student loan servicer and the U.S. Department of Education to adequately service the programs and advise its participant. A consolidated complaint was filed in November 2019. As of January 2020, a motion to dismiss is fully briefing and currently awaiting resolution by the Court.

***CitiMortgage SCRA Litigation***, (S.D.N.Y.). Lynch Carpenter attorneys were tri-lead counsel in this class action against CitiMortgage on behalf of Sergeant Jorge Rodriguez in the Southern District of New York. This case alleges that CitiMortgage improperly foreclosed upon Mr. Rodriguez's home (and the homes of similarly situated individuals) while he was serving his country in Iraq, in violation of the Servicemembers Civil Relief Act. The case settled and received final approval in October 2015, securing a total recovery of $38.2 million for members of our military service.

***Pitts v. NovaStar Home Loans, Inc. et al.*** , (S.D. Ga.). Lynch Carpenter attorneys were co-lead counsel for plaintiffs in this national RESPA class action. The Southern District of Georgia was the MDL court for this litigation. After the Court denied defendant's motion to dismiss, after the Court denied defendants' motion for summary judgment and granted plaintiffs' motion for class certification in a related Maryland state court action – where Lynch Carpenter attorneys were also co-lead counsel -- and after extensive discovery including the video depositions of several of defendants' top executives, the parties participated in multiple mediation sessions and ultimately arrived at a national cash settlement on behalf of class members for $17.3 million.

***In re Community Bank of Northern Virginia and Guaranty National Bank of Tallahassee Secondary Mortgage Loan Litigation***, (W.D. Pa./3d Cir.). Lynch Carpenter attorneys were co-lead class counsel in this national litigation on behalf of second mortgage borrowers under the Real Estate Settlement Procedures Act. The class was certified by the district court and affirmed by the Third Circuit, 795 F.3d 380 (2015). A class settlement was finalized in early 2017 and obtained a total recovery of $24 million.

***Kahrer v. Ameriquest Mortgage Co.***, (W.D. Pa./MDL N.D. Ill.). Lynch Carpenter attorneys were counsel for plaintiff in connection with this consolidated group of class actions alleging the existence of a kick-back scheme in violation of RESPA, along with numerous other unfair lending

practices. The specific case being handled by Lynch Carpenter attorneys created new law under RESPA. Specifically, Lynch Carpenter attorneys filed this action as a test case to challenge what they viewed as a negative trend in the law regarding how federal trial courts were determining whether a consumer has standing to sue under RESPA, as well as the manner in which damages are calculated under RESPA. Every prior federal trial court to consider these issues had sided with defendants. In opposing the Ameriquest motion to dismiss that was filed in this case, Lynch Carpenter attorneys argued that these other federal trial courts had fundamentally misinterpreted the legislative history of RESPA in their decisions to dismiss the prior cases. In a seminal decision, the United States District Court for the Western District of Pennsylvania departed from the holdings issued by these other federal courts, denying the motion to dismiss. *See Kahrer v. Ameriquest Mortgage Co.*, 418 F.Supp.2d 748 (W.D. Pa. 2006) (Hay, J.). Multiple federal courts of appeals have adopted the *Kahrer* reasoning, including at least the Sixth and Third Circuits. This case was ultimately settled as part of MDL proceedings against Ameriquest in the Northern District of Illinois, and final approval of the settlement was granted.

***Bannon v. First One Lending, Inc.,*** (C.P., Allegheny County, Pennsylvania). Lynch Carpenter attorneys were co-lead counsel in this class action filed on behalf of Pennsylvania second mortgage loan borrowers alleging that they were charged excessive settlement fees in violation of the Pennsylvania Secondary Mortgage Loan Act. After the court denied defendant's motion to dismiss, the case ultimately settled, and plaintiffs and the class were refunded 100% of the alleged overcharges.

***In re Tenet Healthcare Corp. Securities Litigation***, 02-cv-8462 (C.D. Cal.). Prior to joining the firm, Katrina Carroll represented the State of New Jersey's Division of Investment in this securities class action against Tenet Healthcare and its outside auditor, KPMG, related to false and misleading public statements those entities made between 2000 and 2002 about Tenet's financial health. Katrina played a large role in drafting motions *in limine* briefing issues regarding the admissibility of plaintiff's expert witness report. Tenet settled in 2006 for $215 million, and KPMG settled in 2008 for $65 million.

***In re Motorola Securities Litig.***, 03-cv-287 (N.D. Ill.). Katrina Carroll represented the State of New Jersey's Division of Investment in this securities class action against Motorola, stemming from misrepresentations made by the company regarding a $2 billion loan it made to a Turkish entity that was not repaid. The case settled a few days before trial for $190 million.

## PRIVACY & DATA BREACH LITIGATION

***In re Equifax, Inc. Customer Data Security Breach Litig.***, MDL 2800 (N.D. Ga.). The Equifax data breach compromised the nation's entire credit reporting system. Lynch Carpenter founder Gary Lynch was retained by the Independent Community Bankers of America, along with several banks and credit unions, to institute litigation against Equifax on behalf of a class of all financial institutions in the nation for damages resulting from the data breach. The financial institutions, as providers and purchasers of information within the credit reporting system, were severely impacted by the Equifax data breach, in which 147.9 million U.S. consumers – roughly 46% of the U.S. population and nearly 60% of all adults in the U.S. – had their highly sensitive personally identifying information ("PII") and payment card data ("PCD") compromised between May and July 2017 (the "Data Breach"). More than 400 lawsuits filed by consumers and financial institutions were consolidated in the MDL. Gary Lynch was appointed co-lead counsel for financial institution plaintiffs in this multidistrict litigation. After significant dispositive motions practice and initial rounds of discovery, the parties negotiated a settlement of the financial institution class action that provides up to $7.75 million in cash benefits, plus additional injunctive relief. The court granted preliminary approval of the settlement in June 2020 and final approval in October 2020.

***In re Target Corporation Customer Data Breach Litig.***, 0:14-md-02522, MDL 2522 (D. Minn.). This multidistrict litigation arose out of the massive data breach that occurred in late 2013. Judge Magnuson appointed Gary Lynch to the five-member Plaintiffs' Executive Committee that managed the litigation on behalf of all Plaintiffs' tracks (consumer, financial institution, and shareholder). A settlement agreement which provided $10 million to affected individual customers was granted final approval in November 2015. A separate settlement providing approximately $39 million in relief to plaintiff financial institutions was granted final approval in May 2016.

***In re TikTok, Inc., Consumer Privacy Litig***., No. 20-cv-4699 (MDL No. 2948) (N.D. Ill.). Judge Lee appointed Katrina Carroll as Co-Lead Counsel in this multidistrict litigation alleging that one of the world's biggest social media platforms captured, collected, and transmitted personal data from TikTok users and their devices without their consent and/or knowledge, including private information and biometric information within the meaning of the Illinois Biometric Information Privacy Act.

***First Choice Federal Credit Union v. The Wendy's Company et al***, 2:16-cv-0506, (W.D. Pa.). This class action arose out of a data breach alleged to have begun in October 2015, when computer hackers installed malware on the point-of-sale systems of Wendy's franchised restaurants for the purpose of capturing and ex-filtrating customer payment card data (the "Data Breach"). It is estimated that approximately 18 million payment cards were exposed in the Data

Breach. The United States District Court for the Western District of Pennsylvania consolidated several proposed class actions and appointed Gary Lynch as Co-Lead Counsel on behalf of the Plaintiff financial institutions. Plaintiffs filed an early motion seeking to apply *Ohio law to Plaintiffs' claims on a nationwide basis, proposing to the Court that the choice of* law issue, which is normally not decided until the class certification or summary judgment stage, could be decided early, under Rule 1's mandate that the rules be interpreted to "secure the just, speedy and inexpensive determination of every action and proceeding." Wendy's opposed the motion. On June 6, 2018, the Court adopted the Magistrate's Report and Recommendation to grant the motion and to apply Ohio law to the negligence and negligence *per se* claims. In November 2018, after three rounds of in-person mediation, Wendy's agreed to pay $50 million into a non-reversionary fund and to adopt and/or maintain certain reasonable safeguards to manage its data security risks. When the settlement received final approval in November 2019, the Honorable Maureen P. Kelly noted Class Counsel's "national reputation," "significant experience in these types of class actions and in data breach litigation," and "high level of skill and efficiency." Judge Kelly further explained:

> This case has gone on for three and a half years…This was a very involved case and everyone brought to the table an incredible wealth of knowledge, was always prepared, really was thorough and professional in everything that was provided to the Court. And as involved as this case was, if every case I had was as well organized and professionally presented as this case has been, my life would be much easier… The briefs I got in this case and any filings were just so well-done and detailed. And my law clerks and I have discussed that a number of times. I want to thank counsel for the way you have conducted yourselves and the way you've all presented this case.

***In re Home Depot Customer Data Breach Litig.***, 1:14-md-02583, MDL 2583 (N.D. Ga.). In this multidistrict litigation, Lynch Carpenter attorneys represented financial institutions in litigation related to the major data breach at the retailer which continued for almost six months in 2014 and resulted in the compromise of approximately 56 million payment card accounts. Gary Lynch was appointed by Judge Thrash to be one of three lead counsel managing the financial institution track of the litigation. Over forty financial institutions and seventeen credit union associations filed a consolidated complaint in May 2015. Judge Thrash denied the majority of Home Depot's motion to dismiss on May 18, 2016. In September 2017, the Court granted final approval to a comprehensive class settlement that provides over $27 million in relief to the financial institution class.

*Veridian Credit Union v. Eddie Bauer LLC*, 2:17-cv-356 (W.D. Wash.). Gary Lynch served as co-lead counsel on behalf of a class of financial institutions in this class action against Eddie Bauer arising out of payment card data breach of the retailer's point-of-sale systems in 2016, which led to the exposure of up to 1.4 million payment cards. After overcoming a motion to dismiss and engaging in substantial discovery, the parties negotiated a class action settlement, which was approved in 2019. The agreement made up to $2.8 million available in direct cash relief to class members and provided for an addition $7 million worth of injunctive relief and other benefits.

*In Re: Solara Medical Supplies Data Breach Litigation*, 19-cv-02284 (S.D. Cal.). In January 2020, Judge Marilyn Huff appointed Kelly Iverson to the Plaintiffs' Steering Committee in this data breach action that affected both the personally identifiable information as well as protected health information of Plaintiffs' and the classes.

*In re Wawa, Inc. Data Security Litig*, 2:19-cv-6019 (E.D. Pa.). Gary Lynch was appointed co-lead counsel for a putative class of financial institution plaintiffs in consolidated actions brought against Wawa, Inc. arising out of a 2019 payment card data breach involving the convenience store's point-of-sale systems. A consolidated amended complaint was filed in July 2020, and as of February 2021, the defendant's motion to dismiss is fully briefed and awaiting disposition.

*Greater Chautauqua Federal Credit Union et al v. Kmart Corporation et al*, No. 15-cv-02228 (N.D. Ill.). In this consolidated data breach case in which financial institutions were seeking recovery for losses sustained as a result of a 2014 data breach at one of the nation's largest discount retail chains, Judge Lee appointed Gary Lynch to the Plaintiffs' Executive Committee, and Katrina Carroll to serve as Liaison Counsel. A settlement was reached and approved in June 2017.

*In re Marriott International Customer Data Security Breach Litigation,* MDL No. 2879 (D. MD.). Gary Lynch was appointed to the Plaintiffs' Steering Committee in this multidistrict litigation related to the data breach involving Starwood guest information dating back to at least 2014. The MDL includes more than 100 cases and is in pretrial litigation.

*Dittman et al v. UPMC d/b/a The University of Pittsburgh Medical Center and UPMC McKeesport*, (Allegheny Cty., Pa. No. GD-14-003285). Lynch Carpenter is representing several employees of the health care group UPMC in a class action stemming from a breach of UPMC's personnel files. On November 21, 2018, the Supreme Court of Pennsylvania issued a landmark decision, reversing two lower courts, regarding the viability of common law negligence claims in the wake of a data breach. The Court found that UPMC engaged in affirmative conduct by

collecting and storing employee data, and that general principles of negligence support holding actors to "a duty to others to exercise the care of a reasonable man to protect [others] against an unreasonable risk of harm to them arising out of the act." As to the economic loss doctrine, the Court agreed with Plaintiffs' interpretation of Pennsylvania legal precedent on the issue, finding that the question of whether the economic loss doctrine applies necessarily turns on the "source of the duty alleged," and, accordingly, a plaintiff may seek pecuniary damages under a negligence theory if the duty sought to be enforced arises independently of any contractual relationship between the parties. After remand to the trial court, additional motions practice, and initiating discovery, the parties reached a settlement that received preliminary approval.

*In re Anthem, Inc. Customer Data Security Breach Litig.*, No. 5:15-md-02617, MDL 2617 (N.D. Cal.). Lynch Carpenter attorneys represented customers of a national health insurer which experienced a data breach involving the personal information, including social security numbers, of up to an estimated 80 million customers. The case was consolidated and transferred to the Northern District of California in June 2015. Lynch Carpenter attorneys participated in discovery related to Highmark, the Pennsylvania-based member of the Blue Cross Blue Shield Association and a co-defendant in the MDL. The parties reached a settlement valued at $117 million, which was approved by the Court.

*In re Community Health Systems, Inc., Customer Data Security Breach Litigation*, 2:15-cv-00222, MDL 2595 (N.D. Ala.). Gary Lynch served as a member of the plaintiffs' steering committee in consolidated multidistrict litigation stemming from a 2014 data breach involving one of the nation's largest hospital chains. The breach affected over 200 hospitals and the sensitive personal information of approximately 4.5 million patients was compromised. The action settled on a class basis for up to $3.1 million.

*In re Arby's Restaurant Group*, 1:17-mi-55555 (N.D. Ga.). In October 2016, computer hackers accessed Arby's inadequately protected point-of-sale system and installed malware that infected nearly 1,000 Arby's restaurant locations. Gary Lynch was appointed by Judge Totenberg as Chair of the Financial Institution Plaintiffs' Executive Committee. The case settled and received final approval in November 2020.

*In re Ashley Madison Customer Data Security Breach Litig.,* MDL No. 2669 (E.D. Mo.). In this well-publicized data breach case Lynch Carpenter attorneys represented individuals whose highly sensitive account information was leaked from a social media company. The case was consolidated and transferred to the Eastern District of Missouri in December 2015. Judge Ross appointed Gary Lynch and Katrina Carroll (while with her prior firm) to the Executive Committee. A class settlement for $11.2 million was given final approval in November 2017.

*In re Vizio, Inc. Consumer Privacy Litig.*, MDL No. 2693 (C.D. Cal.). This action was filed on behalf of individuals who purchased Vizio "Smart TVs," which contained software that collected information about the users in a manner that allegedly violates numerous consumer protection statutes. The case was consolidated and transferred to the Central District of California in April 2016, and Gary Lynch was appointed to the Plaintiffs' Steering Committee. In March 2017, District Judge Staton granted in part and denied in part a motion to dismiss, leaving the most significant claims intact and granting plaintiffs leave to re-plead the dismissed counts. After plaintiffs filed a second consolidated amended complaint, a second motion to dismiss was denied in July 2017. Vizio's attempt to certify an interlocutory appeal was denied in October 2017. The case was settled and received final approval in 2019, providing for a $17 million common fund.

*Vance v. International Business Machines Corp.*, 1:20-cv-577 (N.D. Ill.). Lynch Carpenter attorneys were appointed Co-Lead Counsel in this class action claiming IBM violated Illinois's Biometric Information Privacy Act when it collected, obtained, disclosed, redisclosed, disseminated, and otherwise profited from Illinois residents' unique facial geometric measurements without providing notice or obtaining consent. In September 2020, Lynch Carpenter defeated nearly all of the arguments raised in IBM's motion to dismiss, allowing the case to proceed forward toward class certification.

*In Re: Clearview AI, Inc., Consumer Privacy Litig.*, 1:21-cv-00135 (N.D. Ill.). Lynch Carpenter attorneys served as counsel in this multidistrict litigation on behalf of a proposed class of Illinois citizens alleging that Clearview, in violation of the Illinois Biometric Information Privacy Act, scraped over 3 billion facial images from the internet, scanned the facial images' biometrics, and built a searchable database of the scanned images and biometrics, allowing users to instantly identify an unknown individual with only a photograph. Clearview then sold or otherwise gave access to these biometrics to hundreds of law enforcement agencies, private entities, and individuals.

*Storm et al. v. Paytime, Inc.*, No. 1:14-cv-011380-JEJ (M.D. Pa.). Lynch Carpenter attorneys represented individuals whose sensitive personal and financial information was stolen from the systems of a Pennsylvania payroll processing company. The case was appealed to the Third Circuit and settled on a class basis while the appeal was pending.

*In re SuperValu, Inc. Customer Data Security Breach Litig.*, 0-14-md-02586, MDL 2586 (D. Minn.). In April 2015, Ed Kilpela of Lynch Carpenter was appointed as interim co-lead counsel in this consolidated case. The litigation stems from a 2014 data breach that compromised the

sensitive personal and financial information of customers of approximately 1,000 grocery stores operating under a variety of brand names in over a dozen states.

***Sullivan v. Wenner Media LLC***, No. 1:16-cv-960 (M.D. Mich.). Lynch Carpenter attorneys were co-lead counsel for plaintiffs who brought claims against the publisher of *Rolling Stone* magazine. Plaintiffs allege that *Rolling Stone* sold subscriber information to marketing partners without the subscriber's consent, in violation of Michigan state privacy laws. The parties reached a proposed settlement including a $1.1 million settlement fund and alternative forms of relief. The settlement was approved in May 2018.

***Lewert v. PF Chang's China Bistro, Inc.***, No. 1:14-cv-04787 (N.D. Ill.): Katrina Carroll served as Court-appointed Co-Lead counsel representing P.F. Chang's customers who had their personal financial information compromised in a 2014 security breach. This matter was one of the first data breach cases on record. Ms. Carroll oversaw all of the appellate briefing in ultimately obtaining a landmark ruling in the Seventh Circuit on Article III standing, hailed by Law360 as one of the "top privacy cases" of 2016.

***Salam v. Lifewatch, Inc.***, No. 1:13-cv-09305 (N.D. Ill.): In this hard-fought litigation, Lynch Carpenter partner Katrina Carroll is currently involved as court-appointed Co-Lead Counsel on behalf of a certified class in this privacy matter brought under the Telephone Consumer Protection Act ("TCPA"). Ms. Carroll has been directly involved in all aspects of litigation, including discovery and motion practice which culminated in a total victory for plaintiffs in contested class certification.

***Bakov v. Consolidated World Travel Inc.***, No. 1:15-cv-02980 (N.D. Ill.): Katrina Carroll serves as court-appointed Co-Lead Counsel in this TCPA litigation for a certified class of consumers.

### GOVERNMENT COVID-19 CLOSURE ORDER LITIGATION

***In re Generali Covid-19 Travel Insurance Litig.***, No. 20-md-2968, MDL 2968 (S.D.N.Y). In January 2021, Jamisen Etzel was appointed co-lead counsel in this MDL comprising actions brought on behalf of consumers whose travel plans were cancelled as a result of the Covid-19 pandemic, and whose travel insurance provider either denied coverage or refused to return premiums paid for post-departure risks the insurer was not required to cover. As of February 2021, the MDL is in the initial pleading stage.

*Business Income Insurance Coverage Litigation*, various. Lynch Carpenter attorneys represents numerous business-policyholders who were forced to close or curtail their business operations as a result of government shut down orders in the wake of the Covid-19 pandemic and who have been denied insurance coverage under their "all risks" property insurance coverage.

## WAGE AND HOUR & EMPLOYMENT DISCRIMINATION LITIGATION

*Verma v. 3001 Castor Inc.*, (E.D. Pa.). As co-class counsel, Lynch Carpenter attorneys won a $4.59 million jury verdict in 2018 for misclassified workers at a Philadelphia nightclub. The claims were brought under the FLSA and Pennsylvania Minimum Wage Act. The trial verdict was fully affirmed by the Third Circuit in August 2019.

*Gardner v. Country Club, Inc.* (D.S.C.). Lynch Carpenter attorneys served as class counsel for a class of nightclub workers who were misclassified as independent contractors, subjected to deductions from their tip income, and denied wages. Lynch Carpenter attorneys won two significant dispositive motions, obtaining a ruling that the workers were legally employees, and a legal opinion determining as a matter of first impression under South Carolina wage laws that tip income was protected from employer deductions. The case then settled for a total of $1.5 million, and final approval was granted in 2019.

*Herron v. Investment Professionals Inc.* (W.D. Pa.). Lynch Carpenter attorneys secured a $450,000 settlement for 12 financial advisors who were misclassified by a financial services company and consequently did not receive overtime compensation. The settlement was approved in February 2018.

*Herzfeld v. 1416 Chancellor Inc.* (E.D. Pa.). Lynch Carpenter attorneys is class counsel for a litigation-certified Rule 23 class and FLSA collective of more than 100 nightclub entertainers alleging misclassification and violations of the FLSA and Pennsylvania wage and hour laws. A settlement for a total amount of $415,000 was reached and granted preliminary approval in January 2018. Final approval was granted following a fairness hearing in June 2018.

*Correll v. One Three Five, Inc.* (W.D. Pa.). Lynch Carpenter attorneys was class counsel for a class of several hundred nightclub performers who alleged that they were misclassified by the club's owner as independent contractors, resulting in violations of the Fair Labor Standards Act and Pennsylvania state wage laws. A class settlement was granted final approval in 2016 and provided $815,000 in total relief for the class.

***Genesis Healthcare v. Symczyk*** (U.S. Supreme Court). Gary Lynch served as Counsel of Record before the United States Supreme Court in an appeal addressing the application of mootness principles in a putative collective action filed under Section 216(b) of the Fair Labor Standards Act. When defendant served the plaintiff with a Rule 68 offer of judgment for "make whole" relief, the district court dismissed the case as moot. Gary Lynch successfully argued the appeal in the United States Court of Appeals for the Third Circuit, which held that the FLSA collective action did not become moot upon the plaintiff's receipt of a Rule 68 offer of judgment for full satisfaction of her individual claim. The Supreme Court reversed in a 5-4 opinion, with Justice Kagan writing a strong dissent on behalf of our client—a position which was subsequently adopted by the majority of the Court in *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). Plaintiff's position before the Supreme Court was supported by the United States as Amicus Curiae.

***Gualano v. Abercrombie & Fitch Stores, Inc.***, (W.D. Pa). Lynch Carpenter attorneys was co-lead counsel in this wage and hour litigation alleging that defendant retail clothier was violating federal and state minimum wage laws. Following the fairness hearing in early 2005, where a multi-state settlement was presented to the Court for approval, the Court entered Findings of Fact and Conclusions of Law addressing lead counsels' adequacy as follows:

> "The Court finds the plaintiffs' counsel, Bruce Carlson and Gary Lynch, are experienced class counsel and that they have met all of the requirements of Rule 23(g)(1)(B) and (C). Consistent with the underlying purpose of Fed. R. Civ. P. 23, plaintiffs' counsel have achieved, with utmost efficiency, a quality result for the entire class and are commended for the diligence and effective advocacy they have displayed on behalf of their clients."

***Pasci v. Express, LLC***, (W.D. Pa.). This case was similar to the *Abercrombie* case discussed above and proceeded to a fairness hearing in November 2004, where a multi-state settlement was presented to the Court for approval. Regarding the adequacy of Lynch Carpenter attorneys, the Court issued Findings and Conclusions stating:

> "With respect to the adequacy of counsel, the Court finds that class counsel have capably and vigorously represented the class. Bruce Carlson and Gary Lynch have substantial experience in class-based litigation involving consumer fraud and employment claims . . . . Class counsel achieved an efficient and excellent result on behalf of the class."

***Ellis v. Edward Jones,*** (N.D. Ohio). Lynch Carpenter attorneys chaired the Plaintiffs' Leadership Committee in this wage and hour class action alleging that defendant stock brokerage company violated federal and state overtime laws. After Defendant filed an answer and after significant discovery wherein Defendant produced in excess of 500,000 pages of documents and hundreds of videotapes, the parties commenced mediation to pursue a potential global settlement. The first mediation, which occurred in Atlanta in March 2007, was unsuccessful. Ultimately, the parties participated in a second mediation in San Francisco, at which the parties arrived at the basic terms of a proposed settlement pursuant to which class members from multiple states received in excess of $19 million. After a fairness hearing on January 5, 2009, the Court granted final approval of the settlement.

***Byers v. PNC Financial Services Group, Inc.,*** (W.D. Pa.). Lynch Carpenter attorneys was lead plaintiff's counsel in this wage and hour class action alleging that defendant stock brokerage company violated federal and state overtime laws. A multi-state settlement was approved following a fairness hearing in June 2008.

***Steen v. A.G. Edwards, Inc.,*** (S.D. Cal.). Lynch Carpenter attorneys were co-class counsel for plaintiff in this wage and hour litigation alleging that defendant stock brokerage company violated federal and state overtime laws. A mediated national class-based settlement has been reached and preliminary approval has been granted. A fairness hearing was held on August 31, 2009 in Los Angeles, after which the Court entered an Order granting final approval of the settlement.

***Meola v. AXA Financial, Inc.,*** (N.D. Cal.). Lynch Carpenter attorneys were co-class counsel for plaintiff in this wage and hour litigation alleging that defendant financial services company violated federal and state overtime laws. A mediated national class-based settlement was negotiated in this matter, and final approval was granted following a fairness hearing in the fall of 2009.

***In re St. Francis Health System,*** (C.P., Allegheny County Pennsylvania). Lynch Carpenter attorneys were counsel for the class in connection with this wage and hour litigation on behalf of certain former employees of the St. Francis Health System in Pittsburgh. Plaintiff asserted that the class was deprived of severance benefits when St. Francis Health System was acquired by another hospital group in Western Pennsylvania. Prior to the disposition of Plaintiff's class certification motion, the parties engaged in extensive mediation before reaching a class-based settlement.

***Haag v. Janney Montgomery Scott,*** (E.D. Pa.). Lynch Carpenter partner Gary Lynch was a member of the Executive Committee in this wage and hour class action alleging that defendant

stock brokerage company violated federal and state overtime laws. After protracted litigation and two separate mediations, the parties reached a multi-state settlement. A fairness hearing was conducted in Philadelphia on June 30, 2009, where Gary Lynch appeared on behalf of the class. Following the hearing, the Court granted final approval of the settlement.

***Steinberg v. Morgan Stanley & Co.,*** (S.D. Cal.). Lynch Carpenter attorneys were co-class counsel for plaintiff in this wage and hour litigation alleging that defendant stock brokerage company violated federal and state overtime laws. A mediated national class-based settlement was reached, and final approval of the settlement was granted.

***Ramsey v. Ryan Beck, Inc.*** (S.D.N.Y.). Lynch Carpenter attorneys were co-class counsel in this wage and hour class action alleging that defendant stock brokerage company violated federal and state overtime laws. After protracted litigation, the parties reached a multi-state settlement, and final approval was granted in June 2010.

***Kniess v. Heritage Valley Health Systems, Inc.,*** (C.P., Allegheny County, Pennsylvania). Lynch Carpenter attorneys were lead counsel in this wage and hour class action alleging that the defendant hospital system failed to pay overtime compensation to its nurse practitioners and physician's assistants. The parties reached a mediated class settlement whereby class members received the majority of the back pay alleged.

***Leadbitter v. The Washington Hospital, Inc.,*** (W.D. Pa.). Lynch Carpenter attorneys were co-lead counsel in this wage and hour class action alleging the defendant hospital system failed to pay overtime compensation to its nurse practitioners and physician's assistants. The parties reached a mediated class settlement whereby class members will be eligible to receive the majority of the back pay alleged, and the settlement received final approval from the Court.

***Career Education Corporation Misclassification Litigation,*** (W.D. Pa.). In early 2011, Lynch Carpenter attorneys filed a putative collective action on behalf of admissions representatives employed by culinary schools operated by Career Education Corporation. Plaintiff alleged that these individuals were misclassified and improperly denied overtime benefits. A class settlement was negotiated and final approval of the settlement was granted in December 2011.

***Atrium Centers, LLC Automatic Meal Break Deduction Litigation,*** (N.D. Ohio). Lynch Carpenter attorneys were lead counsel in this collective action on behalf of hourly health care workers (primarily nurses) alleging improper pay practices in connection with automatic meal break deductions. After the court granted Plaintiffs' motion for conditional certification of a collective action under the FLSA, extensive discovery ensued. Following the close of discovery

in the fall of 2012, the Parties engaged in mediation with a former United States Magistrate Judge and reached an agreement to settle the case on a collective basis. The settlement was approved by the court in December 2012, and the settlement proceeds have been distributed.

***Northwestern Memorial Healthcare Automatic Meal Break Deduction Litigation,*** (N.D. Ill.), Lynch Carpenter attorneys were lead counsel in this collective/class action on behalf of hourly health care workers (primarily nurses) alleging improper pay practices in connection with automatic meal break deductions. After extensive discovery and the denial of Defendant's motion for summary judgment, the Parties reached a mediated class settlement in the fall of 2012. In December 2013, the Court granted final approval of the settlement, and the settlement proceeds have been distributed to the class.

**C*rozer-Keystone Health System Overtime Litigation,*** (E.D. Pa.), Lynch Carpenter attorneys filed a putative collective action against Crozer-Keystone Health System in the Eastern District of Pennsylvania. The Complaint challenged pay practices related to nurse practitioners and/or physicians' assistants. The plaintiffs in these cases allege that they were illegally being denied overtime compensation by their employers. After discovery, the Parties filed cross motions for summary judgment. In a widely reported opinion issued on January 4, 2011, the Court granted Plaintiffs' motion for summary judgment, holding that Defendant had misclassified individuals in Plaintiff's job positions. Defendant's motion for reconsideration of the federal court's summary judgment decision was denied in a twenty-one page opinion and order issued on August 15, 2011. Following mediation, the settlement of this case was approved in August 2012.

***Ehrheart v. Verizon Wireless***, No. 2:07-cv-01165 (W.D. Pa.), 609 F.3d 590 (3d Cir. 2010). Lynch Carpenter attorneys represented the Plaintiff/Appellant in this matter alleging violation of the Fair and Accurate Credit Transaction Act. A settlement was negotiated and preliminarily approved by the district court pursuant to Rule 23. Subsequent to the settlement, Congress passed the Credit and Debit Card Receipt Clarification Act, which had the effect of eliminating Plaintiff's cause of action. On motion of Verizon, the district court vacated its preliminary approval of the settlement and granted Verizon judgment on the pleadings. On appeal, the United States Court of Appeals for the Third Circuit reversed the district court, and in doing so clarified the role of the district court in evaluating class settlements under Rule 23, holding:

> It is essential that the parties to class action settlements have complete assurance that a settlement agreement is binding once it is reached. The fact that a settlement agreement is governed by Rule 23 does not diminish its enforceability as a contract. Where, as here, the parties have executed an agreement, a party cannot

avoid its independent contractual obligations simply because a change in the law confers upon it a benefit that could have altered the settlement calculus.

*White v. United Steel Workers of America,* (W.D. Pa.), Gary Lynch was co-lead counsel in this age-discrimination class action against the U.S.W.A. After overcoming a motion to dismiss on a legal issue regarding a substantial split of authority, the defendant requested mediation to explore the possibility of settlement. After extensive mediation over a one-month period in June 2004, the case ultimately settled for an amount that defense counsel characterized as the highest ever paid by the U.S.W.A. in connection with civil litigation.

## ANTITRUST

*In Re Railway Industry Employee No-Poach Antitrust Litigation,* **MDL 2850,** (W.D. Pa.), Chief Judge Joy Flowers Conti appointed Lynch Carpenter partner Kelly K. Iverson as Plaintiffs' Liaison Counsel on behalf of the class of employees who alleged the defendants and their co-conspirators entered into unlawful agreements to reduce and eliminate competition among them for employees and to suppress the compensation of those employees. The two defendants agreed to class settlements worth a combined $48.95 million, and final approval was granted in August 2020.

*In Re Blue Cross Blue Shield Antitrust Litigation,* **MDL No. 2406**, (N.D. Ala.). Lynch Carpenter attorneys represent healthcare subscriber plaintiffs in four states in this nationwide class action challenging the anti-competitive practices of Blue Cross/Blue Shield's nationwide network of local insurers who do not compete with each other based on geographic boundaries. A $2.7 billion settlement received preliminary approval in early 2021.

## ENVIRONMENTAL LAW

*Steward et al. v. Honeywell Int'l, Inc.*, No. 3:18-cv-01124 (S.D. Ill.) Lynch Carpenter is currently involved in this property damage class action involving nuclear and non-nuclear contamination of large swaths of the City of Metropolis and the County of Massac. Lynch Carpenter attorneys and co-lead counsel are prosecuting claims for injunctive relief, property damage, and medical monitoring in this extremely complicated environmental contamination case.

## CIVIL RIGHTS

***ADA (Americans with Disabilities Act) Accessibility Litigation***. Lynch Carpenter is currently counsel for plaintiffs in a substantial number of putative class actions filed on behalf of individuals with disabilities to enforce the ADA's accessibility requirements. Over the last eight years, Lynch Carpenter attorneys have represented the visually disabled in seeking improved access to ATMs, Point of Sale devices, automated retail kiosks, and websites.

In January 2016, Magistrate Judge Robert C. Mitchell of the United States District Court for the Western District of Pennsylvania recommended certification of a national class of mobility-disabled individuals who were denied full and equal access to Cracker Barrel stores due to the company's inadequate centralized ADA maintenance policies. Cracker Barrel has over 630 stores across the country. The report and recommendation was adopted by District Judge Mark Hornak in July 2016. The case subsequently settled, securing injunctive relief for the nationwide class.

More recently, Lynch Carpenter attorneys were representing an individual with a mobility disability in *Egan v. Live Nation Worldwide, Inc.*, 2:17-cv-445 (W.D. Pa.). The claims involve wheelchair inaccessibility and ticket unavailability at Pittsburgh-area concert events promoted by Live Nation and ticketed by Ticketmaster. In March 2018, Judge Mark Hornak denied Live Nation's attempt to force arbitration of the potential class action. On appeal, the Third Circuit remanded the arbitration question for trial on disputed factual issues. The case settled before trial.

Lynch Carpenter attorneys also recently defeated efforts by Uber Technologies to force individuals with mobility disabilities who are unable to use Uber's ride share services because they are not wheelchair accessible to arbitrate their case despite that none of the plaintiffs ever agreed to any terms of service. The Third Circuit rejected Uber's argument that there was agreement by estoppel. The case is currently being litigated in the district court.

# EXHIBIT 6



**FREED KANNER LONDON & MILLEN** LLC

**2201 WAUKEGAN ROAD**
**SUITE 130**
**BANNOCKBURN, IL 60015**
**TELEPHONE (224) 632-4500**

**923 FAYETTE STREET**
**CONSHOHOCKEN, PA 19428**
**TELEPHONE (610) 234-6770**

**www.fklmlaw.com**



Freed Kanner London & Millen LLC ("FKLM") is one of the nation's premier plaintiffs' class action practices. The firm's attorneys are among the pioneers and leaders in the class action field, having played leadership roles in major antitrust, consumer fraud, securities, unlawful business practices and insurance fraud cases for decades.

FKLM was founded on January 1, 2007. The founding partners of FKLM, formerly principals and partners of Much Shelist Freed Denenberg Ament & Rubenstein, P.C., have successfully prosecuted class actions for over 40 years, including as lead or co-lead counsel in dozens of cases, resulting in recoveries for class members of more than $2 billion.

## *APPOINTMENTS AS LEAD OR CO-LEAD COUNSEL*

➤ *Northbrook Park District v. Mr. David's Flooring Int'l, LLC et al., No. 20-cv-07538 (N.D. Ill.)*

FKLM partner Steven Kanner serves as co-lead counsel in this antitrust action arising from an 8-year conspiracy to rig bids to municipal and commercial flooring purchasers in Illinois.

➤ *In re Peanut Farmers Antitrust Litigation,* **2:19-cv-00463 (E.D. Va.)**

FKLM partner Kimberly Justice serves as co-lead counsel in this antitrust class action arising from peanut shellers' wrongful and anticompetitive actions that had the intended purpose and effect of artificially fixing, depressing, maintaining, and stabilizing the price of runner peanuts paid to peanut farmers in the United States over the past 6 years. This matter recently settled for $102.75 million for the class.

➤ *In re Chicago Board Options Exchange Volatility Index Manipulation Antitrust Litigation*, **MDL 2842 (N.D. Ill.)**

FKLM partner Kimberly Justice serves as interim co-lead counsel in this multidistrict litigation arising from over a decade of alleged manipulation of financial instruments linked to the Chicago Board Options Exchange's ("CBOE") Volatility Index, the "VIX," and the opaque settlement process the CBOE designed for certain of those instruments**.**

➤ *In re Payment Card Interchange Fee and Merchant Discount Litigation*, **MDL 1720 (E.D.N.Y.)**



FKLM is serving as interim co-lead counsel for a proposed class of more than twelve million merchants seeking equitable and injunctive relief. Plaintiffs allege, inter alia, that certain of Visa and MasterCard rules, including anti-steering restraints and default interchange fees, working in tandem have caused artificially inflated interchange fees paid by merchants on credit and debit card transactions from January 1, 2004 through the present.

➢ *In re Opana ER Antitrust Litigation*, **MDL 2580 (N.D. Ill.)**

FKLM is serving as co-lead counsel on behalf of indirect purchasers (end-payors) of brand or generic Opana ER, an opioid painkiller, in this antitrust "pay-for-delay" case brought under the laws of 30 states.

➢ *The Honest Company Inc., Sodium Lauryl Sulfate (SLS) Marketing & Sales Practices Litigation,* **2:16-ml-02719 (C.D. Cal.)**

FKLM served as co-lead counsel in this class action brought on behalf of consumers allegedly deceived in their purchase of products labeled as "Free of SLS." The settlement in the case ultimately provided class claimants with, in most instances, close to full reimbursement of the money they spent on the products at issue and the defendant agreed to cease marketing the products as SLS free.

➢ *In re Automotive Parts Antitrust Litigation*, **MDL 2311 (E.D. Mich.)**

FKLM is serving as interim co-lead counsel on behalf of direct purchasers of automotive parts in multiple concurrently active nationwide, antitrust price-fixing cases relating to the following products: wire harnesses; instrument panel clusters; heater control panels; occupant safety parts; fuel senders; bearings; air conditioning systems; windshield wiper systems; starters; windshield washer systems; spark plugs; oxygen and air fuel ratio sensors; fuel injection systems; brake hoses; alternators; ignition coils; power window motors; shock absorbers; and electric power steering assemblies. Settlements with dozens of defendants reached to date total over $550 million.

➢ *Kleen Products, Inc. et al. v. International Paper, et al.*, **10-CV-5711 (N.D. Ill.) ("Containerboard Antitrust Litigation")**

As co-lead counsel for a class of direct purchasers of containerboard and related products in this antitrust price-fixing case, FKLM recovered $376 million dollars through settlement after more than 7 years of heavily contested litigation, including two appeals to the Seventh Circuit Court of Appeals.



➢ *In re Pharmacy Benefit Managers Antitrust Litigation*, MDL No. 1782 (E.D. Pa.)

FKLM is serving as co-lead counsel in these consolidated class actions brought on behalf of retail pharmacies against prescription benefit managers for fixing at artificially low levels the prices paid to pharmacies for pharmaceuticals sold, and reimbursement for services rendered, to the members of plans created by the prescription benefit managers. The complaints allege that the prescription benefit managers illegally aggregate the purchases of their members in order to effectuate the underpayment.

➢ *In re Hydrogen Peroxide Antirust Litigation*, MDL 1682 (E.D. Pa.)

FKLM attorneys served as co-lead counsel in this antitrust price-fixing action against hydrogen peroxide producers. The case resulted in settlements of over $97 million for the class. In approving the Plaintiffs' motion for an award of attorneys' fees and expenses, Judge Stewart Dalzell lauded co-lead counsel:

> [t]he "skill and efficiency of the attorneys involved" is of a very high order indeed, and as we noted at the fairness hearing yesterday, we have been impressed that these attorneys have prosecuted this matter vigorously against seasoned opponents without needlessly distracting the Court with discovery disputes.

➢ *In re Brand Name Prescription Drugs Antitrust Litigation*, MDL 997 (N.D. Ill.)

FKLM attorneys served as co-lead counsel in this antitrust price-fixing class action. Settlements totaling approximately $715 million were recovered on behalf of the plaintiff class.

➢ *In re Clozapine Antitrust Litigation*, MDL No. 874 (N.D. Ill.)

FKLM attorneys served as co-lead counsel in this antitrust class action against Caremark and Sandoz Pharmaceuticals alleging that the defendants entered into an illegal agreement to distribute a drug known as Clozaril by tying it to the purchase of a blood testing system, by fixing the price of the packaged sale, and by conspiring to monopolize the relevant market. More than $20 million was recovered for the class.

➢ *In re High Fructose Corn Syrup Antitrust Litigation*, MDL 1087 (C.D. Ill.)

FKLM attorneys served as co-lead counsel in this antitrust price-fixing class action against major manufacturers of high fructose corn syrup. The case was settled for $531 million for the class. At the close of the hearing where counsel fees were approved, Judge Michael M. Mihm stated:

> I've said many times during this litigation that you and the attorneys



who represent the defendants here are as good as it gets. Very professional. At least in my presence or in my contacts with you, you've always been civil. You've always been cutting to the chase and not wasting my time or each other's time or adding to the cost of the litigation.

➢ *In re Linerboard Antitrust Litigation*, **MDL 1261 (E.D. Pa.)**

FKLM attorneys served as co-lead counsel in this antitrust price-fixing case, which resulted in settlements of over $200 million for the class.

➢ *SchagrinGas Co. v. BP Products North America, et al.*, **No. 1:06-cv-3621 (N.D. Ill.)**

FKLM served as co-lead counsel on behalf of direct purchaser plaintiffs in this nationwide class action involving monopolization claims under Section 2 of the Sherman Act. The case resulted in a settlement of over $50 million for the class.

➢ *In re Aftermarket Filters Antitrust Litigation*, **MDL 1957 (N.D. Ill.)**

FKLM served as interim co-lead counsel on behalf of direct purchasers of replacement automobile air and oil filters in this nationwide, antitrust price-fixing case. The case resulted in settlements of nearly $18 million for the class.

➢ *In re Flat Glass Antitrust Litigation* **(No. II), MDL 1942 (W.D. Pa.)**

FKLM served as co-lead counsel on behalf of direct purchaser plaintiffs of construction flat glass in this nationwide, antitrust price-fixing case. The case resulted in settlements for the class exceeding $22 million.

➢ *In re Urethane Chemicals Antitrust Litigation*, **MDL 1616 (D. Kan.)**

FKLM attorneys served as co-lead counsel in this antitrust price-fixing action. The case resulted in settlements of $33 million for the class.

➢ *In re Methyl Methacrylate (MMA) Antitrust Litigation*, **MDL 1768 (E.D. Pa.)**

FKLM served as co-lead counsel in this antitrust price-fixing action against producers of methyl methacrylate and polymethyl methacrylate. The case resulted in a settlement of over $15 million for the class.



➢ ***In re Infant Formula Antitrust Litigation***, **MDL 878 (N.D. Fla.)**

FKLM attorneys served as co-lead counsel in this antitrust price-fixing class action against the major manufacturers of infant formula. The case settled for over $125 million for the class.

➢ ***In re Chubb Drought Insurance Litigation***, **MDL 782 (S.D. Ohio)**

FKLM attorneys served as co-lead counsel in this class action filed on behalf of farmers who purchased drought insurance that Chubb refused to honor. The settlement exceeded $110 million and was achieved in less than 9 months. This sum, together with $8 million recovered at trial against Chubb's general agent, resulted in complete recovery for the affected farmers.

➢ ***In re Ocean Shipping Antitrust Litigation***, **MDL 395 (S.D.N.Y.)**

FKLM attorneys served as co-lead counsel in this antitrust price-fixing class action, which resulted in a $79 million recovery for thousands of U.S. and European shippers. Distributions were made to claimants in the United States and throughout a number of European countries.

➢ ***In re Isostatic Graphite Antitrust Litigation***, **Master File 00-CV-1857 (E.D. Pa.)**

FKLM attorneys served as co-lead counsel in this antitrust price-fixing class action. The case resulted in combined settlements of over $11 million for the class.

➢ ***In re Carbon Dioxide Antitrust Litigation***, **MDL 940 (M.D. Fla.)**

FKLM attorneys served as co-lead counsel in this antitrust price-fixing class action in which the plaintiff class recovered $53 million and achieved significant therapeutic relief for the class.

➢ ***In re Morrison Knudson Securities Litigation***, **CA No. 94-CV-3345 (D. Idaho)**

FKLM attorneys served as co-lead counsel in this securities class action where the plaintiff class received $43 million and approximately 3 million shares of Morrison Knudson common stock in settlement of their claims.

➢ ***In re M-L Lee Acquisition Fund Securities Litigation*** **(D. Del.)**

FKLM attorneys served as co-lead counsel in this securities class action case against a syndicate of partnerships and its general partners, involving Merrill Lynch and its affiliates, and a leveraged buy-out specialty firm overseen by Thomas H. Lee. The case resulted in a $33 million settlement on behalf of the limited partners.



➢ *In re Public Service Company of New Mexico* **(S.D. Cal.)**

FKLM attorneys served as lead counsel in this derivative action and obtained $33 million dollars in a joint settlement with class plaintiffs in a related securities fraud class action. Judge Harry R. McCue, District Court Judge for the Southern District of California stated:

> The petitioners in this case are members of respected law firms which specialize in class action litigation. These attorneys brought considerable legal talents together, and were able to achieve the successful completion of this litigation. They are entitled to fair and reasonable compensation.

➢ *Piggly Wiggly Antitrust Litigation* **(E.D. Tex.)**

FKLM attorneys served as co-lead counsel in this statewide (Texas) antitrust price-fixing action, which resulted in total settlements of approximately $32 million for class members.

➢ *Koch Gathering Systems, Inc. Oil Spill Litigation* **(Dist. Ct. of Nueces County, Tex.)**

FKLM attorneys served as co-lead counsel in this case concerning a marine oil spill in which a class consisting of commercial fisherman and shrimpers recovered over $10 million.

### *OTHER LEADERSHIP ROLES*

In addition to serving as lead or co-lead counsel, FKLM attorneys regularly play key roles as members of executive or steering committees, negotiating ESI issues, taking and defending depositions, working with expert witnesses, and managing all aspects of pre-trial discovery.

➢ *In re Toyota Hybrid Brake Litig.*, **No. 4:20-cv-00127-ALM (E.D. Tex.)**

FKLM partner Kimberly Justice serves on the Plaintiffs' Executive Committee in this class action arising from allegations that Toyota manufactured, sold, and leased certain Toyota vehicles with defective braking systems.



➢ *In Re: TikTok, Inc., Consumer Privacy Litigation*, MDL No. 2948 (N.D. Ill.)

FKLM partner Jonathan Jagher serves on the Plaintiffs' Steering committee in this class action related to allegations of data privacy violations involving the popular app and the creation of short videos on mobile devices.

➢ *In Re: Morgan Stanley Data Security Litigation*, 1:20-CV-05914 (S.D.N.Y.)

FKLM partner Jonathan Jagher serves on the Plaintiffs' Executive Committee in this data privacy class action related to allegations that Morgan Stanley failed to safeguard its customers' highly sensitive personally identifiable information.

➢ *In re DPP Beef Antitrust Litigation,* 0:20-CV-01319 (D. Minn.)

FKLM serves on the Plaintiffs' Steering Committee in this antitrust class action alleging that the country's biggest beef companies have illegally conspired to both raise the price of beef and lower the amount paid to cattle ranchers.

➢ *Cameron et al. v. Apple, Inc.,* 4:19-cv-03074 (N.D. Cal.)

FKLM serves as class counsel and as an Executive Committee Member in this antitrust class action arising from Apple's abusive monopoly in the distribution of iOS apps and related products, seeking to get rid of its pricing mandates, and to reimburse developers for overcharges made through abuse of its monopoly power.

➢ *In re Farm-Raised Salmon and Salmon Products Litigation,* 19-CV-21551 (S.D. Fla.)

FKLM serves as a member of the Direct Purchaser Plaintiffs' Executive Committee in this case alleging various North Atlantic farms engaged in restrictive business practices including illegal price-fixing and violated rules prohibiting cartels.

➢ *In re Local TV Advertising Antitrust Litigation*, MDL No. 2867 (N.D. Ill.)

FKLM serves court appointed roles both on the Plaintiffs' Steering Committee, and as Liaison Counsel in this multidistrict, antitrust class action accusing the primary industry players of fixing television advertising prices.

➢ *In re German Automotive Manufacturers Antitrust Litigation*, 17-md-02796 (N.D. Cal.)

FKLM partner Kimberly Justice served on the Plaintiffs' Steering Committee in this multi-district class action accusing Audi, BMW, Volkswagen and other German automakers of a decades-long antitrust conspiracy covering car technology, costs, suppliers and emissions equipment.



> *Washington County Health Care Auth., Inc., et al. v. Baxter Int'l Inc., et al.*, **16-CV-10324 (N.D. Ill.)**

FKLM is serving as interim liaison counsel this class action alleging that the major U.S. manufacturers of a critical medical product, intravenous saline solution ("IV Saline Solution"), conspired to restrict output and artificially fix, raise, maintain and/or stabilize the prices of IV Saline Solution sold throughout the United States, under the pretext of a supply shortage.

> *Mulhern, et al. v. Pepperidge Farm*, **16-CV-32199 (N.D. Ill.)**

FKLM is serving as interim liaison counsel and managing discovery efforts in this class action alleging that drivers/distributors are improperly classified by Pepperidge Farm as "independent contractors" in order to wrongfully deny them certain compensation and other benefits.

> *In re Lithium Ion Batteries Antitrust Litigation*, **MDL No. 2420 (N.D. Cal.)**

FKLM served as a member of the Direct Purchaser Plaintiff Direct Purchaser Plaintiffs' Steering Committee in this case on behalf of direct purchasers of Lithium-Ion Battery products in this nationwide price fixing case. More than $138 million was recovered for the class.

> *In re Rail Freight Fuel Surcharge Antitrust Litigation*, **MDL 1869 (DC)**

FKLM is serving as co-chair of the Executive Committee in this case on behalf of direct purchasers of rail freight services that paid fuel surcharges in this nationwide, antitrust price-fixing case.

> *Standard Iron Works v. ArcelorMittal et al.*, **08-CV-5214 (N.D. Ill.)**

FKLM was appointed as liaison counsel on behalf of direct purchasers of steel in this nationwide supply manipulation and price-fixing case.

> *In re Blood Reagents Antitrust Litigation*, **MDL 2081 (E.D. Pa.)**

FKLM is serving as a member of the Executive Committee in this nationwide antitrust class action brought on behalf of direct purchasers of blood reagents.



➢ *In re NCAA Student-Athlete Name & Likeness Licensing Litigation,* **4:09-CV-1967 (N.D. Cal.)**

FKLM attorneys managed a variety of critical discovery matters in this antitrust case brought on behalf of former collegiate athletes.

➢ *In re Fresh and Process Potatoes Antitrust Litigation*, **MDL 2186 (D. Idaho)**

In addition to handling all aspects of discovery concerning two defendants, FKLM attorneys worked closely with lead counsel in drafting the consolidated complaint and successfully opposing a motion to dismiss in this nationwide antitrust class action brought on behalf of direct purchasers of fresh and process potatoes.

➢ *In re Processed Egg Products Antitrust Litigation*, **MDL 2002 (E.D. Pa.)**

FKLM attorneys worked closely with lead counsel in drafting the original complaint and successfully opposing a motion to dismiss in this nationwide antitrust class action brought on behalf of direct purchasers of eggs and egg products.

➢ *In re Cathode Ray Tube (CRT) Antitrust Litigation*, **MDL 1917 (N.D. Cal.)**

FKLM served as Chair of Discovery and worked closely with lead counsel to manage a variety of top level matters, including negotiating ESI issues and taking key depositions in this nationwide price-fixing class action with over $100 million in partial settlements.

➢ *In re Optical Disk Drive (ODD) Antitrust Litigation*, **MDL 2143 (N.D. Cal.)**

FKLM was one of several firms that assisted lead counsel with discovery and briefing in this nationwide price-fixing class action brought on behalf of direct purchasers of optical disk drives.

➢ *In re Municipal Derivatives Antitrust Litigation*, **MDL 1940 (S.D.N.Y.)**

FKLM oversaw discovery of a key defendant and worked closely with lead counsel on a variety of other pre-trial matters in this nationwide class action brought on behalf of purchasers of municipal derivatives.

➢ *In re American Express Anti-Steering Rules Antitrust Litigation (No. II)*, **MDL 2221 (E.D.N.Y.)**

FKLM managed discovery of independent merchant (opt-out) plaintiffs in this nationwide antitrust case.



➢ ***In re Air Cargo Shipping Services Antitrust Litigation*, MDL 1775 (E.D.N.Y.)**

FKLM attorneys served as co-chairs of discovery in this antitrust class action involving claims under Section 1 of the Sherman Act. Settlements in the case totaled nearly $600 million.

➢ ***In re Intel Corp. Microprocessor Antitrust Litigation*, MDL 1717 (D. Del.)**

FKLM attorneys managed discovery from dozens of named plaintiffs in this nationwide antitrust action. Among other things, the firm played a key role in overseeing document production and coordinating, managing and defending over 50 depositions.

➢ ***In re Vitamins Antitrust Litigation*, MDL 1285 (D.D.C.)**

FKLM attorneys served as co-chairs of discovery in this antitrust price-fixing action, which resulted in over $1.3 billion in settlements.

➢ ***In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, MDL 1486 (N.D. Cal.)**

FKLM attorneys served as co-chairs of discovery in this nationwide, antitrust price-fixing action, which resulted in settlements of over $300 million for class members.

➢ ***In re Rubber Chemicals Antitrust Litigation*, MDL 1648 (N.D. Cal.)**

FKLM attorneys served on the executive committee in this nationwide, antitrust price-fixing action, which resulted in settlements of over $300 million for class members.

➢ ***In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation*, MDL 1542 (D. Conn.)**

FKLM attorneys served as co-chairs of discovery in this nationwide antitrust price-fixing action, which has resulted in settlements of over $87 million for class members.

➢ ***In re Static Random Access Memory (SRAM) Antitrust Litigation*, MDL 1819 (N.D. Cal.)**

FKLM was a member of the executive committee representing direct purchaser plaintiffs in this antitrust price-fixing case which resulted in settlements exceeding $76 million.


➢ *In re Waste Management, Inc. Securities Litigation*, **Master File 97-CV-7709 (N.D. Ill.)**

➢

FKLM attorneys were actively involved in litigating the case and served as liaison counsel. A settlement for the plaintiff class of $220 million was obtained.

➢ *Blinder Robinson Securities Litigation* **(E.D. Pa.)**

FKLM attorneys served as members of the Steering Committee in this securities fraud action in which an injunction was obtained preventing a transfer of assets; judgment of $71 million was later entered.

➢ *In re Drill Bits Antitrust Litigation*, **CA No. H-91-627 (S.D. Tex.)**

FKLM attorneys served as members of the Steering Committee in this antitrust price-fixing class action and were instrumental in achieving a settlement for the class in excess of $52 million.

➢ *In re Industrial Gas Antitrust Litigation*, **CA No. 80 C. 3479 (N.D. Ill.)**

FKLM attorneys served as members of the executive committee in this antitrust price-fixing class action, which ultimately recovered more than $50 million dollars for the class. The settlement included assignable purchase certificates, which the court found increased the competitive value of the settlement.

➢ *In re Records and Tapes Antitrust Litigation* **(N.D. Ill.)**

FKLM attorneys served as members of the executive committee in this antitrust price-fixing class action. The class recovered $26 million dollars in settlement in cash and assignable purchase certificates.

➢ *Kaufman v. Motorola, Inc.* **(N.D. Ill.)**

FKLM attorneys were actively involved in litigating the case and served as liaison counsel. A settlement of $25 million was obtained for the plaintiff class.

➢ *In re Unisys Securities Litigation*, **CA No. 99-5333 (E.D. Pa.)**

FKLM attorneys served on the executive committee in this derivative action in which Plaintiffs recovered $20 million for corporation.

\* \* \*

Other large class action cases in which FKLM attorneys were involved in a leadership


position include *In re Folding Cartons Antitrust Litigation*, *In re Plywood Antitrust Litigation*, *In re Standard Screws Antitrust Litigation*, *In re Cotton Yarn Antitrust Litigation*, *In re Glass Containers Antitrust Litigation*, *In re Aluminum Siding Antitrust Litigation*, *Rusty Jones Warranty Litigation*, *NPA Securities Litigation*, *In re Chlor-alkali and Caustic Soda Antitrust Litigation*, and *In re Potash Antitrust Litigation*.

FKLM frequently serves as local counsel for a variety of cases, working closely with law firms located outside of Illinois. Some examples include *North Miami General Employees Retirement Fund et al. v. Parkinson et al.,* Case No. 1:10-cv-06514 (N.D. Ill.) (pending), *Marvin H. Maurras Revocable Trust v. Bronfman Jr. et al.*, Case No. 1:12-cv-03395 (N.D. Ill.) (pending), and *St. Lucie County Fire District Firefighters' Pension Trust Fund v. Motorola, Inc. et al*., Case No. 1:10-cv-00427 (N.D. Ill.) actions where FKLM was appointed as liaison counsel.

### *ATTORNEY PROFILES*

### <u>Michael J. Freed</u>

After leaving the Department of Justice Antitrust Division, Mr. Freed has engaged in private antitrust class action litigation for 50 years. He has served as co-lead counsel in many prominent antitrust and securities fraud class action cases. Presently, Mr. Freed is serving as co-lead counsel in the *Kleen Products v. International Paper/Containerboard Antitrust* case and *In re Opana ER Antitrust Litigation*. Prior antitrust class actions in which Mr. Freed served as co-lead counsel include *In re Aftermarket Filters Antitrust Litigation, In re Brand Name Prescription Drugs Antitrust Litigation*, *In re High Fructose Corn Syrup Antitrust Litigation*, *In re Linerboard Antitrust Litigation*, *In re Carbon Dioxide Antitrust Litigation*, *In re Infant Formula Antitrust Litigation*, and *In re Ocean Shipping Antitrust Litigation.* More than $2 billion has been recovered for the plaintiff classes in cases in which Mr. Freed has served as co-lead counsel.

Mr. Freed has been named an Illinois Super Lawyer by Chicago Magazine, an Illinois Leading Lawyer by the Leading Lawyer's Network, and one of the top plaintiffs' antitrust lawyers in Illinois by Chambers and Partners. In March 2007, Mr. Freed was honored by the Chicago Appleseed Fund for Justice for his exceptional pro bono efforts.



Mr. Freed was formerly a trial and appellate attorney with the United States Department of Justice, Antitrust Division (Honors Program). He is a graduate of the University of Pennsylvania (B.S., 1959) and University of Chicago Law School (J.D., 1962).

## Steven A. Kanner

Mr. Kanner has over 30 years' experience in complex antitrust litigation and previously led the class action practice at Much Shelist Freed. His experience includes investigation, discovery, trial and appeal of antitrust, securities and other complex cases. Mr. Kanner has been designated an Illinois Super Lawyer by *Chicago Magazine* for the past 5 years and is a frequent lecturer both domestically and internationally on antitrust and trade regulation.

With respect to class action matters, Mr. Kanner has been involved in a leadership capacity in many of the cases described above. Mr. Kanner is currently serving as co-lead counsel or interim co-lead counsel include *In re Automotive Parts Antitrust Litigation*, MDL 2311 (E.D. Mich.), (an international price fixing conspiracy of historic proportions which currently includes individual cases for Wire Harnesses, Instrument Panel Clusters, Fuel Senders, Heater Control Panels, Occupant Safety Systems, Ball Bearings, Air Conditioning Systems, Windshield Wiper Systems, Starters, Alternators, Windshield Washer Systems).

Historically, Mr. Kanner has been appointed by federal and state courts as co-lead counsel in a broad array of important cases, which have resulted in recoveries of hundreds of millions of dollars. Some of these cases include: *In re Aftermarket Filters Antitrust Litig.*, MDL 1957 (N.D. Ill.) (settlements of over $17 million); *In re Carbon Dioxide Antitrust Litig.,* MDL 940 (M.D. Fla.) (settlements of over $53 million); *In re Flat Glass Antitrust Litig.* (No. II), MDL 1942 (W.D. Pa.) (settlements of over $22 million); *In re Hydrogen Peroxide Antitrust Litig.*, MDL 1682 (E.D. Pa.) (settlements of over $97 million); *In re Isostatic Graphite Antitrust Litig.*, No. 00-cv-1857 (E.D. Pa.) (settlements of over $11 million); *In re Koch Gathering Systems, Inc. Oil Spill Litig.*, (Dist. Ct. of Nueces County, Tex.) (settlements of over $10 million); and *In re Texas Bread Antitrust Litig.*, No. 95-cv-0048 (E.D. Tex.) (settlements of over $32 million).

A 1979 graduate of DePaul University Law School, Mr. Kanner is admitted to the Bars of Illinois, the Northern District of Illinois (member of the trial bar), the United States Court of Appeals (Second, Third, Fourth, Fifth, Seventh and Tenth Circuits) and the United States Supreme Court. He is also a member of the Chicago Bar Association (Committees on Litigation and Antitrust Law), the Illinois State Association (Sections on Antitrust Law and Litigation), the American Bar Association (Sections on Antitrust Law and Litigation), the Illinois Trial Lawyers Association, and the Decalogue Society where he previously served on the Editorial Board of the Society's Law Journal. Prior to entering private practice, Mr. Kanner was employed by the Federal Trade Commission as a consumer affairs specialist.


**Douglas A. Millen**

Mr. Millen devotes his practice to prosecuting direct purchaser, price-fixing class actions and has played a key role in many of the most successful price-fixing cases in the United States. For example, Mr. Millen was recently appointed to serve on the Plaintiffs' Steering Committee for the *In re DPP Beef Antitrust Litigation* (D. Minn.) Mr. Millen was appointed to serve on the Direct Purchaser Plaintiffs' Steering Committee in *In re Lithium Ion Batteries Antitrust Litigation*, MDL No. 2420 (N.D. Cal) which ultimately obtained almost $140 million for the class. Mr. Millen has also played a prominent role in many of the largest antitrust cases in recent history – including: *In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL 1971 (N.D. Cal.), where he served as Chair of Discovery and aided in the recovery of more than $210 million of the class; *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, MDL 1486 (N.D. Cal.); *In re Vitamins Antitrust Litigation*, MDL 1285 (D.D.C.); and *In re Rubber Chemicals Antitrust Litigation*, MDL 1648 (N.D. Cal.) – and his efforts have assisted in the recovery of billions of dollars for class members. Accordingly, he has been recognized as one of the nation's top competition lawyers by various publications, including *Global Competition Review,* and as a top Plaintiffs' lawyer by *Lawdragon 500 Leading Lawyers in America*. Mr. Millen currently represents several Fortune 500 companies in the *Rail Freight Fuel Surcharge Antitrust Litigation* and provides antitrust compliance consultation services for large, multi-national companies.

Mr. Millen is a graduate of the University of Michigan (B.G.S., 1991) and University of Illinois College of Law (J.D. *magna cum laude*, 1994). In 1994, he was admitted to the New York and Connecticut State Bars; and in 1995 he was admitted to the Illinois State Bar. He is also admitted to practice in the Northern and Southern Districts of Illinois. Mr. Millen is a member of the American Bar Association, Antitrust Section and the Chicago Bar Association. Prior to founding FKLM, Mr. Millen was a partner at Much Shelist Freed, where he practiced with the class action group from November 1995 through December 31, 2006.

**William H. London**

Mr. London has been litigating class action cases for over 25 years. He served as trial counsel for the plaintiff class in *In re High Pressure Laminates Antitrust Litigation*, a case that was tried before a jury in the Southern District of New York. He was actively involved in several cases in which FKLM was serving in a leadership capacity, including *In re Flat Glass Antitrust Litigation (No. II)*, MDL No. 1942 (W.D. Pa.); *In re Static Random Access Memory (SRAM) Antitrust Litigation*, MDL No. 1819 (N.D. Cal); and *In re Hydrogen Peroxide Antitrust Litigation*, MDL 1682 (E.D. Pa.). Mr. London presently has significant involvement in *In re Automotive Parts Antitrust Litigation*, MDL 2311 (E.D. Mich.) and *In re Optical Disk Drive Products Antitrust Litigation*, No. 3:10-md-2143 (N.D. Cal.).

Mr. London graduated *Magna Cum Laude* from Syracuse University in 1984 and received his law degree in 1987 from IIT Chicago-Kent College of Law. In 1987, he was admitted to the Illinois Bar and the Federal Bar; and in 1988, he was admitted to practice before



the United States Court of Appeals for the Seventh Circuit. Mr. London is a member of the American Bar Association and is a past-Chairman of the Chicago Bar Association Class Litigation Committee. He was formerly an Assistant Attorney General for the State of Illinois, during which time he argued cases in the United States Court of Appeals for the Seventh Circuit and the Illinois Supreme Court. Since 1990, Mr. London has concentrated on complex and commercial litigation, with an emphasis on class action litigation involving antitrust claims. Mr. London practiced with Much Shelist Freed from March 1993 through December 31, 2006.

### Michael E. Moskovitz

Michael E. Moskovitz is a partner at Freed Kanner London & Millen LLC and has been involved in trial and appellate litigation for more than 15 years. Since 2000, he has concentrated on complex commercial litigation, with a primary emphasis on class action litigation involving antitrust, securities fraud, and consumer fraud claims. Mr. Moskovitz previously played a key role in the class action practice of Much Shelist Freed. He is significantly involved in several pending antitrust class actions, *In re Automotive Parts Antitrust Litigation*, MDL 2311 (E.D. Mich.), and *In re Vehicle Carrier Services Antitrust Litigation*, MDL No. 2471. Mr. Moskovitz is also a member of The Sedona Conference's Working Group 1 (Electronic Document Retention and Production) and has spoken at The Sedona Conference's Midyear meeting and has co-written papers published by The Sedona Conference.

Mr. Moskovitz is a graduate of Indiana University (B.A., 1993) and New York University School of Law (J.D., 1996).

### Robert J. Wozniak

Robert J. Wozniak is a partner at Freed Kanner London & Millen LLC. Since 2001, Mr. Wozniak has been involved in complex commercial litigation, with a primary emphasis on antitrust, employment, and consumer class action cases. Prior to engaging in private law practice, Mr. Wozniak worked as a trial attorney for the United States Department of Justice, Antitrust Division (Honors Program). Mr. Wozniak was then employed by Cohen Milstein Hausfeld & Toll, a Washington, D.C. class action firm, before joining Much Shelist Freed in 2004.

The complex antitrust class actions in which Mr. Wozniak has had significant involvement include: *In re Opana ER Antitrust Litigation* (N.D. Ill.); *In re Local TV Advertising Antitrust Litigation* (N.D. Ill.); *Mulhern, et al. v. Pepperidge Farm* (N.D. Ill.) (consolidated and transferred to C.D. Cal for settlement approval); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (E.D.N.Y.); *Kleen Products, et al. v. International Paper, et al.* (N.D. Ill.) ("*Containerboard Antitrust Litigation*"); *In re NCAA Student-Athlete Names & Likeness Licensing Litigation* (N.D. Cal.); *In re Fresh and Process Potatoes Antitrust Litigation* (D. Idaho); *In re Municipal Derivatives Antitrust Litigation* (S.D.N.Y.); *In re Flat Glass Antitrust Litigation (II)* (W.D. Pa.); *In re TFT-LCD (Flat Panel) Antitrust Litigation* (N.D. Cal.); *In re Static Random Access Memory (SRAM) Antitrust Litigation* (N.D. Cal.); *In re*



*Hydrogen Peroxide Antitrust Litigation* (E.D. Pa.); *In re Intel Corp. Microprocessor Antitrust Litigation* (D. Del.); *In re Dynamic Random Access Memory (DRAM) Litigation* (N.D. Cal.); *In re Buspirone Antitrust Litigation* (S.D.N.Y.); and *In re Terazosin Hydrochloride Antitrust Litigation* (S.D. Fla.).

Mr. Wozniak is a graduate of the University of Michigan (B.A., 1988), University of Minnesota (M.A., 1994), and Wayne State University Law School (J.D., 2000, *cum laude*, Order of the Coif). He has been admitted to practice law in Illinois, Michigan and the District of Columbia.

## Kimberly A. Justice

Kimberly A. Justice, a partner of the Firm, is a respected litigator and experienced trial lawyer who has dedicated her career to obtaining justice for those harmed by corporate fraud. She focuses her practice on class action litigation, including antitrust, consumer and securities fraud matters. Ms. Justice has extensive experience in all aspects of complex litigation from investigating and developing an initial case theory, to formulating and managing litigation strategy, to conducting discovery, to trial.

She has secured sizeable recoveries on behalf of investors in several high-profile securities fraud cases. Kimberly also led the trial team that obtained a jury verdict in favor of investors in the *In re Longtop Fin. Tech. Ltd. Sec. Litig.*, No. 11-cv-3658 (S.D.N.Y) securities class action litigation, among just a handful of securities cases to be tried to jury verdict.

Ms. Justice also has served as lead or co-lead counsel in several nationwide antitrust and securities fraud class actions. Most recently, Ms. Justice was appointed as Co-Lead Counsel in *In re Peanut Farmers Antitrust Litigation*, 2:19-cv-00463 (E.D. Va.), which settled for $102.75 million for the class, and *In re: Chicago Board of Options Exchange Volatility Index Manipulation Antitrust Litigation* (N.D. Ill.). Ms. Justice also serves on the Plaintiff Steering/Executive Committees in, *In re Local TV Advertising Antitrust Litigation*, No. 18-cv-06785 (N.D. Ill.); *In re Farm-Raised Salmon and Salmon Products Litigation,* No. 19-cv-21551; and *In re Toyota Hybrid Brake Litig*., No. 4:20-cv-00127-ALM (E.D. Tex.). Ms. Justice also served on the Plaintiff Steering Committee in *In re: Liquid Aluminum Sulfate Antitrust Litigation*, No. 16-md-02687 (D.N.J.) (over $90 million in settlements for direct purchaser plaintiff class) and *In re German Automotive Manufacturers Antitrust Litigation*, No. 17-md-02796 (N.D. Cal.).

Prior to entering private practice, Ms. Justice served as a federal antitrust prosecutor for nearly a decade where she led teams of trial attorneys and law enforcement agents who investigated and prosecuted domestic and international cartel activity, including in the following industries: graphite electrodes, carbon products, ocean shipping and benchmark interest rates (LIBOR).

Ms. Justice graduated *magna cum laude* from Temple University Beasley School of Law,



where she served as an Articles Editor of the Temple Law Review. Kimberly earned her B.A. *cum laude* from Kalamazoo College. Upon graduating from law school, Ms. Justice served as a judicial clerk to the Honorable William H. Yohn, Jr. of the United States District Court for the Eastern District of Pennsylvania.

Ms. Justice frequently lectures and serves on discussion panels concerning antitrust and securities litigation matters and currently serves as a member of the Advisory Board of the American Antitrust Institute and as an Advisory Council Member for The Duke Conferences: Bench-Bar-Academy Distinguished Lawyers' Series.

## Jonathan M. Jagher

Prior to entering private practice, Mr. Jagher served as a supervising Assistant District Attorney for the Middlesex District Attorney in Cambridge, Massachusetts. As a prosecutor, he conducted numerous investigations and tried approximately forty cases before a jury.

Mr. Jagher is a partner at Freed Kanner where he has a national practice representing plaintiffs in antitrust and consumer class actions. Recent cases include: *In re Automotive Parts Antitrust Litigation*, MDL No. 2311 (E.D. Mich.); *In re Korean Ramen Antitrust Litigation*, 13-cv-04115 (N.D. Cal.); *In re Lithium Ion Batteries Antitrust Litigation*, 13-MD-2420 (N.D. Cal.); *In re OSB Antitrust Litigation*, Master File No. 06-CV-00826 (E.D. Pa.); *In re Online DVD Rental Antitrust Litigation*, MDL No. 2029 (N.D. Cal.); *In re Processed Eggs Antitrust Litigation*, MDL No. 2002 (E.D. Pa.); *In re Air Cargo Shipping Services Antitrust Litigation*, MDL No. 1775 (E.D.N.Y.); and *In re Broiler Chicken Antitrust Litigation*, 1:16-cv-08637 (N.D. Ill.).

Mr. Jagher was recently appointed to serve on the Plaintiffs' Steering Committee in *In Re: TikTok, Inc., Consumer Privacy Litigation*, MDL No. 2948 (N.D. Ill.), a class action related to allegations of data privacy violations involving the popular app and the creation of short form videos on mobile devices. Mr. Jagher was also recently appointed to serve on the Plaintiffs' Executive Committee in *In Re: Morgan Stanley Data Security Litigation*, 1:20-CV-05914 (S.D. N.Y.), a data privacy class action related to allegations that Morgan Stanley failed to safeguard its customers' highly sensitive personally identifiable information.

Mr. Jagher received a B.A. degree *magna cum laude* from Boston University in 1998 and a J.D. degree from Washington University School of Law in 2001. He is currently admitted to practice law in Pennsylvania, Massachusetts, the United States District Court for the District of Massachusetts, the United States District Court for the Eastern District of Pennsylvania and the United States Court of Appeals for the Third Circuit. Mr. Jagher currently serves on the Advisory Board of Loyola University School of Law's Institute for Consumer Antitrust Studies and is a member of the Philadelphia Bar Association and the American Bar Association. Mr. Jagher was named as a Pennsylvania Super Lawyer in 2018 and 2019 after having been named as a Super Lawyer Rising Star in 2012, 2013, 2014, 2015 and 2016.



**Brian M. Hogan**

Brian M. Hogan is a partner at Freed Kanner London & Millen LLC. He specializes in class action litigation and has a wide range of experience successfully handling product liability, mass tort, toxic and environmental exposure, consumer protection and antitrust cases. He has litigated cases in numerous state and federal courts nationwide, including multidistrict litigation. Mr. Hogan has tried over a dozen cases to verdict.

Currently, Mr. Hogan has significant involvement litigating *In re Automotive Parts Antitrust Litigation*, MDL No. 2311 (E.D. Mich.), *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 05-md-1720 (E.D.N.Y.), and *In re Opana ER Antitrust Litigation*, 1:14-cv-10150 (N.D. Ill.) where Freed Kanner London & Millen is court-appointed co-lead counsel representing direct purchasers of automotive parts who were overcharged as a result of price-fixing and bid-rigging conspiracies by various sets of defendants throughout the automotive parts industry. The litigation follows the largest United States Department of Justice criminal antitrust investigation in history.

Mr. Hogan received a B.A. from Indiana University and his J.D. from Chicago-Kent College of Law.