UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSE GUTIERREZ ET AL.,

                Plaintiffs,

      - against -

LEMONADE, INC. ET AL.,

                Defendants.

21-cv-7070 (JGK)

MEMORANDUM OPINION
AND ORDER

---

JOHN G. KOELTL, District Judge:

The plaintiffs, John Barlow and Jose Gutierrez, brought this putative class action against Lemonade, Inc. and four of its wholly owned subsidiaries (collectively, "Lemonade"). The plaintiffs' claims arise out of their allegation that Lemonade collected, stored, analyzed, and used biometric data in violation of the representations in Lemonade's Data Privacy Pledge (the "Pledge"). Lemonade now moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons explained below, Lemonade's motion to dismiss is **granted in part and denied in part.**

I.

Lemonade is an insurance company that leverages artificial intelligence ("AI") to improve price quoting, sales, and claims settlement. Am. Compl. ¶ 2. As part of the claims submissions process, insureds are sometimes required to submit videos explaining their claims. Id. ¶ 6. In May 2021, Lemonade tweeted

that its AI "carefully analyzes these videos for signs of fraud.
It can pick up non-verbal cues . . . ."[1] Id. ¶ 55. Lemonade later
confirmed that it uses "facial recognition technology," which
the plaintiffs allege is necessarily based on customers'
biometric data. Id. ¶ 6.

The defendants are New York and Delaware corporations that
are headquartered in New York. Id. ¶ 37, 83. Barlow is a citizen
and resident of Oklahoma. Id. ¶ 19. Gutierrez is a citizen and
resident of Texas. Id. ¶ 25. A third Lemonade customer, Mark
Pruden, was originally a named plaintiff in this action, but has
since voluntarily dismissed his claims against Lemonade. ECF No.
20.

Barlow and Gutierrez each purchased a renter's insurance
policy from Lemonade. Id. ¶¶ 20, 26. To purchase the policies,
the plaintiffs created a Lemonade account and agreed to
Lemonade's Terms of Service. Id. ¶ 49. Lemonade also has a
privacy policy, which it calls its Pledge. Id. Both plaintiffs
later suffered damages for which they sought compensation from
Lemonade under their policy. In accordance with Lemonade's
claims process, the plaintiffs submitted videos in which they
narrated the circumstances of their claims. Id. ¶¶ 22, 29. The
plaintiffs allege that Lemonade collected, stored, and analyzed

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal
alterations, citations, footnotes, and quotation marks in quoted text.

information about the plaintiffs, including in particular the plaintiffs' face geometry, voiceprint, and non-verbal cues. Id. ¶ 31.

The following provisions of the Terms of Service and Pledge are relevant to this case.

The Terms of Service state: "These Terms and your use of the Services are governed in all respects by the laws of the State of New York." Id. ¶ 80.

The Pledge states: "To be able to review claims, we ask users to provide various documents in the form of videos . . . and so on."[2] The Pledge discloses that images, audio, and video recordings are collected and required to provide the insurance services, and that Lemonade may send such personal information to its service providers. The Pledge represents, however, that "[b]iometric information (such as voice and handwriting recognition)" is not required to provide the services, is not collected, and is not sent to any service providers. Beyond these two examples, the phrase "biometric information" is not further defined in the Pledge. The plaintiffs allege that

---

[2] The Pledge is available at https://www.lemonade.com/privacy-policy. The Court may consider the Pledge on this motion to dismiss even though the Pledge was not reproduced in or attached to the Amended Complaint. Lemonade has not raised any doubts as to the authenticity of the Pledge and does not otherwise argue that it would be inappropriate to consider the Pledge at this stage of the litigation. Lemonade also does not dispute that the Pledge is publicly available on the internet and consequently is subject to judicial notice. See, e.g., Bus. Casual Holdings, LLC v. YouTube, LLC, No. 21-cv-3610, 2022 WL 837596, at *1 n.2 (S.D.N.Y. Mar. 21, 2022).

biometric information includes "unique physical characteristics, such as . . . voiceprints, or . . . face geometry scans; and . . . information based on or derived from" those characteristics. Am. Compl. ¶ 4.

Based on these alleged facts, the plaintiffs brought this putative class action against Lemonade, alleging breach of express and implied contract, violation of New York General Business Law ("GBL") § 349, and unjust enrichment. The plaintiffs sought monetary, injunctive, and declaratory relief.

## II.

The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A). First, at least one member of the plaintiff class is diverse from at least one defendant, because the defendants are citizens of New York and Delaware, and the named plaintiffs are citizens of Oklahoma and Texas. Second, the amount in controversy exceeds $5,000,000, because the putative class is alleged to have over one million members, and the plaintiffs seek damages of $50 per plaintiff, as well as injunctive relief.

## III.

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in the complaint are accepted as true and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482

F.3d 184, 191 (2d Cir. 2007). The Court may also consider documents that are integral to the complaint or incorporated by reference, such as contracts. Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 71-72 (2d Cir. 1995).

**A.**

The plaintiffs bring a claim for breach of contract. New York law applies to this claim because both parties cite to New York cases, see Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp., 531 F. Supp. 3d 673, 705 (S.D.N.Y. 2021), and because the Terms of Service plainly provide that they are governed by New York law. See Cap Gemini Ernst & Young U.S. LLC v. Nackel, No. 02-cv-6872, 2004 WL 569554, at *4-5 (S.D.N.Y. Mar. 23, 2004). To state a breach of contract claim under New York law, a plaintiff must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004). Lemonade disputes only the third element, breach.

In this case, the plaintiffs have adequately pleaded that Lemonade breached its contractual obligations. The Pledge represents that Lemonade does not collect biometric information. But Lemonade's conduct, as alleged in the Amended Complaint, plausibly amounts to the collection of biometric information.

The plaintiffs allege that Lemonade's technology collected and analyzed information including the plaintiffs' face geometry, voiceprint, and non-verbal cues. The Pledge does not define biometric information. However, a plausible interpretation of that phrase could include information like face geometry, voiceprint, and non-verbal cues. Indeed, these categories of information appear to mesh with "voice recognition," one of the examples of biometric information given by the Pledge. The plaintiffs have therefore plausibly alleged that Lemonade collected biometric information, contrary to Lemonade's representation that it did not.

Lemonade argues that the Pledge's disclosure that Lemonade collects and analyzes "images, audio and video recordings" adequately informs customers of Lemonade's data collection practices. However, under New York law, "agreements should be read as a whole to ensure that undue emphasis is not placed upon particular words and phrases," Bailey v. Fish & Neave, 868 N.E.2d 956, 959 (N.Y. 2007), and "specific provisions control over general provisions," McKay v. Village of Endicott, 77 N.Y.S.3d 537, 540 (App. Div. 2018). In light of this, reasonable minds could at the very least differ as to whether this disclosure adequately informed customers that Lemonade was, through the videos, collecting information like face geometry, voiceprint, and non-verbal cues. The contract is therefore at

least ambiguous, and its interpretation is for the jury. See
Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 573-74
(2d Cir. 1993). Accordingly, the plaintiffs have alleged
adequately that Lemonade collected biometric information in
violation of the Pledge, and the motion to dismiss the breach of
contract claim is therefore **denied.**

**B.**

The plaintiffs also bring a claim under GBL § 349, which
creates a private right of action for "[d]eceptive acts or
practices in the conduct of any business, trade or commerce or
in the furnishing of any service in" New York state.

**1.**

As an initial matter, because no class has yet been
certified, it is premature to consider Lemonade's argument that
the GBL § 349 claim is unenforceable against a nationwide class.
On a motion to dismiss prior to class certification, the focus
of the Court's inquiry is on the claims of the named plaintiffs.
Speyer v. Avis Rent a Car Sys., Inc., 415 F. Supp. 2d 1090,
1093-94 (S.D. Cal. 2005) (declining to address the question of
whether a forum selection clause was "enforceable against all
potential class Plaintiffs," because at the motion to dismiss
stage, "the Court must determine only whether the forum
selection clause is applicable to the named Plaintiffs"), aff'd,
242 F. App'x 474 (9th Cir. 2007).

To the extent that Lemonade argues that the protection of GBL § 349 does not extend to the named plaintiffs, the argument is without merit. In Goshen v. Mutual Life Insurance Co. of New York, 774 N.E.2d 1190 (N.Y. 2002), the New York Court of Appeals interpreted § 349 as "evinc[ing] a legislative intent to address commercial misconduct occurring within New York." Id. at 1195. Thus, to state a claim under the statute, "the deception of a consumer must occur in New York." Id. In Cruz v. FXDirectDealer, LLC, 720 F.3d 115 (2d Cir. 2013), the Court of Appeals for the Second Circuit held that this territorial test is satisfied if the deceptive transaction occurred in New York. Id. at 123. Courts have found out-of-state plaintiffs to have pleaded a transaction in New York where, in addition to the defendant's being based in New York, the transaction was consummated on a website in New York whose terms of service included a choice-of-law clause in favor of New York. See, e.g., Ward v. TheLadders.com, Inc., 3 F. Supp 3d 151, 168 & n.8 (S.D.N.Y. 2014); see also In re Amla Litig., 328 F.R.D. 127, 132 n.3 (S.D.N.Y. 2018).

In this case, as in Ward, the defendants are headquartered and domiciled in New York, and the transactions were consummated on a website and application operated by a New York company. See Ward, 3 F. Supp 3d at 168 & n.8. Moreover, the choice-of-law clause is broad, providing that customers' "use of the Services

8

[was] governed in all respects by the laws of the State of New
York." Am. Compl. ¶ 80. The plaintiffs' GBL claims arise out of
their use of Lemonade's services and are therefore covered by
this clause. These facts "give rise to a plausible inference
that the allegedly deceptive transaction occurred in New York,"
and therefore that the protection of GBL § 349 extends to the
named plaintiffs. See Ward, 3 F. Supp 3d at 168 & n.8.

**2.**

The plaintiffs have sufficiently alleged a violation of GBL
§ 349. New York courts define the term "deceptive acts and
practices" objectively, as "representations or omissions,
limited to those likely to mislead a reasonable consumer acting
reasonably under the circumstances." Oswego Laborers' Local 214
Pension Fund v. Marine Midland Bank, N.A., 647 N.E.2d 741, 745
(N.Y. 1995). For substantially the same reasons that the
plaintiffs have alleged a breach of contract claim, the
plaintiffs have alleged that Lemonade made a representation that
was likely to mislead a reasonable consumer: Lemonade's
statement that it did not use biometric data could mislead a
reasonable consumer into believing that Lemonade did not
collect, store, or analyze information like face geometry,
voiceprint, and non-verbal cues. See, e.g., Wallace v. Health
Quest Sys., Inc., No. 20-cv-545, 2021 WL 1109727, at *15
(S.D.N.Y. Mar. 23, 2021).

3.

Lemonade argues that the § 349 claims fail because they are
not independent of the breach of contract claims. This argument
is also without merit. In Nick's Garage, Inc. v. Progressive
Casualty Insurance Co., 875 F.3d 107 (2d Cir. 2017), the Court
of Appeals for the Second Circuit allowed a § 349 claim to
proceed alongside a breach of contract claim. Id. at 125.

Lemonade correctly notes that Nick's Garage was careful to
distinguish certain prior cases in which § 349 claims had been
dismissed where a contract governed the dispute. Id. The Court
of Appeals for the Second Circuit observed that, in those prior
cases, "the plaintiffs alleged damages in the amount of the
purchase price of their contracts, but failed to allege that
[the] defendants had denied [the plaintiffs] the services for
which [the plaintiffs] contracted." Id. Under those
circumstances, courts had found that there was no GBL injury.
See id. In Nick's Garage, by contrast, the plaintiff had alleged
not only that it had overpaid for its insurance policy, but also
that it had incurred additional losses over the course of the
contract. Nick's Garage was therefore distinguishable from the
earlier cases in which the § 349 claims were dismissed as
duplicative of the breach of contract claims, and the Court of
Appeals concluded that breach of contract and GBL claims could

both proceed. See also Milligan v. GEICO Gen. Ins. Co., No. 20-3726, 2022 WL 433289, at *6 (2d Cir. Feb. 14, 2022).

This case is governed by Nick's Garage. In their claim for violation of § 349, the plaintiffs specifically allege not only overpayment for the policies, but also "harm to their privacy and dignitary rights as a result of Defendants' unauthorized collection of their biometric data without consent." Am. Compl. ¶ 100. The plaintiffs purchased an insurance policy that did not require them to relinquish their biometric data and received an insurance policy that did require them to do so. This constitutes an allegation that the defendants "denied [the plaintiffs] the services for which [the plaintiffs] contracted." See Nick's Garage, 875 F.3d at 125. Accordingly, as in Nick's Garage, the plaintiffs have alleged both overpayment and injury over the course of the contract, and their GBL § 349 claims may therefore co-exist with their breach of contract claims.

### 4.

Contrary to Lemonade's contentions, applying § 349 to representations about biometric information is consistent with New York law. Lemonade argues that, because the plaintiffs rely on a definition of biometric information that is similar to the definition used by an Illinois biometric information statute, applying § 349 to representations about biometric information would circumvent the New York legislature's decision not to

enact such a statute. But applying the GBL to biometric
information does not create special protections for biometric
information. It merely confers the same protection against
"deceptive acts or practices" about biometric information as
about all other aspects of "business, trade or commerce."
Applying the GBL to representations about the collection of
biometric information therefore does not create a new cause of
action and is entirely consistent with the requirements of New
York law.

For these reasons, the motion to dismiss the § 349 claim is
**denied.**

### C.

The plaintiffs also bring a claim for unjust enrichment.
New York law also applies to this claim because the parties
appear to agree that New York applies. See Monterey Bay, 531 F.
Supp. 3d at 705. Under New York law, "[w]here the parties
executed a valid and enforceable written contract governing a
particular subject matter, recovery on a theory of unjust
enrichment for events arising out of that subject matter is
ordinarily precluded." Van Scoter v. Porter, 147 N.Y.S.3d 801,
803 (App. Div. 2021). In this case, the plaintiffs allege that a
contract governs the subject matter of this dispute — the Pledge
— and the parties do not dispute the validity or enforceability

of the contract. This contract precludes a claim for unjust enrichment.

The plaintiffs argue that their claims should not be dismissed because unjust enrichment claims can be pleaded in the alternative. But this argument is without merit as applied in this case. While Rule 8(d) permits plaintiffs to plead alternative and inconsistent claims, courts dismiss unjust enrichment claims pleaded in the alternative where there is no dispute as to the validity of the agreement. See, e.g., In re Generali COVID-19 Travel Ins. Litig., No. 20-md-2968, 2021 WL 6052438, at *9 (S.D.N.Y. Dec. 21, 2021).

For these reasons, the motion to dismiss the unjust enrichment claim is **granted**.

## IV.

### A.

Part of the relief that the plaintiffs seek is injunctive relief. Lemonade argues that the plaintiffs lack standing to seek such relief. "To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." Choi's Beer Shop, LLC v. PNC Merch. Servs. Co., 855 F. App'x 20, 21 (2d Cir. 2021). Accordingly, a plaintiff seeking prospective injunctive relief must show a

13

likelihood of ongoing or future harm, such that the harm will be redressed by an injunction. See id.

In this case, the plaintiffs allege that Lemonade's storage and use of the plaintiffs' data is ongoing. Moreover, the plaintiffs continue to be parties to an insurance contract with Lemonade, pursuant to which they are entitled to seek coverage, and if a plaintiff seeks reimbursement under the contract in the future, the plaintiff will be forced to submit another video to Lemonade, in which case Lemonade will again allegedly extract and analyze the plaintiffs' biometric data. These allegations are sufficient to plead both ongoing and future harm, conferring standing on the plaintiffs to seek prospective injunctive relief. See, e.g., id. at 21-22; Walker v. Azar, No. 20-cv-2834, 2020 WL 4749859 (E.D.N.Y. Aug. 17, 2020). The motion to dismiss the claim for injunctive relief is therefore **denied.**

**B.**

The plaintiffs also seek declaratory relief. Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), a court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," in a "case of actual controversy." "Even where an actual controversy has been established, a court must still decide whether it will exercise its discretion to entertain a request for declaratory judgment." Fleisher v.

14

Phoenix Life Ins. Co., 858 F. Supp. 2d 290, 301 (S.D.N.Y. 2012). In deciding whether to entertain an action for declaratory judgment, courts consider "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." Id. "The fact that a lawsuit has been filed that will necessarily settle the issues for which declaratory judgment is sought suggests that the declaratory judgment will serve no useful purpose." Id. at 302.

In this case, the plaintiffs seek declarations that Lemonade "must either cease and desist from collecting, storing, or using biometric data from Lemonade insurance customers, or obtain consent from users and disclose such practices" and that Lemonade's actions violate GBL § 349 and constitute a breach of express and implied contract. Am. Compl. at 36, ¶ 129. The first request is merely a subset of the injunctive relief sought. The latter two requests are necessarily resolved by resolution of the claims in this case. Declaratory relief would therefore serve no useful purpose and would offer no relief from uncertainty beyond that already afforded by a resolution of the claims in the case. Accordingly, the motion to dismiss the declaratory judgment claim is **granted**.

## Conclusion

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the arguments are either moot or without merit. For the foregoing reasons, the motion to dismiss is **granted** to the extent it seeks to dismiss the claims for unjust enrichment and declaratory relief, and **denied** in all other respects. The Clerk is directed to close all pending motions.

SO ORDERED.
Dated:      New York, New York
            August 8, 2022

                              John G. Koeltl
                    United States District Judge

16